No. 26-2087

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

RICHARD ALEXANDER MURDAUGH, SR.,

*Plaintiff-Appellant,*

v.

REBECCA HILL,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

## BRIEF OF APPELLANT


Richard A. Harpootlian
Phillip D. Barber
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street
Columbia, SC 29201

James M. Griffin
Margaret N. Fox
GRIFFIN HUMPHRIES LLC
4408 Forest Drive
Columbia, SC 29202

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-2087 Caption: Murdaugh v. Hill

Pursuant to FRAP 26.1 and Local Rule 26.1,

Richard Alexander Murdaugh, Sr.
(name of party/amicus)

______________________________

who is appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? YES ✔ NO

2. Does party/amicus have any parent corporations? YES ✔ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? YES ✔ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? YES ✔ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) YES ✔ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? YES ✔ NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? YES ✔ NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: s/Phillip D. Barber Date: October 9, 2026

Counsel for: Appellant

**TABLE OF CONTENTS**


TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

JURISDICTIONAL STATEMENT .......... 4

STATEMENT OF THE ISSUES .......... 5

STATEMENT OF THE CASE .......... 6

I. Statement of the Facts .......... 6

A. The Trial and Ms. Hill's Tampering .......... 7

B. The Vacatur of the Convictions .......... 9

C. The Injury .......... 12

II. Procedural History .......... 13

A. The Complaint .......... 13

B. The Motion to Dismiss and the Order Under Review .......... 13

SUMMARY OF ARGUMENT .......... 16

STANDARD OF REVIEW .......... 18

ARGUMENT .......... 19

I. The complaint alleges an injury that is directly traceable to Ms. Hill: the loss of the value of a defense purchased for a fair trial that Ms. Hill corrupted. .......... 19

A. Article III traceability requires a causal connection that is not too attenuated, not tort-law proximate cause. .......... 19

B. The pleaded economic injury is the loss of the value of the defense expenditure, and Ms. Hill is its cause. .......... 22

C. Ms. Hill's remaining causation arguments go to the extent of damages, not to jurisdiction. .......... 28

II. The district court's causation ruling was a merits determination about damages that could not support a Rule 12(b)(1) dismissal. 29

A. Standing is distinct from the merits, and a court may not dismiss for want of jurisdiction on the ground that the plaintiff cannot recover the damages he seeks. 29

B. Whether a particular loss was caused by the constitutional violation is a question of § 1983 damages law, resolved under Rule 12(b)(6), on summary judgment, or at trial. 34

C. Article III requires an injury traceable to the defendant, not the traceability of every dollar of damages claimed. 38

D. On the merits, the cost of defending a trial that a state officer corrupted is a recoverable measure of damages under § 1983. 41

III. The complaint alleges a completed constitutional injury redressable by nominal and punitive damages, and the district court erred in dismissing the entire action after considering one item of compensatory relief. 46

A. The violation of the right to an impartial jury is a concrete injury that Ms. Hill inflicted. 46

B. Nominal damages redress that injury as a matter of course under § 1983 and independently satisfy Article III. 49

C. The complaint expressly demands punitive damages, which a nominal award will support. 52

D. Standing must be assessed for each form of relief, and the district court assessed it for one. 53

IV. The remaining issues should be addressed by the district court on remand. 54

CONCLUSION 60

STATEMENT REGARDING ORAL ARGUMENT 60

CERTIFICATE OF COMPLIANCE 62

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Air Evac EMS, Inc. v. Cheatham*,
910 F.3d 751 (4th Cir. 2018) ........................................................ 20

*Antoine v. Byers & Anderson, Inc.*,
508 U.S. 429 (1993) ........................................................ 57

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) ........................................................ 30

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997) ........................................................ 51

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................ 33

*Barnes v. Joyner*,
751 F.3d 229 (4th Cir. 2014) ........................................................ 46

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) ........................................................ 18

*Bell v. Hood*,
327 U.S. 678 (1946) ........................................................ 29

*Bennett v. Spear*,
520 U.S. 154 (1997) ........................................................ 20

*Biggs v. Meadows*,
66 F.3d 56 (4th Cir. 1995) ........................................................ 57

*Borunda v. Richmond*,
885 F.2d 1384 (9th Cir. 1988) ........................................ passim

*Britt v. DeJoy*,
45 F.4th 790 (4th Cir. 2022) (en banc) ........................................ 5

*Bruggeman v. Blagojevich*,
324 F.3d 906 (7th Cir. 2003) .......... 39

*In re Bryson*,
406 F.3d 284 (4th Cir. 2005) .......... 4

*Carey v. Piphus*,
435 U.S. 247 (1978) .......... passim

*Carpenters Indus. Council v. Zinke*,
854 F.3d 1 (D.C. Cir. 2017) .......... 39

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 48

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 21

*Cottrell v. Alcon Labs.*,
874 F.3d 154 (3d Cir. 2017) .......... 26, 39

*County of Los Angeles v. Mendez*,
581 U.S. 420 (2017) .......... 36

*Cutter v. Wilkinson*,
544 U.S. 709 (2005) .......... 55

*Debernardis v. IQ Formulations, LLC*,
942 F.3d 1076 (11th Cir. 2019) .......... 26

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) .......... 29

*Disability Rights S.C. v. McMaster*,
24 F.4th 893 (4th Cir. 2022) .......... 28

*Evans v. Chalmers*,
703 F.3d 636 (4th Cir. 2012) .......... 35

*Evans v. United States*,
105 F.4th 606 (4th Cir. 2024) .......... 18, 55

*Falcone v. Dickstein*,
92 F.4th 193 (3d Cir. 2024) .......................................................... 49

*Farrar v. Hobby*,
506 U.S. 103 (1992) ............................................................... 49, 51

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ............................................................... 21, 23

*FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*,
498 U.S. 269 (1991) ........................................................................ 4

*Foodbuy, LLC v. Gregory Packaging, Inc.*,
987 F.3d 102 (4th Cir. 2021) ............................................ 50, 51, 52

*Frank Krasner Enters., Ltd. v. Montgomery County*,
401 F.3d 230 (4th Cir. 2005) ......................................................... 28

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
204 F.3d 149 (4th Cir. 2000) (en banc) ......................................... 20

*Garey v. James S. Farrin, P.C.*,
35 F.4th 917 (4th Cir. 2022) .......................................................... 39

*Givens v. Bowser*,
111 F.4th 117 (D.C. Cir. 2024) ...................................................... 37

*Glass v. Anne Arundel County*,
No. WDQ-12-1901, 2015 WL 4619631 (D. Md. July 30, 2015) ...... 45

*Gregg v. Ham*,
678 F.3d 333 (4th Cir. 2012) ......................................................... 53

*Hafer v. Melo*,
502 U.S. 21 (1991) .......................................................................... 57

*Heck v. Humphrey*,
512 U.S. 477 (1994) ............................................................... 42, 43

*Hector v. Watt*,
235 F.3d 154 (3d Cir. 2000) ............................................... 32, 37, 43

*Holloway v. Pagan River Dockside Seafood, Inc.*,
669 F.3d 448 (4th Cir. 2012) .................................................. 32, 34

*Holmes v. Elephant Ins. Co.*,
156 F.4th 413 (4th Cir. 2025) ........................................................ 39

*Hope v. Pelzer*,
536 U.S. 730 (2002) ........................................................................ 58

*Kerns v. United States*,
585 F.3d 187 (4th Cir. 2009) ......................................... 6, 19, 32, 34

*Kerr v. City of Chicago*,
424 F.2d 1134 (7th Cir. 1970) ................................................. 44, 45

*Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*,
440 U.S. 391 (1979) ........................................................................ 30

*Lefebure v. D'Aquilla*,
15 F.4th 650 (5th Cir. 2021) .......................................................... 48

*Lewis v. Casey*,
518 U.S. 343 (1996) ........................................................................ 38

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ........................................................... 20, 30, 32

*Libertarian Party of Va. v. Judd*,
718 F.3d 308 (4th Cir. 2013) .......................................................... 21

*Linda R.S. v. Richard D.*,
410 U.S. 614 (1973) ........................................................................ 48

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................... 19, 24, 41

*Malley v. Briggs*,
475 U.S. 335 (1986) ........................................................... 35, 41, 58

*Martin v. Marinez*,
934 F.3d 594 (7th Cir. 2019) ............................................. 32, 37, 43

*Martinez v. California*,
444 U.S. 277 (1980) .................................................................... 36

*McCray v. Maryland*,
456 F.2d 1 (4th Cir. 1972) ............................................................ 57

*McDonough v. Smith*,
588 U.S. 109 (2019) ........................................................ 42, 43, 47

*Memphis Cmty. Sch. Dist. v. Stachura*,
477 U.S. 299 (1986) ............................................................... 36, 41

*Monroe v. Pape*,
365 U.S. 167 (1961) .................................................................... 35

*Parker v. Gladden*,
385 U.S. 363 (1966) (per curiam) .......................................... passim

*People Helpers Found., Inc. v. City of Richmond*,
12 F.3d 1321 (4th Cir. 1993) ......................................................... 52

*Pitt County v. Hotels.com, L.P.*,
553 F.3d 308 (4th Cir. 2009) ................................................ passim

*Pratt v. Helms*,
73 F.4th 592 (8th Cir. 2023) .......................................................... 48

*Price v. City of Charlotte*,
93 F.3d 1241 (4th Cir. 1996) ........................................... 37, 50, 51

*Remmer v. United States*,
347 U.S. 227 (1954) .................................................................... 46

*Rothstein v. UBS AG*,
708 F.3d 82 (2d Cir. 2013) ............................................................ 21

*S.C. State Conf. of the NAACP v. Weaver*,
181 F.4th 353 (4th Cir. 2026) ....................................................... 21

*Sierra Club v. U.S. Dep't of the Interior*,
899 F.3d 260 (4th Cir. 2018) ......................................................... 21

*Singleton v. Wulff*,
428 U.S. 106 (1976) .......................................................................... 55

*Smith v. Wade*,
461 U.S. 30 (1983) .......................................................................... 52

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......................................................................... 15

*State v. Murdaugh*,
931 S.E.2d 294 (S.C. 2026) .................................................... passim

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ...................................................... 29, 30, 34, 48

*Stockton v. Virginia*,
852 F.2d 740 (4th Cir. 1988) ........................................................ 46

*Taylor v. Riojas*,
592 U.S. 7 (2020) (per curiam) ...................................................... 58

*Townes v. City of New York*,
176 F.3d 138 (2d Cir. 1999) .................................................. passim

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ..................................................... 38, 47, 53, 54

*Turner v. Louisiana*,
379 U.S. 466 (1965) .......................................................................... 46

*United States v. Students Challenging Regul. Agency Procs. (SCRAP)*,
412 U.S. 669 (1973) .......................................................................... 38

*Uzuegbunam v. Preczewski*,
592 U.S. 279 (2021) ..................................................... 47, 48, 49, 51

*Warth v. Seldin*,
422 U.S. 490 (1975) ........................................................... 19, 24, 30

*Wells v. Johnson*,
150 F.4th 289 (4th Cir. 2025) ........................................................ 53

### CONSTITUTIONAL PROVISIONS


U.S. Const. amend. VI ........................................................................ passim

U.S. Const. amend. XIV ........................................................................ 2, 4, 13


### STATUTES AND RULES


28 U.S.C. § 1291 ........................................................................ 5

28 U.S.C. § 1331 ........................................................................ 4

28 U.S.C. § 1343 ........................................................................ 4

42 U.S.C. § 1983 ........................................................................ passim

42 U.S.C. § 1988 ........................................................................ 13

Fed. R. App. P. 4 ........................................................................ 4

Fed. R. Civ. P. 12 ........................................................................ passim

Fed. R. Civ. P. 15 ........................................................................ 34, 59

Fed. R. Civ. P. 54 ........................................................................ 51


### OTHER AUTHORITIES


Restatement (Second) of Torts § 671 (Am. L. Inst. 1977) ...................... 42

## INTRODUCTION

Rebecca Hill was the elected Clerk of Court for Colleton County, South Carolina, and the officer of the court charged with the care of the jury that tried Richard Alexander Murdaugh, Sr., for murder. She wanted to write a book about the trial, she believed a guilty verdict would sell more copies, and so she told the jurors, in private and outside the presence of the judge and counsel, not to be "fooled" by the defense, to "watch him closely" when Mr. Murdaugh testified, and that the defense would "say things that will try to confuse you." JA6 ¶¶ 5–6; JA8 ¶¶ 17, 19; JA17 ¶ 45. She fabricated a report of juror misconduct about a juror who "had not made up her mind," interrogated that juror alone, and lied to her about it. JA9–13 ¶¶ 20–33. The Supreme Court of South Carolina unanimously held that Ms. Hill "placed her fingers on the scales of justice, thereby denying Murdaugh his right to a fair trial by an impartial jury," called her conduct "shocking jury interference," and reversed his convictions. JA7 ¶ 8; JA18 ¶ 52; *State v. Murdaugh*, 931 S.E.2d 294, 298, 313 (S.C. 2026). Ms. Hill has since pleaded guilty to perjury in her testimony at the new-trial hearing, obstruction of justice, and misconduct in office. JA18 ¶ 50.

Mr. Murdaugh sued Ms. Hill in her individual capacity under 42 U.S.C. § 1983 for depriving him, under color of state law, of his Sixth and Fourteenth Amendment right to trial before an impartial jury. He alleged that he liquidated his sole remaining asset—$600,000 in untainted retirement funds—to pay for his defense, and that Ms. Hill's tampering rendered that expenditure worthless because she made the trial it defended a nullity and left him in the position he was in before the first trial—under indictment and needing to defend himself—but without the $600,000 he spent defending the trial that Ms. Hill corrupted. JA19 ¶¶ 56–57; JA20 ¶ 62. He sought compensatory and punitive damages. JA20 ¶¶ 62–63 & Prayer.

The district court did not decide whether the complaint states a claim. It did not decide whether Ms. Hill is immune. It dismissed the action under Rule 12(b)(1) on the ground that Mr. Murdaugh lacks Article III standing, reasoning that Ms. Hill "did not cause the murder charges to be brought," that the defense "was necessary without regard to the misconduct of Defendant," and that the $600,000 therefore was not "fairly traceable" to her. JA121–122.

That ruling is wrong for three independent reasons. First, it misreads the complaint: Mr. Murdaugh never alleged that Ms. Hill caused his prosecution or caused him to hire lawyers; he alleged that she destroyed the value of what those lawyers were hired to do, and that loss is traceable to her alone. Second, it confuses Article III with the merits: whether the cost of defending a corrupted trial is a recoverable measure of damages under § 1983 is a question about the merits of the cause of action, not about the court's power to hear the case, and the district court's own analysis—a circuit split over the compensability of defense fees and the tort-law principles of proximate and but-for causation—shows that it was deciding the merits under the label of jurisdiction. Third, even if the district court were right about the $600,000, it dismissed the entire action after examining one item of relief; a completed violation of the right to an impartial jury is itself a concrete injury, redressable by nominal damages and by the punitive damages the complaint demands, and the district court considered neither.

The judgment should be vacated and the case remanded for the district court to address the Rule 12(b)(6) and immunity arguments it

declined to reach, or, if the Court treats the dismissal as one on the merits, reversed.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), because this action arises under 42 U.S.C. § 1983 and the Sixth and Fourteenth Amendments to the United States Constitution. JA7 ¶ 12 (invoking § 1331). Whether Mr. Murdaugh has Article III standing is the question presented on appeal.

On August 5, 2026, the district court granted Ms. Hill's motion to dismiss and dismissed the complaint without prejudice for lack of standing. JA119. The clerk entered judgment on August 6, 2026. JA126. Mr. Murdaugh filed a notice of appeal on August 5, 2026, JA124, the day the order was entered. Because the order "would be appealable if immediately followed by the entry of judgment," the notice is treated as filed on the date of, and after, the entry of the judgment the next day. Fed. R. App. P. 4(a)(2); *FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*, 498 U.S. 269, 276 (1991); *In re Bryson*, 406 F.3d 284, 287–88 (4th Cir. 2005). The appeal is timely.

This Court has jurisdiction under 28 U.S.C. § 1291. The dismissal disposed of every claim against the only defendant, judgment was entered, and the district court neither granted leave to amend nor otherwise signaled that the litigation would continue. "[W]hen a district court dismisses a complaint or all claims without providing leave to amend," the order "is final and appealable" notwithstanding the "without prejudice" designation. *Britt v. DeJoy*, 45 F.4th 790, 796 (4th Cir. 2022) (en banc). Nor does the district court's reservation of any view on a claim for retrial damages that the complaint does not assert, JA123 n.2, affect finality: under *Britt*, "[a]ny and all intent regarding finality . . . is communicated through the presence or lack of permission to amend the complaint," and this Court "no longer speculate[s] about what the district court meant when stating 'without prejudice' or what the parties may do in the future." 45 F.4th at 796.

## STATEMENT OF THE ISSUES

The issues presented are:

1. Whether the district court erred in holding that the loss of the $600,000 Mr. Murdaugh spent to defend a trial later vacated because of Ms. Hill's jury tampering is not "fairly traceable" to that

tampering, where the complaint alleges that the tampering, not the prosecution, destroyed the value of that expenditure.

2. Whether the district court erred in treating the question whether the defense expenditure was caused by Ms. Hill's misconduct—a question of damages causation and of the recoverable measure of compensatory damages under 42 U.S.C. § 1983—as a question of Article III jurisdiction under Rule 12(b)(1) rather than a question on the merits under Rule 12(b)(6).

3. Whether the district court erred in dismissing the entire action for lack of standing after considering only one item of compensatory damages, where the complaint alleges a completed violation of the right to an impartial jury, redressable by nominal damages and by the punitive damages the complaint demands.

## STATEMENT OF THE CASE

### I. STATEMENT OF THE FACTS

Because Ms. Hill mounted a facial challenge to the complaint, the well-pleaded allegations are taken as true. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). The district court recited that standard and considered only the complaint. JA120–121.

## A. *The Trial and Ms. Hill's Tampering*

Mr. Murdaugh was indicted on July 14, 2022, for the murders of his wife and son. JA8 ¶ 16. His trial began in Colleton County on January 23, 2023, and ran six weeks. *Id.* Ms. Hill, elected Clerk of Court for Colleton County in November 2020, was "the officer of the court charged as the primary caretaker of the jury." JA6 ¶ 4; JA7 ¶ 10.

Ms. Hill had been planning to write a book about the trial before it began. JA13 ¶ 36. In the months leading up to trial she told coworkers, repeatedly, that a guilty verdict would sell more books and that she "needed a lake house." JA6 ¶ 6; JA13–14 ¶ 36; JA16 ¶ 43.

After the State rested and the defense began its case, Ms. Hill began entering the jury rooms often. JA8 ¶ 17. She told jurors, "Y'all are going to hear things that will throw you all off. Don't let this distract you or mislead you." *Id.* She told them "the defense is about to do their side" and "[t]hey're going to say things that will try to confuse you," but "[d]on't let them confuse you or convince you or throw you off." JA17 ¶ 45. She repeatedly took the new jury foreperson aside for private conversations lasting five or ten minutes, sometimes in the jury room's single-

occupancy bathroom, and instructed the other jurors that they could not ask the foreperson about those conversations. JA8 ¶ 18.

Before Mr. Murdaugh took the stand in his own defense, Ms. Hill told the jurors "not to be fooled" by the evidence his attorneys presented, which at least one juror understood to mean that he would lie when he testified. JA8 ¶ 19. She instructed them to "watch him closely," to "look at his actions," and to "look at his movements," which at least one juror understood to mean that he was guilty. *Id.* She told jurors that the day of his testimony was "epic." JA14 ¶ 39.

Ms. Hill also fabricated a report of juror misconduct concerning a juror who had not decided the case. She told the trial judge she had seen a Facebook post by the ex-husband of Juror No. 785 suggesting the juror had been discussing her verdict. JA9 ¶ 20. No such post existed; Ms. Hill made it up. JA9 ¶¶ 22–23; JA12 ¶ 30. She then questioned Juror No. 785 alone in her office, refused to show her the post, asked her directly whether she was inclined to vote guilty or not guilty, and—when the juror said she had not made up her mind—told her, later that day, that law enforcement had confirmed the post with her ex-husband, which was also false. JA10 ¶¶ 24–25. On the morning of the verdict, when the

frightened juror sought Ms. Hill out, Ms. Hill told her "the Murdaughs" probably "got to" her ex-husband, again asked her opinion of Mr. Murdaugh's guilt, told her that "everything Mr. Murdaugh has said has been lies," told her to "forget about the guns, they will never be seen again," and said that if the foreperson would "just go in and ask for a raise in hands this would be over and done with." JA12–13 ¶¶ 31–32. Ten minutes later, Juror No. 785 was excused, on grounds the trial judge described as "totally independent" of the ex-husband matter. JA13 ¶ 33. When deliberations began that evening, Ms. Hill told the jury "this shouldn't take us long." JA13 ¶ 34.

The jury convicted Mr. Murdaugh on March 2, 2023. JA8 ¶ 16. Ms. Hill's book was released five months later. JA13 ¶ 36. Neither Mr. Murdaugh nor his counsel knew at the time of trial that Ms. Hill had "secretly and deliberately inserted herself into the jury's deliberative process for personal financial gain." JA6 ¶ 4.

**B. *The Vacatur of the Convictions***

Ms. Hill's book prompted several jurors to come forward. JA14 ¶ 37. Mr. Murdaugh moved for a new trial, and retired Chief Justice Jean H. Toal, sitting as the trial judge, held an evidentiary hearing at

which the jurors and Ms. Hill testified. JA14–15 ¶¶ 38–41. Nine jurors testified that they had not heard Ms. Hill comment on the merits of the case before the verdict; three jurors and the alternate testified that they had; and one testified that Ms. Hill's comments affected her guilty verdict: "To me, it felt like she made it seem like he was already guilty." JA14–15 ¶ 39; JA17 ¶ 45. Barnwell County Clerk of Court Rhonda McElveen testified that Ms. Hill had told her a guilty verdict "would be the best way to sell books." JA16 ¶ 43. Chief Justice Toal found that Ms. Hill "is not completely credible as a witness," that she "was attracted by the siren call of celebrity," that she "stated to the clerk of court Rhonda McElveen and others her desire for a guilty verdict because it would sell books," and that she "made comments about Murdaugh's demeanor as he testified, and she made some of those comments before he testified to at least one and maybe more jurors." JA17 ¶ 46. The trial court nevertheless denied a new trial for want of proof that the comments changed the verdict. JA17 ¶ 47.

On May 13, 2026, the Supreme Court of South Carolina unanimously reversed. JA7 ¶ 8; JA18 ¶ 51. It held that "[b]oth the State and Murdaugh's defense skillfully presented their cases to the jury" but

that "their efforts were in vain because Colleton County Clerk of Court Rebecca Hill placed her fingers on the scales of justice, thereby denying Murdaugh his right to a fair trial by an impartial jury." JA18 ¶ 52; *Murdaugh*, 931 S.E.2d at 298. It held that "Hill clearly advised the jurors to find Murdaugh and the evidence he presented not credible and, essentially, urged them to render a guilty verdict," that her "position as the Colleton County Clerk of Court, an officer of the court who managed the trial and was the primary caretaker of the jury, amplified the impact Hill's comments had on the jury," and that "[t]he breathtaking and disgraceful effort of Hill to undermine the jury process is unprecedented in South Carolina." JA18–19 ¶¶ 53–55; *Murdaugh*, 931 S.E.2d at 308–09. "Accordingly," the court held, "Murdaugh's right to a fair trial by an impartial jury was violated." JA19 ¶ 55; *Murdaugh*, 931 S.E.2d at 309. The court characterized Ms. Hill's conduct as "shocking jury interference" accomplished "outside the presence and knowledge of the outstanding trial judge and superbly competent and professional counsel for the State and the defense." *Murdaugh*, 931 S.E.2d at 313; *see* JA119.

At the hearing, Ms. Hill denied under oath having questioned a juror during the trial; examination by the trial court revealed that the

denial "was not truthful." JA15 ¶ 42. Ms. Hill resigned from office on March 25, 2024. JA17 ¶ 48. On December 8, 2025, she pleaded guilty to perjury in her hearing testimony (concerning her denial that she gave news media access to sealed exhibits), obstruction of justice, and misconduct in office. JA18 ¶ 50.

**C. *The Injury***

After his financial crimes came to light, a South Carolina court placed Mr. Murdaugh's assets in receivership. JA19 ¶ 56. With the receivership court's authorization, he withdrew $600,000 from his 401(k) retirement account—employer contributions "untainted by any criminal activity" and "his sole remaining asset"—to fund his murder defense. *Id.* He "spent the entire $600,000 on his trial defense." JA19 ¶ 57. Because Ms. Hill's tampering required vacatur of the verdict, the complaint alleges, "Ms. Hill's actions—motivated by her own desire to profit from the trial—caused these funds to be lost." *Id.*; *see* JA20 ¶ 62 ("As a result of Ms. Hill's actions, Mr. Murdaugh suffered monetary damages of $600,000.").

The complaint does not seek the cost of the retrial. JA20 ¶ 62 & Prayer; *see also* JA92–93; JA123 n.2.

## II. PROCEDURAL HISTORY

### A. *The Complaint*

Mr. Murdaugh filed this action on May 17, 2026, four days after the Supreme Court of South Carolina's decision. JA5. The single count alleges that Ms. Hill, "acting under color of state law as the elected Clerk of Court," violated Mr. Murdaugh's "right to trial before an impartial jury" secured by the Sixth and Fourteenth Amendments. It seeks judgment "in a sum sufficient to adequately compensate him for damages suffered," identifying the $600,000 as that loss, punitive damages on the ground that Ms. Hill's "conduct was motivated by evil motive or intent and involved reckless or callous indifference to Mr. Murdaugh's federally protected right," attorney's fees under 42 U.S.C. § 1988, costs, and "such other and further relief as the Court may deem just and proper." JA20 ¶¶ 58–64 & Prayer.

### B. *The Motion to Dismiss and the Order Under Review*

Ms. Hill moved to dismiss under Rules 12(b)(1) and 12(b)(6). JA25. Her forty-four-page memorandum argued that criminal-defense fees are not recoverable under § 1983 under *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999), and its progeny; that the fees were not "fairly traceable" to her because she "played no role" in the arrest, indictment,

or prosecution; that any claim for retrial expenses was unripe; and that she is protected by the Eleventh Amendment, quasi-judicial immunity, and qualified immunity. JA27–28; JA50–51. Mr. Murdaugh responded that a dispute over one measure of compensatory damages is no basis to dismiss a well-pleaded constitutional claim; that nominal damages are available as a matter of course under § 1983; that his pleaded injury is the loss of the value of his defense expenditure, not the cost of being prosecuted; that the fees are in any event recoverable; and that no immunity applies. JA88–89; JA92–93; JA96–97; JA99–102. He requested leave to amend in the alternative. JA103. Ms. Hill's reply acknowledged that Mr. Murdaugh "may be correct" that the *Townes* question is irrelevant on a Rule 12(b)(6) motion but insisted it went to "causation and injury." JA104–105.

On August 5, 2026, the district court granted the motion under Rule 12(b)(1) and dismissed the complaint without prejudice. JA119. The court identified "a fatal flaw—the lack of a causal connection between the funds he expended for his defense in the first trial and Defendant's misconduct." JA121. It reasoned that Ms. Hill "had no role in the initiation of criminal charges," that Mr. Murdaugh "liquidated his

retirement account to fund his defense, which was necessary without regard to the misconduct of Defendant," and that "Defendant's misconduct was not a proximate cause of Plaintiff's need to fund his defense costs," so that "there is no credible allegation that 'but for' Defendant's actions Plaintiff would not have found it necessary to fund his defense costs in the first trial." JA121–122. The court discussed the circuit split between *Borunda v. Richmond*, 885 F.2d 1384 (9th Cir. 1988), and *Townes*, found *Borunda* "not analogous," said it was not "necessary to rely on *Townes*" because Ms. Hill "did not cause the murder charges to be brought," and concluded that Mr. Murdaugh "fails the threshold requirement for Article III standing—a showing that his injury was 'fairly traceable to the challenged conduct of the defendant.'" JA122 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

The court "decline[d] to address the legal standards for Defendant's Rule 12(b)(6) and immunity arguments." JA120 n.1. It did not address nominal or punitive damages, and it did not address the request for leave to amend. It noted that the complaint did not seek damages for the retrial, and it stated that "[n]othing in this order should be construed to express an opinion regarding the possible merit or lack of merit of a claim

based upon any damages Plaintiff may allege from the retrial of his murder case." JA123 n.2. Judgment was entered on August 6, 2026. JA126. This appeal followed. JA124.

## SUMMARY OF ARGUMENT

I. The district court held that Mr. Murdaugh's injury is not "fairly traceable" to Ms. Hill because she did not cause the prosecution and the defense "was necessary" regardless. But the injury pleaded is not the obligation to mount a defense. It is the loss of the value of the defense that was mounted—$600,000 paid for a defense at a fair trial that Ms. Hill ensured Mr. Murdaugh did not receive. That causal chain runs from Ms. Hill's tampering, to the constitutional violation, to the vacatur, to the loss, with no independent third party in between. Article III traceability is a lesser showing than tort-law proximate cause; it asks whether the injury is fairly attributable to the defendant rather than to the "independent action of some third party not before the court." The prosecution did not corrupt the trial. Ms. Hill did.

II. The district court's analysis was, in substance, a merits ruling. It turned on "proximate cause," "but for" causation, and a circuit split over whether criminal-defense fees are compensable under § 1983—

questions about the merits of the cause of action and the measure of damages, which every court in the *Townes–Borunda* line resolved on the merits. The Supreme Court and this Court insist that such questions be kept apart from the question of judicial power, which asks only whether the plaintiff has alleged an injury traceable to the defendant. A Rule 12(b)(1) dismissal on a damages question would be error even if the court's view of the damages question were correct, because it forecloses the alternative arguments, the request for leave to amend, and the ordinary operation of Rule 12(b)(6). The fees are, moreover, recoverable: the closest common-law analogue is malicious prosecution, whose damages have always included the expense of defending the tainted proceeding, and the *Townes* line rests on a Fourth Amendment rationale that has no application to the right to an impartial jury. But the Court need not decide that question to vacate.

III. The complaint pleads a completed violation of the right to an impartial jury. That is a concrete injury that Ms. Hill inflicted, and it is redressable by nominal damages, which follow as a matter of course upon proof of a constitutional violation and which independently satisfy Article III, and by the punitive damages the complaint demands, which a

nominal award supports. The district court did not consider either remedy. Standing must be assessed for each form of relief; it was assessed for one. The judgment dismissing the entire action cannot stand.

IV. The appropriate disposition is to vacate and remand so that the district court may address the Rule 12(b)(6) and immunity arguments it declined to reach; should the Court reach them, none has merit. Nor would recharacterizing the dismissal as one on the merits under *Evans v. United States*, 105 F.4th 606 (4th Cir. 2024), change the result: the only merits question the district court decided was damages causation, and the complaint states a claim on that question.

## STANDARD OF REVIEW

This Court reviews de novo a dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1), including a dismissal for lack of Article III standing. *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017). Where, as here, the defendant makes a facial challenge—contending that the allegations of the complaint are insufficient to establish standing rather than that they are untrue—"the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6)

consideration," *Kerns*, 585 F.3d at 192, and the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party," *Warth v. Seldin*, 422 U.S. 490, 501 (1975). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (alteration and internal quotation marks omitted).

## ARGUMENT

Each of the three grounds that follow in Parts I through III independently requires vacatur, and the third does so whatever the Court concludes about the fee claim. Part IV addresses the disposition.

### I. THE COMPLAINT ALLEGES AN INJURY THAT IS DIRECTLY TRACEABLE TO MS. HILL: THE LOSS OF THE VALUE OF A DEFENSE PURCHASED FOR A FAIR TRIAL THAT MS. HILL CORRUPTED.

#### A. *Article III traceability requires a causal connection that is not too attenuated, not tort-law proximate cause.*

The "irreducible constitutional minimum" of standing consists of an injury in fact, "fairly traceable to the challenged action of the defendant," that is likely to be redressed by a favorable decision. *Lujan*, 504 U.S. at

560–61 (alterations and internal quotation marks omitted). The traceability element requires "a causal connection between the injury and the conduct complained of," such that the injury is not "the result of the independent action of some third party not before the court." *Id.* at 560 (alterations and internal quotation marks omitted); *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018).

The requirement is a modest one. "Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). The Supreme Court has rejected reasoning that "wrongly equates injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation," *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997), and it has described the plaintiff's burden as "relatively modest" at the pleading stage, *id.* at 171. This Court, sitting en banc, has likewise held that the "fairly traceable" standard "is not equivalent to a requirement of tort causation." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) (en banc) (internal quotation marks omitted). Traceability "does not

require the challenged action to be the sole or even immediate cause of the injury," *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018); "[i]t's enough to show that the challenged conduct 'is at least in part responsible'" for the plaintiff's injury, *S.C. State Conf. of the NAACP v. Weaver*, 181 F.4th 353, 367 (4th Cir. 2026) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 316 (4th Cir. 2013)). What Article III forbids is a causal chain that is "too speculative or too attenuated," *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (internal quotation marks omitted)—typically because it runs through the "unfettered choices made by independent actors not before the courts," *id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).

Because the standard is lower than proximate cause, a court errs when it dismisses for want of standing on the ground that the complaint fails to allege proximate causation. *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (holding that "the 'fairly traceable' standard is lower than that of proximate cause" and that the district court "erred in ruling that, because the Complaint was insufficient to allege proximate cause, plaintiffs failed to show Article III standing"). *Rothstein* went on to

affirm the dismissal on the merits for want of proximate cause, but it corrected the standing ruling first.

### B. *The pleaded economic injury is the loss of the value of the defense expenditure, and Ms. Hill is its cause.*

The injury the complaint pleads is not the obligation to hire lawyers. It is the loss of what the lawyers were hired to produce. Measured against the Article III standard, the allegations tracing that loss to Ms. Hill are not merely sufficient; they are direct. Mr. Murdaugh alleged that he withdrew $600,000 from his sole remaining asset to pay for his defense, that he "spent the entire $600,000 on his trial defense," that Ms. Hill's actions "caused these funds to be lost," and that "[a]s a result of Ms. Hill's actions, Mr. Murdaugh suffered monetary damages of $600,000." JA19 ¶¶ 56–57; JA20 ¶ 62. The Supreme Court of South Carolina described the same waste from both sides' perspective: the State and the defense "skillfully presented their cases," and "their efforts were in vain" once Ms. Hill "placed her fingers on the scales of justice." *Murdaugh*, 931 S.E.2d at 298.

The chain of causation has four links, and each is alleged: Ms. Hill tampered with the jury; the tampering violated Mr. Murdaugh's right to an impartial jury; the violation required vacatur of the verdict; and the

vacatur rendered worthless the trial for which he had paid. JA6–7 ¶¶ 5–8; JA8–13 ¶¶ 17–35; JA18–19 ¶¶ 51–57. No "independent actor" intervenes anywhere in that chain. Neither the trial judge nor counsel knew that Ms. Hill was speaking to jurors about the merits; the interference was "accomplished outside the presence and knowledge" of both. *Murdaugh*, 931 S.E.2d at 313. And the Supreme Court of South Carolina's vacatur was not an "unfettered choice[]" of an independent actor, *All. for Hippocratic Med.*, 602 U.S. at 383 (internal quotation marks omitted); it was the remedy the Constitution required for Ms. Hill's wrong, as the court that ordered it said: it had "no choice but to reverse." JA18 ¶ 52; *Murdaugh*, 931 S.E.2d at 298.

The district court did not dispute any of that. It instead identified a different injury—the "need to fund his defense costs"—and observed, correctly, that Ms. Hill did not cause Mr. Murdaugh to be indicted or to need a lawyer. JA121–122. But the complaint does not allege that she did. Mr. Murdaugh told the district court that "[h]is pleaded injury is that the $600,000 he withdrew from his sole remaining asset to defend a constitutionally fair trial was rendered worthless because Ms. Hill corrupted the first attempt at a trial, forcing its vacatur," and that "Mr.

Murdaugh paid for a defense at a fair trial but, because of Ms. Hill's conduct, he did not receive it." JA92. The response also said that Ms. Hill "caused the need for two trials," but it made clear that "the additional trial she caused is the first trial—the legal nullity with a vacated verdict—not the more expensive retrial." JA93. The point was the same: the trial whose cost was wasted is the one she corrupted. The question under Article III is whether *the injury the plaintiff alleges* is fairly traceable to the defendant. *Lujan*, 504 U.S. at 560. On a facial challenge the court takes the injury as the plaintiff pleads it and construes the complaint in his favor, *Warth*, 422 U.S. at 501, and a court's disagreement with the plaintiff about whether that injury is compensable "does not mean that [he] failed to allege an injury in fact," *Pitt County v. Hotels.com, L.P.*, 553 F.3d 308, 312 (4th Cir. 2009). A court may not substitute a differently framed injury, find that injury untraceable, and dismiss.

The distinction is not semantic. A patient who must undergo surgery in any event, and whose surgery is rendered useless by a technician who deliberately contaminates the operating room, has an injury—the wasted procedure—that is traceable to the technician even

though the illness, not the technician, created the need for surgery. The loss is caused by whoever destroyed the value of the service, not by whoever created the need for it, and it exists whether or not the service is ever purchased again. That the surgeon operated skillfully, and that the contamination was later discovered and its consequences undone, does not make the procedure one the patient received. And Mr. Murdaugh did not receive what he paid for. Ms. Hill's answer below was that he "paid for a trial that he received" and, having won vacatur, "received the full benefit of his legal defense." JA106. But the complaint pleads that he "spent the entire $600,000 on his trial defense," JA19 ¶ 57, not on the motion that won vacatur; the new-trial motion rested on after-discovered evidence of Ms. Hill's own misconduct, JA14 ¶¶ 37–38; and the relief it won restored only the opportunity for the trial he had already paid for. A defense is not an end in itself; its value lies in the adjudication it secures—a verdict that counts, whichever way it goes. A defense whose verdict is void purchased no adjudication, however skillfully it was presented—which is what the Supreme Court of South Carolina meant when it said the defense's "efforts were in vain." *Murdaugh*, 931 S.E.2d at 298. Measuring the loss by the cost of the first trial—fixed, incurred,

and known—is the conservative measure, and it is the one the complaint chose.

The district court's reasoning treats the State's decision to prosecute as the cause of every dollar spent at the trial, however the trial was conducted and whatever became of it. The State's indictment made a fair trial necessary. Ms. Hill made the trial Mr. Murdaugh paid for an unfair one, and therefore a wasted one. The State did not cause that; Ms. Hill did. Courts routinely recognize that a person who pays for something and receives nothing of value has suffered "the 'epitome' of a concrete injury," and that when he "receives a worthless product, his benefit of the bargain damages will be equal to the entire purchase price." *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019) (internal quotation marks omitted); *see Cottrell v. Alcon Labs.*, 874 F.3d 154, 165 (3d Cir. 2017) (money spent on medication "that was impossible for them to use" is a concrete economic injury).

The district court's reliance on the "but for" formulation does not change the analysis. JA122. But for Ms. Hill's tampering, there would have been no constitutional violation, no vacatur, and no loss of the value of the defense expenditure. Every link is alleged. JA18–19 ¶¶ 51–57.

The district court's contrary conclusion—that "if Defendant had not engaged in her communications with jurors . . . Plaintiff would have still needed to expend the funds necessary to pay for his defense," JA122—is again an answer about the need to pay rather than the loss of what was paid for. Had Ms. Hill not tampered with the jury, Mr. Murdaugh would have received what he paid for: a defense at a constitutionally valid trial. He did not, and the reason he did not is Ms. Hill.

Ms. Hill's own filings confirm that the dispute is about the measure of damages. Her memorandum acknowledged that the "loss" of the defense fees "may constitute monetary harm potentially compensable under § 1983," JA39, and it assumed injury in fact for purposes of the motion, JA50. Her reply argued that the cost of a second trial "would be, theoretically, a far more foreseeable injury based on the Defendant's alleged conduct," JA106, and that she "might have known that violating Plaintiff's Sixth Amendment right to an impartial jury could lead to the expense of a new trial," JA111. A defendant who concedes that the expense of a second trial is a foreseeable consequence of her conduct has conceded that the vacatur—the event that made one of the two trials a waste—is traceable to her. Which trial's cost measures that waste is a

question of damages, not of jurisdiction. Ms. Hill's authorities below do not suggest otherwise: *Disability Rights S.C. v. McMaster*, 24 F.4th 893, 902 (4th Cir. 2022), concerned a defendant with no role in enforcing the challenged law, and *Frank Krasner Enters., Ltd. v. Montgomery County*, 401 F.3d 230, 234–36 (4th Cir. 2005), concerned a third party's independent business decision. JA51. Here, Ms. Hill was the actor.

### C. *Ms. Hill's remaining causation arguments go to the extent of damages, not to jurisdiction.*

Ms. Hill also argued below that the fee was a flat fee that "would have been incurred regardless," that at most $165,000 of it could be apportioned to the eleven trial days after her tampering began, and that her conduct, if it affected anyone, "would have resulted . . . in a mistrial at most." JA51–54; JA106. The district court adopted none of these factual premises, and it could not have done so on a facial motion, because each contradicts the complaint or depends on facts outside it. JA14–15 ¶ 39; JA18–19 ¶¶ 53–57. More fundamentally, each is an argument about how much Mr. Murdaugh lost, or about whether some of the loss should be offset by a benefit he is said to have received. Whether a plaintiff would have paid anyway, and whether a loss should be apportioned, are questions of the same kind, and they have the same

answer: "the fact that an injury may be outweighed by other benefits, while often sufficient to defeat a claim for damages, does not negate standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 265 (2d Cir. 2006). Article III asks whether the plaintiff has alleged an injury caused by the defendant. It does not ask whether the plaintiff has alleged the right number.

## II. THE DISTRICT COURT'S CAUSATION RULING WAS A MERITS DETERMINATION ABOUT DAMAGES THAT COULD NOT SUPPORT A RULE 12(B)(1) DISMISSAL.

### A. *Standing is distinct from the merits, and a court may not dismiss for want of jurisdiction on the ground that the plaintiff cannot recover the damages he seeks.*

Even if the district court's view of the fee claim were correct, its choice of Rule 12(b)(1) as the vehicle was error.

It is a "fundamental" principle that "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). "Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Bell v. Hood*, 327 U.S. 678, 682 (1946). Standing, likewise, "in no way depends on the merits of the plaintiff's contention

that particular conduct is illegal." *Warth*, 422 U.S. at 500. The Supreme Court has repeatedly cautioned against "drive-by jurisdictional rulings" that treat merits defects as defects of judicial power, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006) (internal quotation marks omitted), and it has specifically held that proximate causation is an element of the cause of action, not of Article III, so that a plaintiff who adequately pleads it "is entitled to a chance to prove its case," *Lexmark*, 572 U.S. at 134 & n.6, 140. There is, as *Steel Co.* put it, a "fundamental distinction between arguing no cause of action and arguing no Article III redressability." 523 U.S. at 96. An argument that the plaintiff cannot recover what he asks for is "not squarely directed at jurisdiction itself, but rather at the existence of a remedy for the alleged violation of . . . federal rights," and it is not jurisdictional. *Id.* (quoting *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 398 (1979)).

This Court has enforced the same line in a case closely resembling this one. In *Pitt County*, the district court dismissed a county's suit to recover unpaid occupancy taxes under Rule 12(b)(1), reasoning that because the county could not recover the sums it sought under the governing ordinance, it lacked standing. 553 F.3d at 311–12. This Court

held that the standing ruling was error. "The district court's analysis," it explained, "improperly conflated the threshold standing inquiry with the merits of the County's claim." *Id.* at 312. A plaintiff "need not prove the merits of [its] case in order to demonstrate that [it] ha[s] Article III standing"; that "the district court ultimately disagreed with the County" about whether it could recover "does not mean that the County failed to allege an injury in fact." *Id.* "To hold otherwise would reduce all merits inquiries in cases of this type into standing inquiries." *Id.* *Pitt County* went on to affirm on the alternative ground that the complaint failed to state a claim, because the merits question—the construction of a tax ordinance—was a pure question of law that had been fully briefed and decided below. Here, by contrast, the question the district court decided does not dispose of the claim: even on the court's view, the complaint pleads a completed constitutional violation redressable by nominal and punitive damages. *See infra* Part III. And the district court declined to apply Rule 12(b)(6), the merits question is one of damages causation that this Court has never addressed, and the immunities were never reached. JA120 n.1.

The same principle governs where the jurisdictional question is "intertwined with the facts central to the merits of the dispute": the district court "should ordinarily assume jurisdiction and proceed to the intertwined merits issues," rather than resolve the merits under the guise of Rule 12(b)(1). *Kerns*, 585 F.3d at 193 (internal quotation marks omitted). The rule applies with greater force to a facial challenge, on which the court must accept the complaint's allegations as true. And an argument that the plaintiff has no cause of action is not a challenge to the district court's subject-matter jurisdiction; it is a challenge that "should normally be addressed by" Rules 12(b)(6), 12(c), or 56, not Rule 12(b)(1). *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452–53 (4th Cir. 2012).

The district court's opinion crossed that line. Its stated ground was that "Defendant's misconduct was not a proximate cause of Plaintiff's need to fund his defense costs," JA121–122—the language of tort, which *Lexmark* holds is "not a requirement of Article III standing," 572 U.S. at 134 n.6. Its analysis canvassed the circuit split over the compensability of criminal-defense fees under § 1983—*Borunda* on one side, *Townes*, *Hector v. Watt*, 235 F.3d 154 (3d Cir. 2000), and *Martin v. Marinez*, 934

F.3d 594 (7th Cir. 2019), on the other—distinguished *Borunda*, and, while saying it need not "rely on *Townes*," rested on the tort-law proposition that the fees would have been incurred anyway. JA121–122. Not one of those decisions was decided on Article III grounds. Each addressed, on the merits, the measure of compensatory damages available to a § 1983 plaintiff whose constitutional rights had been violated. *See infra* Part II.B. Ms. Hill's own reply conceded that the *Townes–Borunda* question "does weigh on the question of what damages are available to the Plaintiff," and that "Plaintiff may be correct that this question is irrelevant in the context of a motion to dismiss pursuant to Rule 12(b)(6)." JA105. A question about "what damages are available" is a merits question. The district court answered it and called the answer jurisdiction. That is what *Pitt County* forbids: a ruling that the plaintiff cannot recover what he seeks, recast as a ruling that he has alleged no injury caused by the defendant. 553 F.3d at 312–13.

The label matters. A jurisdictional dismissal forecloses the district court's consideration of the alternative grounds the movant raised, as it did here. JA120 n.1. It relieves the movant of the burden of showing that the complaint fails to state a claim under *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009), and it bypasses the plaintiff's request for leave to amend under Rule 15(a)(2), which the district court did not address. JA103. And it disposes of an entire action—every remedy, every theory—on the strength of a ruling about one item of compensatory damages. This Court has vacated Rule 12(b)(1) dismissals on this ground. *Holloway*, 669 F.3d at 453–54; *Kerns*, 585 F.3d at 195–97. Nor does Ms. Hill's vocabulary change the analysis: her reply argued that disallowing the compensatory damages "would render Plaintiff's claim moot, thus depriving the Court of jurisdiction." JA104; *see* JA109. A ruling that a particular measure of damages is unrecoverable is a merits judgment; it moots nothing, and *Steel Co.*'s distinction between "no cause of action" and "no Article III redressability" is the distinction between those two things. 523 U.S. at 96.

### B. ***Whether a particular loss was caused by the constitutional violation is a question of § 1983 damages law, resolved under Rule 12(b)(6), on summary judgment, or at trial.***

The district court's order recited, and its analysis then applied, the framework of Ms. Hill's memorandum, which argued that "constitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." JA120 (quoting JA38, and citing

*Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) [hereinafter *Chalmers*]); JA121–122. That is a correct statement of law. It is also a statement about the *merits*. It concerns whether the defendant's conduct caused the constitutional deprivation—an element the complaint pleads, and one Ms. Hill has never contested on the ground that anyone but she caused the deprivation—and, beyond that, which consequential losses are recoverable. Neither question is jurisdictional. *Chalmers* announced the rule in deciding whether the plaintiffs had stated § 1983 malicious-prosecution claims against police officers whose conduct was followed by a prosecutor's independent charging decision, and it resolved the question under Rule 12(b)(6), not Rule 12(b)(1). 703 F.3d at 647–49. Ms. Hill emphasized below that *Chalmers* cited *Townes* for that general proposition. JA38. It did, in a case about the intervening decisions of prosecutors and grand juries; it did not adopt *Townes*'s view of defense costs, and it did not treat causation as a question of jurisdiction. The Supreme Court has treated causation in § 1983 cases the same way since *Monroe v. Pape*, 365 U.S. 167 (1961). Section 1983 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Malley v. Briggs*, 475 U.S. 335,

344–45 n.7 (1986) (quoting *Monroe*, 365 U.S. at 187). A plaintiff whose injury is "too remote a consequence" of the defendant's conduct has no § 1983 claim, and his complaint fails to state one. *Martinez v. California*, 444 U.S. 277, 285 (1980). And when a court of appeals erred in analyzing whether an officer's constitutional violation supports recovery of a particular category of damages, the Supreme Court remanded so that the court of appeals could "revisit the question whether proximate cause permits respondents to recover damages"—a merits question. *County of Los Angeles v. Mendez*, 581 U.S. 420, 431–32 (2017). The damages recoverable under § 1983 are those "caused by the deprivation of constitutional rights," *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306–07 (1986), and whether a particular loss was so caused is a question of proof. The Court in *Carey v. Piphus*, 435 U.S. 247 (1978), accepted the argument that plaintiffs "should be required to prove not only that their rights were violated, but also that injury was caused by the violation," *id.* at 254; *see id.* at 263–64.

The decisions the district court weighed against each other confirm the point. *Townes* affirmed a dismissal for failure to state a claim, holding that the plaintiff's conviction and incarceration were not

proximately caused by the unlawful search. 176 F.3d at 141, 145–49. *Hector* answered the narrow question of "what type of damages" a § 1983 plaintiff who sought "$23,000 in attorney's fees" for defending a prosecution could obtain, and it treated the officers' further argument that the prosecutor's and grand jury's charging decisions were intervening causes as a question governed by the common law of proximate causation. 235 F.3d at 155, 160–61. *Martin* reviewed a district court's pretrial ruling limiting the damages a § 1983 plaintiff could present to the jury. 934 F.3d at 596. *Borunda* reviewed a jury verdict awarding defense fees as compensatory damages. 885 F.2d at 1386, 1389–90. Not one of these courts thought that a plaintiff who fails to connect a category of damages to the constitutional violation has failed to invoke the judicial power. Each treated the question as what it is: a question about what a plaintiff who has stated a claim may recover. *See Givens v. Bowser*, 111 F.4th 117, 122 (D.C. Cir. 2024) (whether § 1983 permits a particular monetary recovery "is a merits question, not a jurisdictional question").

This Court's treatment of the "regardless" argument in *Price v. City of Charlotte*, 93 F.3d 1241 (4th Cir. 1996), confirms where such

arguments belong. There the City argued that police officers denied promotion under an unconstitutional affirmative-action plan could recover nothing because they "would not have been promoted regardless" of the plan. *Id.* at 1244. The Court treated that argument as what it is: an argument about the measure of compensatory damages, to be resolved on the merits, and one whose success leaves the plaintiff with nominal damages rather than no case. *Id.* at 1245–46. It is not an argument that the plaintiff suffered no injury at the defendant's hands.

### C. *Article III requires an injury traceable to the defendant, not the traceability of every dollar of damages claimed.*

The district court's approach also misconceives what Article III asks. Standing is assessed claim by claim and remedy by remedy, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), but within a claim for damages, the plaintiff's burden is to allege an injury in fact fairly traceable to the defendant—not to establish, item by item, that every component of the damages he will seek was caused by the defendant. "An identifiable trifle" of injury suffices to open the courthouse door. *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 689 n.14 (1973) (internal quotation marks omitted). Once the plaintiff has

alleged that much, "the amount is irrelevant"—"[a] dollar of economic harm is still an injury-in-fact for standing purposes"—and disputes about the extent of the injury and the recoverability of particular losses belong to the merits. *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017). Courts "assume for the purposes of [the] standing inquiry that a plaintiff has stated valid legal claims," because to do otherwise "flips the standing inquiry inside out," *Cottrell*, 874 F.3d at 162, 165: "every decision in favor of a defendant would be a decision that the court lacked jurisdiction," *id.* at 166 (quoting *Bruggeman v. Blagojevich*, 324 F.3d 906, 909 (7th Cir. 2003)).

This Court applied these principles in *Holmes v. Elephant Ins. Co.*, 156 F.4th 413 (4th Cir. 2025), and reversed, in relevant part, a Rule 12(b)(1) dismissal of claims for damages. The standing inquiry, the Court explained, "focuses on types of harms protected at common law, not the precise point at which those harms become actionable," *id.* at 421 (quoting *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022)), and "not all elements of a cause of action go to the harm addressed"; elements "that pertain to the details of the defendant's action will often—though not always—be unrelated to the kind of harm felt by

the victim," *id.* at 422. Because the plaintiffs' injury "has already come to pass, it gives them standing to seek damages." *Id.* at 428. The same is true here. Whether Mr. Murdaugh "would have still needed to expend the funds" in a world without Ms. Hill's tampering is a question about the causal connection between the violation and one item of his loss—an element of the damages claim; it is not a question about the "type[] of harm[]" he suffered, which has "already come to pass." *Id.* at 421, 428. Were it otherwise, every dispute about whether a plaintiff's claimed damages were caused by the defendant's wrong—every argument that a loss would have occurred anyway, was offset by a benefit, or was attributable to a third party—would become a jurisdictional question to be resolved on a Rule 12(b)(1) motion. That is the inversion *Pitt County* forbids. 553 F.3d at 312.

The complaint here alleges two injuries, each traceable to Ms. Hill: the deprivation of Mr. Murdaugh's right to an impartial jury, and the resulting loss of the value of the $600,000 he paid to be defended before one. JA19–20 ¶¶ 56–57, 60–62. The district court did not question the first. Its holding that the second was not "fairly traceable" rested on the proposition that Mr. Murdaugh "would have still needed to expend the

funds necessary to pay for his defense" had Ms. Hill behaved, JA122—which is to say, that the fees are not a loss "caused by" the violation in the sense the law of damages requires. Whether or not that proposition is correct, it is a proposition about damages causation. It is answered by *Chalmers*, *Malley*, and *Carey*, on the merits, on a proper motion. It is not answered by *Lujan*.

### D. *On the merits, the cost of defending a trial that a state officer corrupted is a recoverable measure of damages under § 1983.*

The Court need not decide the merits question to vacate the judgment, and Mr. Murdaugh submits that the district court should address it in the first instance under the proper rule. But because Ms. Hill will urge the Court to affirm on the ground that criminal-defense fees are never recoverable under § 1983, Mr. Murdaugh addresses the question briefly.

Damages under § 1983 are governed by "the principle of compensation" and are shaped by "the common-law rules of damages," adapted "to the interests protected by the particular right in question." *Carey*, 435 U.S. at 254–59; *Stachura*, 477 U.S. at 305–07. To determine the appropriate common-law rules, the Supreme Court looks to the common-law cause of action that "provides the closest analogy to claims

of the type considered." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). For a § 1983 claim that a state officer's misconduct corrupted a criminal proceeding and produced a conviction later set aside, that analogue is malicious prosecution. *McDonough v. Smith*, 588 U.S. 109, 116–18 (2019) (holding that the most analogous common-law tort to a fabricated-evidence claim for denial of a fair trial is malicious prosecution); *Heck*, 512 U.S. at 484. The analogy identifies the common-law rules that fit the interest invaded—as *McDonough* used it to fix the accrual rule for a fabricated-evidence claim that did not match the tort element for element—and does not import the tort's elements; Ms. Hill's assertion that no common-law analogue exists, JA39 n.1, and her emphasis that she did not initiate the prosecution, JA40; JA51, therefore miss the point. And the damages recoverable for malicious prosecution have always included "the expense that he has reasonably incurred in defending himself from the accusation." Restatement (Second) of Torts § 671(b) (Am. L. Inst. 1977); *see Heck*, 512 U.S. at 484 (malicious prosecution "permits damages for confinement imposed pursuant to legal process"). The common law thus supplies the measure of damages the complaint seeks. There is, moreover, no *Heck* obstacle: the conviction that Ms. Hill's

conduct produced has been set aside, so a judgment here would impugn no outstanding conviction. *Heck*, 512 U.S. at 486–87; *McDonough*, 588 U.S. at 116–18.

The *Townes* line is not to the contrary. *Townes* held that a plaintiff whose Fourth Amendment rights were violated by an unlawful stop and search could not recover for his ensuing conviction and imprisonment, because "[t]he evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all," and because the plaintiff, having "reaped an enormous benefit by reason of the illegal seizure"—the suppression of the evidence and his release—should not also collect for the consequences of his own guilt. 176 F.3d at 148. *Hector* and *Martin* apply the same Fourth Amendment reasoning. *Hector*, 235 F.3d at 157–60; *Martin*, 934 F.3d at 600–06. The rationale is the "gross disconnect" between the privacy interest that the Fourth Amendment protects and the injury of being convicted on reliable evidence. *Townes*, 176 F.3d at 148. The Third Circuit took care to say that it was not "effectively deciding . . . that a § 1983 plaintiff who was the victim of fabricated evidence can never sue for damages incurred after a prosecutor's decision to indict." *Hector*, 235 F.3d at 161. And *Martin*

itself distinguished, rather than disapproved, *Kerr v. City of Chicago*, 424 F.2d 1134, 1141 (7th Cir. 1970), which permitted a § 1983 plaintiff to recover the fees of defending a prosecution that "hinged entirely on his involuntary confession," because those fees "ar[o]se directly from the constitutional violation"—there, of the privilege against compelled self-incrimination, a right that, like the right to an impartial jury, protects the integrity of the trial itself. 934 F.3d at 600–01; *see* JA37. The corruption of a trial by the officer charged with protecting its jury is a fair-trial injury of that kind, not a Fourth Amendment injury. There is no disconnect of the *Townes* kind here. The interest protected by the Sixth Amendment right to an impartial jury is the interest in a fair adjudication; the injury alleged is the destruction of a fair adjudication and the waste of the money spent to obtain one. The damages sought are tailored, as *Carey* requires, "to the interests protected by the particular right in question." 435 U.S. at 259. And Mr. Murdaugh has "reaped" no "benefit" from Ms. Hill's misconduct. The suppression in *Townes* gave the plaintiff something he was never entitled to. The vacatur here gave Mr. Murdaugh only what he was always entitled to, a trial before an

impartial jury, and left him where he stood in January 2023 on the murder charges, having lost the money that paid for the first trial.

A substantial body of authority outside the *Townes* line allows recovery of the costs of a criminal proceeding that a state actor's constitutional violation caused. *Kerr*, 424 F.2d at 1141; *Borunda*, 885 F.2d at 1389–90 ("[E]xpenditures for legal representation during the prior criminal proceeding most assuredly constitute economic harm. The reasonable amount of these expenditures, if proved to the jury's satisfaction to be the consequence of appellants' illegal conduct, is recoverable as compensatory damages."); *Glass v. Anne Arundel County*, No. WDQ-12-1901, 2015 WL 4619631, at *4 (D. Md. July 30, 2015) (surveying the authority and concluding that "the weight of the above-described persuasive authority favors the allowance of the recovery of attorneys' fees incurred during an underlying state action as an item of damages in a § 1983 suit," provided that the plaintiff shows the fees "were a 'natural consequence' of the unlawful conduct"). This Court has not addressed the question. *Id.* at *3. It should not do so for the first time on a Rule 12(b)(1) record in which the district court never applied Rule 12(b)(6).

## III. THE COMPLAINT ALLEGES A COMPLETED CONSTITUTIONAL INJURY REDRESSABLE BY NOMINAL AND PUNITIVE DAMAGES, AND THE DISTRICT COURT ERRED IN DISMISSING THE ENTIRE ACTION AFTER CONSIDERING ONE ITEM OF COMPENSATORY RELIEF.

The district court's judgment suffers from a third defect that requires vacatur regardless of the Court's view of the fee claim. The court dismissed the action in its entirety after concluding that one item of compensatory damages was not traceable to Ms. Hill. It did not consider whether Mr. Murdaugh has standing to seek the other relief the complaint demands. He does.

### A. *The violation of the right to an impartial jury is a concrete injury that Ms. Hill inflicted.*

"No right touches more the heart of fairness in a trial" than the right to an impartial jury. *Barnes v. Joyner*, 751 F.3d 229, 240 (4th Cir. 2014) (quoting *Stockton v. Virginia*, 852 F.2d 740, 743 (4th Cir. 1988)). The Supreme Court held sixty years ago that a court officer's private statements to jurors bearing on the defendant's guilt violate the Sixth Amendment, because such an officer "beyond question carries great weight with a jury." *Parker v. Gladden*, 385 U.S. 363, 365 (1966) (per curiam); *see also Turner v. Louisiana*, 379 U.S. 466, 472–73 (1965); *Remmer v. United States*, 347 U.S. 227, 229 (1954). The complaint

alleges, and the Supreme Court of South Carolina has held, that Ms. Hill violated that right. JA7 ¶ 8; JA18–19 ¶¶ 52–55; JA20 ¶¶ 60–61.

A completed violation of a constitutional right is a concrete injury in fact. *TransUnion*, 594 U.S. at 425 (intangible harms with "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," including the "abridgment of free speech" and "infringement of free exercise," are concrete); *Uzuegbunam v. Preczewski*, 592 U.S. 279, 289–92 (2021). The denial of a fair trial by an impartial jury has a closer relationship to traditionally cognizable harm than most intangible harms: it is of a kind with the injury the common law redressed through the action for malicious prosecution, and it is one the Constitution itself names. *Cf. McDonough*, 588 U.S. at 116–18 (identifying malicious prosecution as the common-law analogue for a claim that fabricated evidence was used to secure a prosecution). Ms. Hill has disputed whether her conduct amounted to a constitutional violation, which is a merits question; she has never suggested that, if it did, anyone but she committed it.

The decisions holding that a plaintiff lacks standing to sue over a past constitutional wrong confirm the point, because each rests on a

defect this case does not have. Some plaintiffs sought only prospective relief for a past wrong, and an injunction or declaration cannot redress an injury that has already occurred. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03, 111 (1983); *Steel Co.*, 523 U.S. at 106–09. Some asserted an interest the Constitution does not protect—most often a crime victim's interest in the investigation or prosecution of someone else—and so alleged no cognizable injury at all. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Lefebure v. D'Aquilla*, 15 F.4th 650, 654 (5th Cir. 2021); *Pratt v. Helms*, 73 F.4th 592, 595 (8th Cir. 2023). And some alleged a chain of causation that ran through the exercise of prosecutorial discretion. *Lefebure*, 15 F.4th at 654. Mr. Murdaugh seeks damages, not an injunction. He asserts the right to an impartial jury in his own criminal trial—a right the Sixth Amendment names and the Supreme Court has enforced against court officers since 1966, *Parker*, 385 U.S. at 365—not an interest in the prosecution of anyone else. And the officer who violated the right is the defendant. *Uzuegbunam* itself confirms that when those elements are present, "a request for nominal damages satisfies the redressability element of

standing where a plaintiff's claim is based on a completed violation of a legal right." 592 U.S. at 292; *see Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir. 2024) (applying *Uzuegbunam* to a § 1983 claim). The Court there was careful to say that its holding "concerns only redressability" and that the plaintiff must still "establish the other elements of standing (such as a particularized injury)" and "plead a cognizable cause of action." 592 U.S. at 292–93. Mr. Murdaugh has done both: the injury is particular to him, and the cause of action is the one § 1983 supplies for the deprivation, under color of state law, of a right secured by the Constitution.

### B. *Nominal damages redress that injury as a matter of course under § 1983 and independently satisfy Article III.*

Under § 1983, nominal damages are not merely available; they follow as a matter of course upon proof of the violation of an absolute constitutional right. "[T]he denial of procedural due process should be actionable for nominal damages without proof of actual injury," *Carey*, 435 U.S. at 266; the law "obligates a court to award nominal damages when a plaintiff establishes the violation of his right to procedural due process but cannot prove actual injury," *Farrar v. Hobby*, 506 U.S. 103, 112 (1992); and in this Circuit, "[a] plaintiff's failure to prove compensatory damages results in nominal damages, typically one dollar,"

*Price*, 93 F.3d at 1246. The right to an impartial jury, like the right to procedural due process, is violated by the process itself whatever the outcome—the accused "was entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors," *Parker*, 385 U.S. at 366—so *Carey*'s reasoning applies to it directly. The entitlement flows from the substantive law of § 1983, not from the form of the prayer.

Ms. Hill argued below that nominal damages are unavailable because the complaint does not use the words "nominal damages," quoting *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 116 (4th Cir. 2021), for the proposition that a boilerplate request for other relief "does not preserve a nominal damages claim when there is absolutely no specific mention in the Complaint of nominal damages." JA55 n.6; JA107–108. The district court did not adopt that argument, and it should not be adopted here. *Foodbuy* was a commercial contract dispute in which the plaintiff, having conceded that it suffered no actual injury from the overcharges it complained of, sought to salvage standing on appeal by pointing to its boilerplate prayer for "other and further relief." 987 F.3d at 115–16. The Court held that a plaintiff who has pleaded no injury and no entitlement to nominal damages cannot manufacture standing

after the fact. *Id.* at 116. Mr. Murdaugh's position is the opposite. He pleaded an actual, concrete injury—the violation of his right to an impartial jury—and he pleaded the facts that, under *Carey*, *Farrar*, and *Price*, entitle him to nominal damages as a matter of law upon proof of that violation. JA20 ¶¶ 58–62. Nothing in *Foodbuy* holds that a § 1983 plaintiff forfeits a substantive entitlement that the Supreme Court has described as obligatory by omitting the word "nominal" from his prayer, and Rule 54(c), which provides that a final judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings," Fed. R. Civ. P. 54(c), confirms that the wording of a prayer does not cap the relief a pleaded claim supports.

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997), which Ms. Hill's reply also invoked, JA107, concerned a nominal-damages theory first read into the complaint on appeal, after the case had become moot, against a State that was not a party; nothing like that is present here. Ms. Hill's reply quoted *Uzuegbunam* for the proposition that nominal damages "are not a consolation prize for the plaintiff who pleads, but fails to prove, compensatory damages." JA107. That is correct: nominal damages are not a substitute for unproven

compensatory loss; they redress the violation itself, which is the completed injury pleaded here. In any event, the complaint's demand for "such other and further relief as the Court may deem just and proper," JA20, is here joined to a specific demand for compensatory and punitive damages for a specific constitutional violation—not, as in *Foodbuy*, offered as a substitute for any injury. And should the Court doubt that nominal damages may be awarded on this complaint as written, the cure is leave to add two words, not dismissal of the action.

### C. *The complaint expressly demands punitive damages, which a nominal award will support.*

The complaint also alleges that Ms. Hill's conduct "was motivated by evil motive or intent and involved reckless or callous indifference to Mr. Murdaugh's federally protected right to trial before an impartial jury, including Ms. Hill's desire to profit personally from Mr. Murdaugh's trial," and it demands punitive damages on that basis. JA20 ¶ 63. That is the standard for punitive damages under § 1983. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Ms. Hill argued below that punitive damages cannot stand "unanchored by any award of compensatory or nominal damages." JA108. Whatever the merit of that proposition, *see People Helpers Found., Inc. v. City of Richmond*, 12 F.3d 1321, 1327 (4th Cir. 1993)

(applying "the majority rule that punitive damages are not recoverable when compensatory damages have not been awarded"), it does not help her, because a nominal award supplies the anchor. In *Gregg v. Ham*, the jury awarded nominal damages on the plaintiff's § 1983 claim and $30,000 in punitive damages on the same claim, and this Court left the punitive award undisturbed. 678 F.3d 333, 338, 343–44 (4th Cir. 2012). Because Mr. Murdaugh is entitled to nominal damages upon proof of the violation, his demand for punitive damages presents a live claim for relief that a judgment against Ms. Hill would provide. Ms. Hill's only argument below was that punitive damages cannot stand alone, JA108; she did not contend that a demand for punitive damages anchored by nominal damages fails to present a case or controversy, and the district court did not address punitive damages.

### D. *Standing must be assessed for each form of relief, and the district court assessed it for one.*

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *TransUnion*, 594 U.S. at 431 (internal quotation marks omitted); *Wells v. Johnson*, 150 F.4th 289, 299 (4th Cir. 2025). Ms. Hill invoked that principle below. JA106. It cuts against her. The principle distinguishes kinds of remedy—damages from an injunction, *see*

*TransUnion*, 594 U.S. at 431 (illustrating it with that contrast)—and, taken at its broadest, it means that standing is assessed remedy by remedy. Even on the district court's own approach, a conclusion that one measure of compensatory damages is untraceable disposes, at most, of that measure. It does not dispose of the demand for punitive damages, the entitlement to nominal damages, or the action. Ms. Hill herself framed her standing argument as a request to dismiss "Plaintiff's claim of compensatory damages," JA49; JA55; JA56, yet the court dismissed the action. The district court's order, which "concludes . . . that the Complaint fails to establish that Plaintiff has Article III standing," JA120 n.1, and dismisses the action, treats a ruling about the amount of compensatory damages as a ruling about the court's power over the case. That was error, and it independently requires vacatur.

## IV. THE REMAINING ISSUES SHOULD BE ADDRESSED BY THE DISTRICT COURT ON REMAND.

Ms. Hill's motion also argued that the complaint fails to state a claim and that she is entitled to Eleventh Amendment, quasi-judicial, and qualified immunity. The district court "decline[d] to address" those arguments. JA120 n.1. Ms. Hill may urge them as alternative grounds for affirmance. The Court should decline the invitation. "It is the general

rule . . . that a federal appellate court does not consider an issue not passed upon below," *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); appellate courts are "court[s] of review, not of first view," *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005); and the ordinary course is to remand so that the district court may conduct the analysis it has not yet conducted. *Evans v. United States*, 105 F.4th 606 (4th Cir. 2024), does not counsel otherwise. There the jurisdictional and merits questions were inextricably intertwined, so the district court's ruling on the facial challenge necessarily decided the merits, and this Court reviewed it as a merits ruling. *Id.* at 615–16. Here, by contrast, the district court expressly declined to decide whether the complaint states a claim or whether any immunity applies, JA120 n.1, so there is no merits ruling on those questions for this Court to review.

Nor may *Evans* be turned to the opposite purpose. Ms. Hill may argue that, because causation of damages is a merits question, the Court should treat the dismissal as one under Rule 12(b)(6) and affirm it on that basis. *Evans* permits that course only where the district court has in substance decided the merits question in ruling on a facial jurisdictional challenge, 105 F.4th at 615–16, and here that describes a

single question: whether the defense expenditure is a loss caused by the tampering. Treated as a merits ruling on that question, reviewed de novo, *id.* at 616, the order fares no better. Causation is ordinarily a question for the factfinder, and on a motion to dismiss the only question is whether it is plausibly alleged; a complaint that alleges a violation of the right to an impartial jury, the officer who committed it, and a loss that followed from it states a claim under Rule 12(b)(6) whatever the measure of recovery ultimately proves to be. And in any event, the costs of a criminal proceeding whose verdict a state officer's constitutional violation rendered void are recoverable consequential damages under § 1983, *Carey*, 435 U.S. at 254–59; *Borunda*, 885 F.2d at 1389–90, and the complaint plausibly alleges that Ms. Hill's tampering made the defense those costs purchased worthless, JA19–20 ¶¶ 56–57, 60–62. *See supra* Part II.D. Recharacterizing the dismissal would therefore require reversal, not affirmance. The remainder of Ms. Hill's motion—failure to state a claim on other grounds and the three immunities—was not decided in any guise, and *Evans* has no application to it.

Should the Court nonetheless reach them, none has merit. The Eleventh Amendment "does not erect a barrier against suits to impose

‘individual and personal liability’ on state officials under § 1983,” *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991), and Ms. Hill is sued in her individual capacity, as the district court itself recognized, JA119, and as the demand for punitive damages and her own assertion of qualified immunity confirm. JA20 ¶ 63; JA61–63; *see Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995) (capacity is determined from the nature of the claims, the relief sought, and the course of proceedings; a request for punitive damages and the assertion of qualified immunity each indicate an individual-capacity suit). She had, moreover, left office two years before this action was filed. JA17 ¶ 48.

Quasi-judicial immunity extends to court clerks who “act in obedience to a judicial order or under the court’s direction,” *McCray v. Maryland*, 456 F.2d 1, 5 (4th Cir. 1972), and to officials whose judgments are “‘functional[ly] comparab[le]’ to those of judges,” *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993); it does not extend to an officer who “is not called upon to exercise judicial or quasi-judicial discretion,” “regardless of any apparent relationship of his role to the judicial system,” *McCray*, 456 F.2d at 3–4; and secretly urging jurors to convict

is neither an act under the court's direction nor an exercise of judicial discretion.

Qualified immunity is unavailable to an officer who "knowingly violate[s] the law," *Malley*, 475 U.S. at 341, or whose conduct is an obvious violation of a right that has been clearly established for decades, *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (per curiam); *Parker*, 385 U.S. at 365. That the state trial court initially found the prejudice unproven, JA17 ¶ 47, goes to whether the tampering was shown to have affected the verdict under a standard the Supreme Court of South Carolina rejected, not to whether a clerk could reasonably believe she was free to urge jurors in private to disbelieve the accused. A clerk who conceals her communications with jurors from the judge, instructs jurors not to discuss them, fabricates a report of juror misconduct, lies to the juror about it, and then denies under oath having questioned a juror at all, JA8 ¶ 18; JA9–13 ¶¶ 20–33; JA15 ¶ 42, is not an officer who reasonably believed her conduct lawful. That the facts are unprecedented, as Mr. Murdaugh acknowledged in state court, JA64, does not mean the law was unsettled; *Hope* and *Taylor* deny immunity where novel facts present an obvious violation of a settled rule. Ms. Hill's

own memorandum acknowledged that her comments, like the bailiff's in *Parker*, "could be construed as attacking" the accused's credibility, JA69, and quoted *Parker*'s holding that the accused "was entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors," JA66—which also answers her argument that nine jurors heard nothing and that a mistrial was the most her conduct could have caused. And Ms. Hill's reply argued qualified immunity from the "novelty" of the damages claim, JA111, which confuses the right with the remedy: the question is whether the conduct violated clearly established law, not whether the measure of damages was settled.

Finally, Mr. Murdaugh asked in the alternative for leave to amend. JA103. Because the district court dismissed for want of jurisdiction, it had no occasion to consider whether amendment should be permitted—a request it was free to deny in its discretion, but not to leave unaddressed on the premise that it lacked power to consider it. Should the Court conclude that any aspect of the complaint is deficient, the appropriate course is to remand so that the district court may consider a motion for leave to amend under Rule 15(a)(2) in the first instance.

## CONCLUSION

The judgment of the district court should be vacated, and the case should be remanded for further proceedings. Should the Court instead treat the dismissal as one under Rule 12(b)(6), the judgment should be reversed.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Murdaugh respectfully requests oral argument. The appeal presents a recurring question about the line between Article III traceability and merits causation, and the dismissal of an entire action—including a claim for a completed constitutional violation that a state supreme court has already found—on a ruling about one item of damages. Argument would assist the Court.

Respectfully submitted,

s/Phillip D. Barber

Richard A. Harpootlian
Phillip D. Barber
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street
Columbia, SC 29201
(803) 252-4848
rah@harpootlianlaw.com
pdb@harpootlianlaw.com

James M. Griffin
Margaret N. Fox
GRIFFIN HUMPHRIES LLC
4408 Forest Drive
Columbia, SC 29202
(803) 744-0800
jgriffin@griffinhumphries.com
mfox@griffinhumphries.com

*Counsel for Appellant*

Columbia, South Carolina
October 9, 2026.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because, excluding the parts of the brief exempted by Rule 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, and proof of service), this brief has 12,613 words.

This brief complies with the typeface and type style requirements of Rule 32(a)(5) and Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

s/Phillip D. Barber
Phillip D. Barber
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street
Columbia, SC 29201

*Counsel for Appellant*

Columbia, South Carolina
October 9, 2026.