No. 26-2087

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

RICHARD ALEXANDER MURDAUGH, SR.,

*Plaintiff-Appellant,*

v.

REBECCA HILL,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

## JOINT APPENDIX

Richard A. Harpootlian
Phillip D. Barber
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street
Columbia, SC 29201

James M. Griffin
Margaret N. Fox
GRIFFIN HUMPHRIES LLC
4408 Forest Drive
Columbia, SC 29202

*Counsel for Appellant*

Charles F. Turner, Jr.
G. Troy Thames
James N. Ozmint
Bowman H. Taylor
WILLSON JONES CARTER & BAXLEY, P.A.
325 Rocky Slope Road, Suite 201
Greenville, SC 29607

*Counsel for Appellee*

**TABLE OF CONTENTS**

District Court Docket Entries (Civ. No. 2:26-cv-01989-RMG)............JA1

Complaint (ECF No. 1), filed May 17, 2026........................................JA5

Plaintiff's Local Civil Rule 26.01 Answers to Interrogatories (ECF No. 3), filed May 17, 2026..................................................................JA22

Defendant's Motion to Dismiss, with Memorandum in Support (ECF Nos. 10, 10-1), filed June 18, 2026...............................................JA25

Defendant's Answer to Complaint (ECF No. 11), filed June 18, 2026 ..........................................................................................JA71

Defendant's Local Civil Rule 26.01 Answers to Interrogatories (ECF No. 12), filed June 18, 2026.............................................................JA83

Plaintiff's Response in Opposition to Motion to Dismiss (ECF No. 15), filed July 2, 2026..........................................................................JA85

Defendant's Reply in Support of Motion to Dismiss (ECF No. 17), filed July 9, 2026.......................................................................JA104

Plaintiff's Local Civil Rule 26.03 Answers to Interrogatories (ECF No. 20), filed July 15, 2026..............................................................JA112

Defendant's Local Civil Rule 26.03 Answers to Interrogatories (ECF No. 22), filed July 20, 2026..............................................................JA115

Order Granting Motion to Dismiss (ECF No. 26), filed August 5, 2026 ........................................................................................JA119

Notice of Appeal (ECF No. 27), filed August 5, 2026.......................JA124

Judgment (ECF No. 28), filed August 6, 2026.................................JA126

**U.S. District Court**
**District of South Carolina (Charleston)**
**CIVIL DOCKET FOR CASE #: 2:26-cv-01989-RMG**

| | |
|---|---|
| Murdaugh v. Hill<br>Assigned to: Honorable Richard M Gergel<br>Case in other court: 4CCA, 26-02087<br>Cause: 42:1983 Civil Rights Act | Date Filed: 05/17/2026<br>Date Terminated: 08/05/2026<br>Jury Demand: Both<br>Nature of Suit: 440 Civil Rights: Other<br>Jurisdiction: Federal Question |

**Plaintiff**

**Richard Alexander Murdaugh, Sr** represented by

**Andrew Richard Hand**
Richard A Harpootlian PA
1410 Laurel Street
PO Box 1090 (29202)
Columbia, SC 29201
803-252-4848
Fax: 803-252-4810
Email: arh@harpootlianlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Mixon Griffin**
Griffin Humphries LLC
PO Box 999
Columbia, SC 29202
803-744-0800
Email: jgriffin@griffinhumphries.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Margaret Nicole Fox**
Griffin Humphries LLC
PO Box 999
Columbia, SC 29202
803-744-0800
Email: mfox@griffinhumphries.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Phillip Donald Barber**
Richard A Harpootlian PA
1410 Laurel Street
Columbia, SC 29201
803-252-4848
Fax: 803-252-4810
Email: pdb@harpootlianlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard A Harpootlian**
Richard A Harpootlian PA
1410 Laurel Street
Columbia, SC 29201

803-252-4848
Email: rah@harpootlianlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Rebecca Hill** represented by **Bowman Hughes Taylor**
Wilson Jones Carter and Baxley
325 Rocky Slope Road
Suite 201
Greenville, SC 29607
803-984-4709
Email: bhtaylor@wjcblaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles F Turner , Jr**
Wilson Jones Carter and Baxley PA
325 Rocky Slope Road
Suite 201
Greenville, SC 29607
864-672-3711
Fax: 864-373-7055
Email: CFTurner@wjlaw.net
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James Nathan Ozmint**
Willson Jones Carter and Baxley (Gre)
325 Rocky Slope Rd
Suite 201
Greenville, SC 29607
864-213-4146
Email: jnozmint@wjcblaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**G Troy Thames**
Willson Jones Carter and Baxley (NCha)
4922 O'Hear Avenue
Suite 301
North Charleston, SC 29405
843-576-3790
Email: tthames@wjcblaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/17/2026 | 1 | COMPLAINT against Rebecca Hill ( Filing fee $ 405 receipt number ASCDC-13172654.), filed by Richard Alexander Murdaugh, Sr. Service due by 8/17/2026(mdea ) (Entered: 05/18/2026) |
| 05/17/2026 | 3 | Local Rule 26.01 Answers to Interrogatories by Richard Alexander Murdaugh, Sr.(mdea ) (Entered: 05/18/2026) |

| Date Filed | # | Docket Text |
|---|---|---|
| 05/18/2026 | 4 | Summons Issued as to Rebecca Hill. (mdea ) (Entered: 05/18/2026) |
| 05/18/2026 | 5 | TEXT ORDER: Plaintiff's responses to the court's Local Rule 26.01 interrogatories identify this action as one that "may be related" to a prior case assigned to the undersigned, Murdaugh v. Moye, 3:22-cv-0608-CMC. Upon review, the court has determined the two cases are not sufficiently related to warrant assignment to a single judge. Plaintiff's lawsuit in Moye arose from different factual allegations, asserted a different cause of action against a different defendant, and sought different relief. Accordingly, the court directs the Clerk of Court to reassign this case to a district judge in the Charleston Division. Signed by Honorable Cameron McGowan Currie on 5/18/2026. (mdea ) Modified on 5/18/2026 to edit text (mdea, ). (Entered: 05/18/2026) |
| 05/18/2026 | 6 | Case Reassigned to Honorable Richard M Gergel. Honorable Cameron McGowan Currie no longer assigned to the case. (bshr, ) (Entered: 05/18/2026) |
| 06/16/2026 | 7 | MOTION for Leave to File Excess Pages by Rebecca Hill. Response to Motion due by 6/30/2026. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. No proposed order.(Turner, Charles) (Entered: 06/16/2026) |
| 06/16/2026 | 8 | TEXT ORDER granting 7 Motion for Leave to File Excess Pages. AND IT IS SO ORDERED. Entered at the direction of the Honorable Richard M Gergel on 6/16/26.(ltap, ) (Entered: 06/16/2026) |
| 06/18/2026 | 10 | MOTION to Dismiss by Rebecca Hill. Response to Motion due by 7/2/2026. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Memo in Support)No proposed order.(Turner, Charles) (Entered: 06/18/2026) |
| 06/18/2026 | 11 | ANSWER to 1 Complaint by Rebecca Hill.(Turner, Charles) (Entered: 06/18/2026) |
| 06/18/2026 | 12 | Local Rule 26.01 Answers to Interrogatories by Rebecca Hill.(Turner, Charles) (Entered: 06/18/2026) |
| 06/18/2026 | 13 | CONFERENCE AND SCHEDULING ORDER Rule 26(f) Conference Deadline 7/9/2026, 26(a) Initial Disclosures due by 7/23/2026, Rule 26 Report due by 7/23/2026, Motions to Amend Pleadings due by 9/16/2026, Plaintiffs ID of Expert Witness due by 10/16/2026, Defendants ID of Expert Witnesses Due by 11/16/2026, Records Custodian Affidavit due by 11/23/2026, Discovery due by 12/15/2026, Motion in Limine must be filed no sooner than fifteen (15) days and no later than ten (10) days prior to the date certain set for jury selection and trial, Motions due by 12/29/2026, Rule 26(a)(3) Disclosures due by 21 business days prior to jury selection, Pretrial Briefs due by 5 business days prior to the date set for jury selection, Case ready for jury selection and/or trial on or after 5/3/2027 Signed by Honorable Richard M Gergel on 6/18/2026. (sshe, ) (Entered: 06/18/2026) |
| 07/01/2026 | 14 | Consent MOTION for Confidentiality Order by Richard Alexander Murdaugh, Sr. Response to Motion due by 7/15/2026. Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6 or Fed. R. Crim. P. 45. (Attachments: # 1 Proposed Order)Proposed order is being emailed to chambers with copy to opposing counsel.(Barber, Phillip) (Entered: 07/01/2026) |
| 07/02/2026 | 15 | RESPONSE in Opposition re 10 MOTION to Dismiss Response filed by Richard Alexander Murdaugh, Sr.Reply to Response to Motion due by 7/9/2026 Add an additional 3 days only if served by mail or otherwise allowed under Fed. R. Civ. P. 6. (Barber, Phillip) (Entered: 07/02/2026) |
| 07/07/2026 | 16 | ORDER granting 14 Motion for Confidentiality Order. AND IT IS SO ORDERED. Signed by Honorable Richard M Gergel on 7/7/2026.(ltap, ) (Entered: 07/07/2026) |
| 07/09/2026 | 17 | REPLY to Response to Motion re 10 MOTION to Dismiss Response filed by Rebecca Hill. (Turner, Charles) (Main Document 17 replaced to correct case number as provided by filing user on 7/10/2026) (cper, ). (Entered: 07/09/2026) |

| Date Filed | # | Docket Text |
|---|---|---|
| 07/15/2026 | 18 | Joint Rule 26 Outline of Discovery Plan by Richard Alexander Murdaugh, Sr.(Barber, Phillip) (Entered: 07/15/2026) |
| 07/15/2026 | 19 | Joint Rule 26(f) Report by Richard Alexander Murdaugh, Sr.(Barber, Phillip) (Entered: 07/15/2026) |
| 07/15/2026 | 20 | Local Rule 26.03 Answers to Interrogatories by Richard Alexander Murdaugh, Sr.(Barber, Phillip) (Entered: 07/15/2026) |
| 07/20/2026 | 21 | MEDIATION ORDER: Mediation Due by 1/15/2027. AND IT IS SO ORDERED. Signed by Honorable Richard M Gergel on 7/20/2026. (ltap, ) (Entered: 07/20/2026) |
| 07/20/2026 | 22 | Defendant's Local Rule 26.03 Answers to Interrogatories by Rebecca Hill.(Turner, Charles) (Entered: 07/20/2026) |
| 07/20/2026 | 23 | NOTICE of Appearance by James Nathan Ozmint on behalf of Rebecca Hill (Ozmint, James) (Entered: 07/20/2026) |
| 07/20/2026 | 24 | NOTICE of Appearance by Bowman Hughes Taylor on behalf of Rebecca Hill (Taylor, Bowman) (Entered: 07/20/2026) |
| 08/03/2026 | 25 | NOTICE of Appearance by G Troy Thames on behalf of Rebecca Hill (Thames, G) (Entered: 08/03/2026) |
| 08/05/2026 | 26 | ORDER granting 10 Motion to Dismiss. AND IT IS SO ORDERED. Signed by Honorable Richard M Gergel on 8/5/2026.(ltap, ) (Entered: 08/05/2026) |
| 08/05/2026 | 27 | NOTICE OF APPEAL as to 26 Order on Motion to Dismiss by Richard Alexander Murdaugh, Sr. - Filing fee $ 605, receipt number ASCDC-13314918. The Docketing Statement form, Transcript Order form and CJA 24 form may be obtained from the Fourth Circuit website at www.ca4.uscourts.gov (Barber, Phillip) (Entered: 08/05/2026) |
| 08/06/2026 | 28 | JUDGMENT entered. (sshe, ) (Entered: 08/06/2026) |
| 08/06/2026 | 29 | Transmittal Sheet for Notice of Appeal to USCA re 27 Notice of Appeal, The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (sshe, ) (Entered: 08/06/2026) |

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Richard Alexander Murdaugh, Sr., Plaintiff, v. Rebecca Hill, Defendant. | ) | Civ. No. 2:26-1989-CMC **COMPLAINT** |

Plaintiff Richard Alexander "Alex" Murdaugh, through his undersigned attorneys, brings this civil rights action against Defendant Rebecca "Becky" Hill, formerly the Clerk of Court for Colleton County, South Carolina, and would respectfully show this Court the following:

**NATURE OF THE ACTION**

1. This is a civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Becky Hill, former Clerk of Court for Colleton County, South Carolina, for the deliberate and egregious deprivation of Plaintiff's constitutional right to a fair trial before an impartial jury, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

2. "No right touches more the heart of fairness in a trial" than the right to an impartial jury. *Barnes v. Joyner*, 751 F.3d 229, 240 (4th Cir. 2014). That right was stolen from Alex Murdaugh by Becky Hill.

3. On March 7, 2023, following a six-week trial in Colleton County, South Carolina, Mr. Murdaugh was convicted of the murders of his wife, Margaret "Maggie" Murdaugh, and his son, Paul Murdaugh. He was sentenced to two consecutive life terms. He maintained his innocence then. He maintains his innocence now.

4. Neither Mr. Murdaugh nor his counsel knew at the time of trial that Ms. Hill— the elected Clerk of Court for Colleton County, the officer of the court charged as the primary caretaker of the jury—had secretly and deliberately inserted herself into the jury's deliberative process for personal financial gain. As the Supreme Court of South Carolina has now held, Ms. Hill "placed her fingers on the scales of justice." *South Carolina v. Murdaugh*, Op. No. 28329, at 2 (S.C. May 13, 2026).

5. Acting under color of state law and abusing the power and authority of her elected office, Ms. Hill made repeated, improper extrajudicial communications to jurors in which she urged them not to be "fooled," "confused," "thrown off," or "convinced" by Murdaugh and his defense. In so doing, Ms. Hill "became a character witness on behalf of the State, encouraging the jurors to question Murdaugh's credibility." and "essentially implored the jurors to find him guilty, the ultimate issue in the case." *Id.* at 15.

6. Ms. Hill's motive was her self-serving desire for personal profit. She wanted to write a book about the most high-profile trial in South Carolina history so she could buy a lake house. And, as the South Carolina Supreme Court found, she believed a guilty verdict "would be the best way to sell books." *Id.* at 5. She was, in the words of former Chief Justice Toal, "attracted by the siren call of celebrity" and allowed "her desire for the public attention of the moment to overcome her duty to her oath of office." *Id.* at 6.

7. Ms. Hill's improper communications to the jury were deliberate acts, repeated across multiple occasions, directed at jurors she was sworn to protect from outside influence, by an officer of the court "elected by the very people who make up the Colleton County jury pool." *Id.* at 19. Her conduct was, according to the South Carolina Supreme Court, "breathtaking," "disgraceful," and "unprecedented in South Carolina." *Id.* at 19–20.

8. On May 13, 2026, the Supreme Court of South Carolina unanimously reversed Plaintiff's murder convictions and remanded for a new trial, holding that Ms. Hill's jury tampering violated Mr. Murdaugh's constitutional right to a fair trial by an impartial jury.

9. Mr. Murdaugh brings this action to hold Ms. Hill accountable for her wrongful conduct under color of state law and to recover compensatory and punitive damages as provided by law.

## PARTIES

10. Defendant Rebecca Hill was the Clerk of Court for the Circuit Court, Colleton County, South Carolina, from shortly after her election in November 2020 until March 25, 2024. She was elected to office by the voters of Colleton County pursuant to Article V, § 24, of the South Carolina Constitution.

11. Plaintiff Richard Alexander Murdaugh is a former attorney who was charged with the murders of his wife Maggie Murdaugh and son Paul Murdaugh. After a six-week jury trial in Colleton County, he was convicted on March 2, 2203. His murder convictions were vacated by a published opinion of the South Carolina Supreme Court issued May 13, 2026. *South Carolina v. Murdaugh*, Op. No. 28329 (S.C. May 13, 2026).

## JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

13. This Court has personal jurisdiction over Defendant Hill pursuant to Rule 4(k) of the Federal Rules of Civil Procedure because she is a citizen and resident of South Carolina and therefore subject to the jurisdiction of a South Carolina court of general jurisdiction.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in South Carolina.

15. The Charleston Division is the proper division pursuant to Local Civ. Rule 3.01(A) (D.S.C.) because a substantial part of the events giving rise to the claim occurred in Colleton County, which is in the Charleston Division.

## FACTUAL ALLEGATIONS

16. Alex Murdaugh was indicted for the murder of his wife Maggie and son Paul on July 14, 2022. His murder trial began January 23, 2023. The trial ran for six weeks, ending with convictions on the evening of March 2, 2023, and sentencing on March 3, 2023. The State rested its case-in-chief and the defense began its case on Friday, February 17, 2023.

17. Court was not held on February 20, which was President's Day. After returning from the holiday, Defendant Becky Hill began to enter the jury rooms often. As the defense began its case, Ms. Hill told jurors, "Y'all are going to hear things that will throw you all off. Don't let this distract you or mislead you."

18. Additionally, Ms. Hill and Juror No. 826, the new jury foreperson, on multiple occasions went to another room to have private conversations lasting five or ten minutes. Sometimes they would go into the jury room's single-occupancy bathroom together. Ex. B ¶ 4. Foreperson Juror No. 826 never said anything about the content of those conversations to other jurors. Ms. Hill even instructed jurors they could not ask Foreperson Juror No. 826 about the conversations.

19. Two days later, on Thursday, February 23, and continuing through the next day, Mr. Murdaugh testified in his own defense. Before he began his testimony, Ms. Hill told jurors "not to be fooled" by the evidence Mr. Murdaugh's attorneys presented, which at least one juror understood to mean that Mr. Murdaugh would lie when he testified. Ms. Hill also instructed the jury to "watch him closely," to "look at his actions," and to "look at his movements," which at least one juror understood to mean that Mr. Murdaugh was guilty. Immediately after Mr.

Murdaugh testified, Foreperson Juror No. 826 told the jury that Mr. Murdaugh was crying on cue. She also criticized the former foreperson, Juror No. 589, for handing Mr. Murdaugh a box of tissues when he was crying on the stand because "that is what the defense wants us to do."

20. The next court day after Mr. Murdaugh's testimony, Monday, February 27, Ms. Hill told the trial judge, the Honorable Clifton B. Newman, about a Facebook posting she purportedly saw on the evening of Friday, February 24 (the day Mr. Murdaugh's testimony concluded), while perusing a Facebook group page called "Walterboro Word of Mouth." The post, purportedly by Juror No. 785's ex-husband, allegedly stated that "his ex-wife was saying that she was on the jury and saying stuff about how her verdict was going to be."

21. Judge Newman asked Ms. Hill to produce a copy of the posting. She could not produce a copy, but according to Ms. Hill, a subordinate employee in the Clerk's Office, Lori Weiss, discovered that the post was taken down and replaced with an apology post:

> Folks I posted a ugly post yesterday to which I have deleted and I kinda in a round about way directed it towards a certain person and I would like to apologize to everyone who read it that ugly for me to do that and yes I let Satan control me and I broke down and started drinking and when I was drunk I made that post and I'm sorry

22. The "apology" post states the initial post was already deleted on February 16, so it would have been impossible for Ms. Hill to see the original post on February 24.

23. Juror No. 785's ex-husband has averred in a sworn statement that he made no such posts. Mr. Murdaugh has obtained an authentic download of the entirety of Mr. Stone's Facebook activity from January 23, 2023, to March 2, 2023, which confirms he did not post the apology (the supposed original post if deleted would not be recoverable at this point under Facebook's retention policies) and that he in fact never posted anything to the "Walterboro Word of Mouth" Facebook page during the trial.

24. On February 28, Ms. Hill questioned Juror No. 785 about the fictious post on "Walterboro Word of Mouth" alone in her office in the courthouse. She told Juror No. 785 that someone had emailed her stating her ex-husband posted on the "Walterboro Word of Mouth" Facebook page that Juror No. 785 had been drinking with her ex-husband, and that while drunk she expressed opinions on the guilt or innocence of Mr. Murdaugh. Juror No. 785 told Ms. Hill that never happened and that she had not seen her ex-husband in ten years. Juror No. 785 asked to see the post, but Ms. Hill would not show it to her. Ms. Hill directly asked Juror No. 785 whether she was inclined to vote guilty or not guilty. Juror No. 785 said she had not made up her mind.

25. Later that day, Ms. Hill told Juror No. 785 that the South Carolina Law Enforcement Division (SLED) and Colleton County Sheriff's Office personnel went to Mr. Stone's house, and he confirmed he made the post. This was a fabrication by Ms. Hill. Ms. Hill told Juror No. 785 she would somehow "reinstate" a restraining order Juror No. 785 previously had against Mr. Stone, which is something that Ms. Hill did not have the authority to do.

26. Still later that day, Judge Newman examined Juror No. 785 regarding both the nonexistent Facebook post and the tenant/co-worker email[1] *in camera*. Juror No. 785 described her interactions with Ms. Hill regarding the Facebook post. She denied making any inappropriate comments about the case to third parties, and stated she wanted to hear closing arguments before forming an opinion on Mr. Murdaugh's guilt or innocence.

[1] A co-worker of a tenant of Juror No. 785 emailed the Court on February 27 stating that the tenant said her landlord was a juror and had expressed an opinion about the case when delivering a refrigerator to the property more than a week earlier.

27. After Juror No. 785 was dismissed, Judge Newman said, "Oh boy. I'm not too pleased about the clerk interrogating a juror as opposed to coming to me and bringing it to me." He was right to be concerned.

28. The next day, on March 1, 2023, the jury visited Moselle, the site of the murders. During the visit, Foreperson Juror No. 826 and Ms. Hill walked off to have yet another private conversation. In her book, Ms. Hill more vaguely hints at communicating her opinion on Mr. Murdaugh's guilt to the jury during the visit to the Moselle property:

> While the jurors viewed the Moselle property, we all could hear and see Alex's story was impossible.
>
> Some of us either from the courthouse, law enforcement, or jury at Moselle had an epiphany and shared our thoughts with our eyes. At that moment, many of us standing there knew. I knew and they knew that Alex was guilty.

29. That day Judge Newman also held an *in camera* conference regarding the tenant/co-worker email, in which he decided to revisit the Facebook post issue with Ms. Hill:

> THE COURT: Okay. Well, let me see what Becky is talking about. I wanted to revisit the Facebook post that you mentioned yesterday.
>
> MS. HILL: Uh-huh, right.
>
> THE COURT: That's Becky Hill, the Clerk of Court. Can you tell us about that Facebook post?
>
> MS. HILL: Yes. I think it was Friday evening just for a brief moment I perused Facebook, got on Walterboro Word of Mouth, and saw where someone had said that – well, it was the ex-husband of a juror, and he said that he noticed that his ex-wife was saying that she was on the jury and saying stuff about how her verdict was going to be, and that he was the ex-husband but she was known for talking way too much. And then I just kept on scrolling because that was enough for me. I've gotten enough.
>
> THE COURT: And how did you determine who he was talking about?
>
> MS. HILL: When I heard there was an email on Monday I figured the two went together, if it was true.
>
> THE COURT: Well, she's confirmed she has an ex-husband who she has three restraining orders out against so –

> MS. HILL: Right. So then we looked on Monday after you told me to try to go back and look for it and we couldn't find it. But then we found out his name, and we found the post and printed it out where he said that he had put something up, but that he had deleted it at the time that he had put stuff out there that wasn't nice.
>
> THE COURT: He said he got drunk afterwards.
>
> MR. MEADORS: Something about the devil.
>
> MR. HARPOOTLIAN: Didn't he say it was satan in it?
>
> MS. HILL: Satan was in it, yes. In all of the details, yes.
>
> THE COURT: All right.
>
> MS. HILL: Made me do it.
>
> THE COURT: Okay. I just wanted to have that on the record, you're reading a Facebook post by the ex-husband who said it. Of course, you haven't talked with him so you don't know where he got his information from.
>
> MS. HILL: I don't. I can find it, though.

30. But Ms. Hill never saw any such Facebook post. She made it up. Further, she knew the "apology" post was not posted by Juror No. 785's ex-husband. Juror No. 785 showed Ms. Hill a picture of her ex-husband, which is not the Facebook profile picture of the other Mr. Stone's post about Satan.

31. The next day, March 2, 2023—the day of the verdict—Juror No. 785 received a call from her ex-husband that she did not answer. The call upset her because Ms. Hill's lies had led her to believe he was posting on Facebook about her and might be stalking her. Juror No. 785 asked to speak with Ms. Hill. She told Ms. Hill she was scared. Ms. Hill told her that "the Murdaughs" probably "got to him," meaning her ex-husband.

32. Ms. Hill once again asked her opinion regarding Mr. Murdaugh's guilt. Juror No. 785 told her that Creighton Waters' closing was good, but that she still had questions. Ms. Hill asked what questions and Juror No. 785 replied that she was concerned that no murder weapon was found. Ms. Hill then asked, "well, what makes you think he's guilty?" Juror No. 785 said

Paul's video at the dog kennels. Ms. Hill then told Juror No. 785 that "everything Mr. Murdaugh has said has been lies and that I should forget about the guns, they will never be seen again." Ms. Hill then asked Juror No. 785 about the views of the rest of the jury, telling her that if the foreperson would "just go in and ask for a raise in hands this would be over and done with" and "everyone needs to be on the same page."

33. Juror No. 785 went to the jury room and, ten minutes later, was excused from the jury. In open court immediately after her excusal, Juror No. 785 asked Judge Newman if he had spoken with the Clerk of Court, referring to the conversation earlier that morning with Ms. Hill. Judge Newman responded that "I have not spoken with her today" and that this is "totally independent" of any "conversation" regarding her ex-husband, apparently misunderstanding her question to refer to the issue of the Facebook post.

34. When the jury began deliberations that evening, Ms. Hill told them that "this shouldn't take us long," and that if they deliberated past 11 p.m., they would be taken directly to a hotel even though none were prepared to stay overnight.

35. Ms. Hill told jurors that after the trial they would be famous and predicted that the media would request interviews with them. Ms. Hill even handed out reporters' business cards to jurors during the trial. Juror No. 578 took this to heart and made an appearance on <u>Good Morning America</u> the night of the verdict, which is why on the day the jury began deliberations he wore a suit coat for the first time during the trial. After the verdict and immediately before sentencing, Ms. Hill pressured the jury to speak as a group to reporters from a network news show. She traveled with jurors to New York City when they appeared on the <u>Today</u> show.

36. Ms. Hill got her book deal. Her book, "Behind the Doors of Justice," was released on August 1, 2023. She had been planning to write a book about the trial even before it began. In

the period leading up to the trial, she repeatedly told coworkers that a guilty verdict would sell more books, and that she needed to sell books because "she needed a lake house."

37. Ms. Hill's book, however, caused some jurors to come forward to describe her efforts to obtain her desired guilty verdict through jury tampering during trial. In August 2023, several jurors provided affidavits or statements to Mr. Murdaugh's defense counsel, describing Ms. Hill's jury tampering.

38. On September 5, 2023, Mr. Murdaugh filed a motion with the South Carolina Court of Appeals for leave to file a motion for a new trial based on the evidence of Ms. Hill's jury tampering. The Court of Appeals granted the motion and Mr. Murdaugh filed his motion for a new trial on October 27. On November 1, he petitioned the Supreme Court for a writ of prohibition to prohibit Judge Newman from adjudicating the new trial motion, based on public statements Judge Newman made after the jury returned guilty verdicts. On November 15, the Supreme Court denied the petition as moot because Judge Newman recused himself from hearing the new trial motion. On December 18, the Chief Justice appointed retired Chief Justice Jean H. Toal to serve as the trial judge hearing Mr. Murdaugh's motion for a new trial.

39. The trial court ordered an evidentiary hearing on January 29, 2024. A single juror testified one business day earlier, on January 26, to accommodate a scheduling conflict. The jurors (identified by anonymous letters) testified as follows:

> Jurors C, F, L, E, O, Y, W, Q, and K testified that they did not hear Ms. Hill comment on the merits of the case before the verdict.
>
> Juror P testified that he heard Ms. Hill tell jurors, regarding Mr. Murdaugh's decision to testify in his own defense, to "watch his body language."
>
> Juror X testified that she heard Ms. Hill comment, regarding Mr. Murdaugh's decision to testify in his own defense, that it was rare for a defendant to testify in a criminal case and that "this is an epic day."

> Juror Z testified that she heard Ms. Hill comment, regarding Mr. Murdaugh's decision to testify in his own defense, to watch Mr. Murdaugh's actions and to watch him closely. Juror Z testified that the comments did affect her verdict:
>
> Q. All right. Was your verdict influenced in any way by the communications of the clerk of court in this case[?]
>
> A. Yes, ma'am.
>
> Q. And how was it influenced?
>
> A. To me, it felt like she made it seem like he was already guilty.
>
> Q. All right, and I understand that, that that's the tenor of the remarks she made. Did that affect your finding of guilty in this case?
>
> A. Yes, ma'am.

40. The trial court then examined Juror Z regarding her affidavit attached to Mr. Murdaugh's motion for a new trial, and she affirmed each paragraph therein, including averments that during trial Ms. Hill "told the jury 'not to be fooled' by the evidence presented by Mr. Murdaugh's attorneys, which I understood to mean that Mr. Murdaugh would lie when he testified," and that Ms. Hill "instructed the jury to 'watch him [Mr. Murdaugh] closely' immediately before he testified, including 'look at his actions' and 'look at his movements,' which I understood to mean that he was guilty."

41. Ms. Hill testified after the jurors. She denied engaging in any jury tampering. She also denied stating that she wanted a guilty verdict to promote book sales. She admitted she plagiarized portions of her book and that her profits from its sale in the six months before it was withdrawn from publication because of her plagiarism were approximately $100,000. She admitted the book contained unfounded statements included for "poetic license" or "literary ease."

42. Examination by the trial court revealed that Ms. Hill's denial, during direct examination, of questioning a juror during the murder trial was not truthful, and that she in fact did want a guilty verdict.

43. Barnwell County Clerk of Court Rhonda McElveen testified next to rebut Ms. Hill's denial that she wanted a guilty verdict to promote book sales. Ms. McElveen was assisting in the courtroom during the murder trial. She testified:

> Q. And did she discuss with you -- what, if anything, did she discuss with you about how she felt the verdict should turn out to be in the Murdaugh trial vis a vis in reference to the book, what would help the book?
>
> A. A guilty verdict.
>
> Q. Tell the judge and, and me what exactly she said to you that you remember. This is prior to the trial.
>
> A. Okay. Well, first of all, she said we might want to write a book because she needed a lake house and I needed to retire, and from then, further conversation was that a guilty verdict would sell more books, and we left it at that. This was before even in December.
>
> Q. And, and when, when -- did she ever say that again to you during this -- the, the weeks you spent there?
>
> A. Several times. It could be said -- it was, you know, amongst friends in her office or we might be having dinner, that kind of stuff, but that's about it.
>
> Q. That she needed a guilty verdict to sell more books?
>
> A. That would be the best way to sell books, yes, sir.
>
> Q. The best way to sell books.
>
> Now, during this -- during this process, did she ever express to you an opinion on whether or not, in fact, was Mr. Murdaugh guilty of the murders of his son and his, his wife?
>
> A. Yes, sir.
>
> Q. Tell me. Tell me what she said and if you remember when.
>
> A. I don't exactly remember when. I know it's over half of the trial had already happened, but the evidence was coming forth that it looked like he might be guilty. She made a comment that guilty verdict would be better for the sale of books.

44. Ms. McElveen also testified that Ms. Hill made comments to her like "'[d]on't be fooled by the evidence presented by Mr. Murdaugh's attorneys," identical to statements reported by some jurors. And she testified that Ms. Hill insisted on allowing a book writer (who wrote the forward to Ms. Hill's book) to sit in the well of the court during trial, where she could see sealed exhibits, under the subterfuge of being a Sunday school teacher.

45. The final witness was the alternate juror, Juror 741. She testified that Ms. Hill told jurors "the defense is about to do their side" and "[t]hey're going to say things that will try to confuse you" but "[d]on't let them confuse you or convince you or throw you off."

46. At the conclusion of the hearing, the trial court ruled from the bench:

> Did Clerk of Court Hill make comments to any juror which expressed her opinion what the verdict would be? Ms. Hill denies [doing so] and so the question becomes was her denial credible.
>
> I find that the clerk of court is not completely credible as a witness. Ms. Hill was attracted by the siren call of celebrity. She wanted to write a book about the trial and expressed that as early as November 2022, long before the trial began. She denies that this is so, but I find that she stated to the clerk of court Rhonda McElveen and others her desire for a guilty verdict because it would sell books. She made comments about Murdaugh's demeanor as he testified, and she made some of those comments before he testified to at least one and maybe more jurors.
>
> . . .
>
> The clerk of court allowed public attention of the moment to overcome her duty.

47. The trial court nevertheless denied the motion for a new trial, reasoning that there is no presumption of prejudice from tampering with jurors during a trial about the matter pending before the jury and Mr. Murdaugh failed to prove that Ms. Hill's comments changed the jury's verdict.

48. On March 25, 2024, Ms. Hill resigned from office.

49. In May 2024, it was reported that the State Ethics Commission had referred ethics complaints against Ms. Hill for criminal prosecution.

50. On May 14, 2025, Ms. Hill was arrested and charged with perjury, obstruction of justice, and misconduct in office. On December 8, 2025, Ms. Hill pleaded guilty to those charges. Her perjury conviction concerned her testimony at the evidentiary hearing for Mr. Murdaugh's motion for a new trial, in which she testified she did not give news media access to sealed trial exhibits including crime scene photographs of Maggie and Paul Murdaugh's slain bodies. Forensic evidence, however, conclusively proved she escorted news medica to secured areas of the courthouse after hours, where she allowed them to photograph sealed exhibits. Ms. Hill attempted to profit from Maggie and Paul's murders not only by advising the jury to convict Mr. Murdaugh so that she could write a book about his conviction, but even by selling access to grisly photographs of their slain bodies.

51. On May 13, 2026, the South Carolina Supreme Court vacated the order denying the motion for a new trial.

52. The South Carolina Supreme Court ruled that "[b]oth the State and Murdaugh's defense skillfully presented their cases to the jury" but "their efforts were in vain because Colleton County Clerk of Court Rebecca Hill placed her fingers on the scales of justice, thereby denying Murdaugh his right to a fair trial by an impartial jury," and "we have no choice but to reverse the denial of Murdaugh's motion for a new trial due to Hill's improper external influences on the jury." *South Carolina v. Murdaugh*, Op. No. 28329, at 2 (S.C. May 13, 2026).

53. The South Carolina Supreme Court, reviewing the evidentiary record including Ms. Hill's own sworn testimony, stated, "we hold Murdaugh established Hill made comments that the day Murdaugh testified was 'epic' or 'important' and urged the jurors not to be 'fooled,'

'confused,' 'thrown off,' or 'convinced' by Murdaugh and to watch Murdaugh's body language closely." *Id.* at 15. It further ruled that "Hill clearly advised the jurors to find Murdaugh and the evidence he presented not credible and, essentially, urged them to render a guilty verdict." *Id.* at 19.

54. The South Carolina Supreme Court ruled that Ms. Hill engaged in this wrongful conduct under color of state law, such that her "position as the Colleton County Clerk of Court, an officer of the court who managed the trial and was the primary caretaker of the jury, amplified the impact Hill's comments had on the jury." *Id.*

55. The South Carolina Supreme Court further ruled that "[t]he breathtaking and disgraceful effort of Hill to undermine the jury process is unprecedented in South Carolina," and "[a]ccordingly, we hold Murdaugh's right to a fair trial by an impartial jury was violated" by Ms. Hill's intentional misconduct. *Id.* at 20.

56. Following the revelation of Mr. Murdaugh's financial crimes, a South Carolina court placed him in receivership. Mr. Murdaugh had funded his murder trial defense with a $600,000 withdrawal from his 401(k) retirement funds. This withdrawal to fund his legal defense was authorized by the court overseeing the receivership. These retirement funds were employer contributions to his retirement account untainted by any criminal activity and were his sole remaining asset.

57. Mr. Murdaugh spent the entire $600,000 on his trial defense. The South Carolina Supreme Court has ruled that Ms. Hill's actions—motivated by her own desire to profit from the trial—caused these funds to be lost. *See id*. at 2 (ruling that Mr. Murdaugh's trial defense was "in vain because Colleton County Clerk of Court Rebecca Hill placed her fingers on the scales of justice, thereby denying Murdaugh his right to a fair trial by an impartial jury").

**FOR A FIRST CAUSE OF ACTION**
**Jury tampering in violation of the Sixth and Fourteenth Amendments to the United States Constitution**
**42 U.S.C. § 1983**

58. Plaintiff incorporates each of the foregoing paragraphs as if set forth verbatim.

59. The right to trial before an impartial jury is secured by the Sixth and Fourteenth Amendments to the U.S. Constitution.

60. As set forth above, Mr. Murdaugh's right to trial before an impartial jury was violated by Ms. Hill.

61. As set forth above, Ms. Hill violated Mr. Murdaugh's constitutional right to a fair trial while acting under color of state law as the elected Clerk of Court.

62. As a result of Ms. Hill's actions, Mr. Murdaugh suffered monetary damages of $600,000.

63. As set forth above, Ms. Hill's conduct was motivated by evil motive or intent and involved reckless or callous indifference to Mr. Murdaugh's federally protected right to trial before an impartial jury, including Ms. Hill's desire to profit personally from Mr. Murdaugh's trial. Mr. Murdaugh therefore is entitled to an award of punitive damages against Ms. Hill.

64. Mr. Murdaugh is also entitled to recovery of attorney's fees and costs under 42 U.S.C. § 1988.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendant in this matter in a sum sufficient to adequately compensate him for damages suffered, for punitive damages, for reasonable attorney's fees, for the costs of this action, and for such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Phillip D. Barber
Richard A. Harpootlian (Fed. ID No. 1730)
Phillip D. Barber (Fed. ID No.12816)
Andrew R. Hand (Fed. ID No. 12176)
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street (29201)
Post Office Box 1090
Columbia, SC 29202
(803) 252-4848
rah@harpootlianlaw.com
pdb@harpootlianlaw.com
arh@harpootlianlaw.com

James M. Griffin (Fed. ID No. 1053)
Margaret N. Fox (Fed. ID No. 10576)
GRIFFIN HUMPHRIES LLC
4408 Forest Drive (29206)
Post Office Box 999
Columbia, South Carolina 29202
(803) 744-0800
jgriffin@griffinhumphries.com
mfox@griffinhumphries.com

*Attorneys for Plaintiff*

May 17, 2026
Columbia, South Carolina

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Richard Alexander Murdaugh, Sr., Plaintiff, v. Rebecca Hill, Defendant. | ) | Civ. No. 2:26-1989-CMC **PLAINTIFF'S RESPONSES TO LOCAL CIVIL RULE 26.01 (D.S.C.) INTERROGATORIES** |

Plaintiff Richard Alexander Murdaugh, Sr., hereby responds to the Local Civil Rule 26.01 (D.S.C.) Interrogatories as follows:

(A) State the full name, address, and telephone number of all persons or legal entities who may have a subrogation interest in each claim and state the basis and extent of that interest.

**ANSWER: None.**

(B) As to each claim, state whether it should be tried jury or nonjury and why.

**ANSWER: Jury. Plaintiff has demanded a jury trial.**

(C) State whether the party submitting these responses is a publicly owned company and separately identify (1) any parent corporation and any publicly held corporation owning ten percent (10%) or more of the party's stock; (2) each publicly owned company of which it is a parent; and (3) each publicly owned company in which the party owns ten percent (10%) or more of the outstanding shares.

**ANSWER: Plaintiff is a natural person.**

(D) State the basis for asserting the claim in the division in which it was filed (or the basis of any challenge to the appropriateness of the division). *See* Local Civ. Rule 3.01 (D. S.C.).

**<u>ANSWER</u>: This action arises from events occurring in Colleton County, South Carolina, which is within the Charleston Division.**

(E) Is this action related in whole or in part to any other matter filed in this district, whether civil or criminal? If so, provide (1) a short caption and the full case number of the related action; (2) an explanation of how the matters are related; and (3) a statement of the status of the related action. Counsel should disclose any cases that *may be* related regardless of whether they are still pending. Whether cases *are* related such that they should be assigned to a single judge will be determined by the clerk of court based on a determination of whether the cases arise from the same or identical transactions, happenings, or events; involve the identical parties or property; or for any other reason would entail substantial duplication of labor if heard by different judges.

**<u>ANSWER</u>: This action may be related to *Murdaugh v. Maye*, 3:22-cv-608-CMC. That action was a civil rights action arising from Plaintiff's pretrial confinement during the same prosecution that is at issue in this action, although the underlying civil rights claims are not related nor are the defendants.**

(F) If the defendant is improperly identified, give the proper identification and state whether counsel will accept service of an amended summons and pleading reflecting the correct identification.

**<u>ANSWER</u>: Not applicable.**

(G) If you contend that some other person or legal entity is, in whole or in part, liable to you or the party asserting a claim against you in this matter, identify such person or entity and describe the basis of their liability.

**<u>ANSWER</u>: Not applicable.**

(H) In an action in which jurisdiction is based on diversity under 28 U.S.C. § 1332(a), a party or intervenor must, unless the court orders otherwise, name--and identify the citizenship of--every individual or entity whose citizenship is attributed to that party or intervenor. This response must be supplemented when any later event occurs that could affect the court's jurisdiction under § 1332(a).

**ANSWER**: **Not applicable.**

Respectfully submitted,

/s/ Phillip D. Barber
Richard A. Harpootlian (Fed. ID No. 1730)
Phillip D. Barber (Fed. ID No.12816)
Andrew R. Hand (Fed. ID No. 12176)
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street (29201)
Post Office Box 1090
Columbia, SC 29202
(803) 252-4848
rah@harpootlianlaw.com
pdb@harpootlianlaw.com
arh@harpootlianlaw.com

James M. Griffin (Fed. ID No. 1053)
Margaret N. Fox (Fed. ID No. 10576)
GRIFFIN HUMPHRIES LLC
4408 Forest Drive (29206)
Post Office Box 999
Columbia, South Carolina 29202
(803) 744-0800
jgriffin@griffinhumphries.com
mfox@griffinhumphries.com

*Attorneys for Plaintiff*

May 17, 2026
Columbia, South Carolina

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Richard Alexander Murdaugh, Sr., Plaintiff, v. Rebecca Hill, Defendant. | ) | C/A No.: 2:26-cv-01989-RMG **DEFENDANT'S MOTION TO DISMISS** |

**TO: PLAINTIFF, RICHARD ALEXANDER MURDAUGH, SR., BY AND THROUGH HIS COUNSEL**

YOU WILL PLEASE TAKE NOTICE that Defendant, by and through the undersigned counsel, respectfully moves this Court to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted and/or for this Court's lack of subject-matter jurisdiction pursuant to Rules 12(b)(6) and/or P. 12(b)(1) of the Federal Rules of Civil Procedure.

Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for dismissal of Plaintiff's suit based upon Plaintiff's failure to state a claim for relief. Plaintiff alleges, in short, that Defendant's actions deprived him of an impartial jury and that he is, therefore, entitled to recover the full sum of the money the spent on his criminal trial defense. Such damages fall outside the scope of 42 U.S.C. § 1983 and 1988: the Fourth Circuit has never established that damages stemming from the legal costs associated with defending an underlying criminal case are redressable under the statute. Further, to the extent that other circuits have considered the question, they, along with the Fourth Circuit, have been clear that in the event such damages are recoverable, a plaintiff must show that his damages were caused by the defendant's actions. Such cannot be the case here, where the entirety of the economic damages claimed by the Plaintiff would have been spent on his criminal defense regardless of any actions taken by this Defendant. Similarly, and for

much the same reasons, Defendant is entitled to dismissal of Plaintiff's claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, where the compensatory damages sought by the Plaintiff are not traceable to the Defendant's actions. Finally, to the extent, if any, that Plaintiff argues otherwise that, inconsistent with his Complaint, he seeks damages related to the second, future trial, Defendant likewise moves to dismiss Plaintiff's Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure: under such a theory, Plaintiff's damages have not, and indeed might not ever, accrue, and Plaintiff's suit would therefore not be ripe for adjudication, divesting this Court of jurisdiction to entertain the same.

Finally and most critically, even if Plaintiff states a compensable claim, Defendant is nonetheless entitled to Eleventh Amendment immunity, quasi-judicial immunity, and qualified immunity, all of which bars Plaintiff's suit.

Defendant's arguments and legal authority are contained in the memorandum of law submitted herewith.

Respectfully Submitted,

*s/Charles F. Turner, Jr.*
Charles F. Turner, Jr. (Fed. I.D. # 05849)
G. Troy Thames (Fed. I.D. #07713)
J. Nathan Ozmint (Fed. I.D. #14360)
Bowman H. Taylor (Fed. I.D. #14690)
WILLSON JONES CARTER & BAXLEY, P.A.
325 Rocky Slope Road, Suite 201
Greenville, SC 29607
Telephone: (864) 672-3711
Facsimile: (864) 373-7055
Email: cfturner@wjcblaw.com
tthames@wjcblaw.com
jnozmint@wjcblaw.com
bhtaylor@wjcblaw.com
**ATTORNEYS FOR DEFENDANT**

June 18, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Richard Alexander Murdaugh, Sr., | ) | C/A No.: 2:26-cv-01989-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| v. | ) | |
| | ) | |
| Rebecca Hill, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant submits this Memorandum in Support of her Motion for Dismiss Plaintiff's Complaint. For the reasons outlined below, Defendant respectfully requests this Court find Plaintiff's Complaint fails to state a claim upon which relief can be granted and/or this Court lacks subject-matter jurisdiction, and grant Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and/or Fed. R. Civ. P. 12(b)(1).

Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for dismissal of Plaintiff's suit based upon Plaintiff's failure to state a claim for relief. Plaintiff alleges, in short, that Defendant's actions deprived him of an impartial jury and that he is, therefore, entitled to recover the full sum of the money he spent on his criminal defense. Such damages fall outside the scope of 42 U.S.C. § 1983 and 1988: the Fourth Circuit has never established that damages stemming from the legal costs associated with defending an underlying criminal case are redressable under the statute. Further, to the extent that other circuits have considered the question, they, along with the Fourth Circuit, have been clear that in the event such damages are redressable, a plaintiff must show that his damages were caused by the defendant's actions. Such cannot be the case here, where the entirety of the economic damages claimed by the Plaintiff would have been spent on his criminal defense regardless of any actions taken by this Defendant. Similarly, and for

much the same reasons, Defendant is entitled to dismissal of Plaintiff's claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, where the compensatory damages sought by the Plaintiff are not traceable to the Defendant's actions. Additionally, to the extent, if any, that Plaintiff argues otherwise that, inconsistent with his Complaint, he seeks damages related to the second, future trial, Defendant likewise moves to dismiss Plaintiff's Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure: under such a theory, Plaintiff's damages have not, and indeed might not ever, accrue, and Plaintiff's suit would therefore not be ripe for adjudication, divesting this Court of jurisdiction to entertain the same.

Finally and most critically, even had Plaintiff stated a compensable claim, Defendant is nonetheless entitled to Eleventh Amendment immunity, quasi-judicial immunity, and qualified immunity, all of which bar Plaintiff's suit.

## STANDARD OF REVIEW

Defendant moves to dismiss Plaintiff's Complaint under Rule 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion examines whether Plaintiff has stated a claim upon which relief can be granted. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The United States Supreme Court has made clear that, under Rule 8 of the Federal Rules of Civil Procedure, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d

1081 (2007). The court "may also consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

"The fundamentals of standing are well-known and firmly rooted in American constitutional law. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). "To establish Article III standing, a plaintiff must identify (1) an injury that he or she suffered (2) that can be fairly traced to the defendant's conduct and (3) that will likely be rectified by the relief the plaintiff seeks." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

## **ARGUMENT**

Plaintiff alleges that during the course of his criminal trial for the murders of his wife and son, which began on January 23, 2023, and ended on March 2, 2023, Defendant Becky Hill had multiple improper contacts with, and made multiple improper, prejudicial comments to, the jury. ECF No. 1, at pp. 4-9. On May 13, 2026, the South Carolina Supreme Court set aside Plaintiff's murder convictions and ordered a new trial upon finding Defendant's actions were improper and presumptively prejudiced the jury's verdict. *Id.* at p. 3. Plaintiff brings the instant civil suit under 42 U.S.C. § 1983 seeking to recover compensatory damages for Defendant's alleged constitutional violation of Murdaugh's Sixth Amendment right to a fair trial by an impartial jury, secured by the Fourteenth Amendment. *Id.* at p. 16. Plaintiff seeks compensatory damages in the amount of $600,000.00, which represents the flat fee paid to Plaintiff's legal defense team, a combination of attorneys from Griffin Humphries, LLC, and Richard A. Harpootlian, P.A., for their work in his underlying state criminal trial. *Id.* at p. 15.

Plaintiff does not contend Defendant's alleged constitutional violation of Murdaugh's Sixth Amendment right to a fair trial by an impartial jury, secured against the states by the Fourteenth Amendment, caused Plaintiff to incur the additional legal costs of defending any post-trial and appellate litigation or future retrial. Rather, Plaintiff seeks to fund such a possible retrial pursuant to a novel theory of recovery under 42 U.S.C. § 1983, contending that Defendant's alleged constitutional violation caused the entirety of his underlying state murder trial and his economic loss of the funds spent in defense thereon.

**I. The foundational principles § 1983's remedial provision bar Plaintiff's recovery of legal defense fees incurred in connection with his underlying state criminal trial.**

Plaintiff's suit is based upon a novel theory of liability and recovery. To the undersigned counsels' knowledge, this is a case of first impression: no Federal Circuit or District Court has addressed the question of whether a criminal defendant who alleges their Sixth Amendment right to an impartial jury has been violated can recover damages for the legal defense fees incurred in connection with the underlying state criminal proceeding in a subsequent civil suit brought pursuant to 42 U.S.C. § 1983. Even expanding this inquiry beyond the narrow scope of the Sixth Amendment, the Fourth Circuit has never directly addressed whether a § 1983 plaintiff "can recover attorneys' fees incurred in connection with an underlying state criminal proceeding." *Glass v. Anne Arundel Cty.*, No. WDQ-12-1901, 2015 U.S. Dist. LEXIS 100065, at *8 (D. Md. July 30, 2015); *see White v. City of Greensboro*, 608 F. Supp. 3d 248, 265 (M.D.N.C. 2022).

Absent such guiding law, Defendant turns to the general principles upon which § 1983 remedies are based and to other circuits' treatment of Plaintiff's theory of liability and recovery. The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 304 (1986) (internal quotation marks omitted)). As such, the common law of torts

"provide[s] the appropriate starting point for the for the [damages] inquiry under § 1983." *Carey*, *v. Piphus*, 435 U.S. 247, 257-58 (1978); *Stachura*, 477 U.S. at 307 ("Congress adopted [the] common-law system of recovery when it established liability for 'constitutional torts.'"). The general purpose of damages under 42 U.S.C. § 1983 is to "**compensate persons for injuries** that are **caused by** the deprivation of constitutional rights." *Carey*, 435 U.S. at 254-257 (emphasis added) ("[D]amages awards under § 1983 should be governed by the principle of compensation."); *see Stachura*, 477 U.S. at 307 ("Deterrence is also an important purpose of this system, but it operates through the mechanism of damages that are *compensatory* — damages grounded in determinations of plaintiffs' actual losses." (emphasis in original)).

Like the common-law tort claims upon which § 1983 were modeled, claims brought pursuant to § 1983 require both "but-for" and proximate cause analyses. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012); *see Malley v. Briggs*, 475 U.S. 335, 346 n.7 (1986) ("§ 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)). The Supreme Court has instructed, "[i]n order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law." *Carey*, 435 U.S. at 258-59. Ordinarily, then, the compensation awarded under a proven constitutional violation is governed by the interests intended to be protected by the right and by the damages foreseeably stemming from that right's violation. In the instant case, however, Plaintiff prays for damages consisting of the entire cost of the underlying criminal trial, during the course of which Plaintiff alleges that Defendant violated his Sixth Amendment right. The Fourth Circuit has never

recognized § 1983 as countenancing such a broad grant of damages, and those circuits that have addressed the issue have, predominantly, rejected such an approach.

### A. Federal circuits are split as to whether § 1983 permits recovery of legal fees incurred during an underlying state criminal proceeding.

There is a split of authorities on the issue of whether a criminal defendant, whose constitutional rights have been violated in an underlying state criminal proceeding, can recover damages for incarceration, legal costs and/or fees, or emotional distress in a subsequent § 1983 suit. Compare *Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999) (barring recovery of damages for attorneys' fees and costs incurred in underlying criminal proceeding when evidence for gun possession charges arose from a violation of the Fourth Amendment), with *Borunda v. Richmond*, 885 F.2d 1384, 1389-90 (9th Cir. 1988) (recognizing recovery of money spent on legal representation's defense of underlying, acquitted criminal charges as compensatory damages for economic harm).

Defendant first addresses the Second Circuit's approach. In *Townes*, the Second Circuit panel rejected the plaintiff's § 1983 compensatory damages claim relating to his conviction and incarceration stemming from a Fourth Amendment violation. 176 F.3d 138 (2d Cir. 1999). In his criminal trial, the plaintiff moved to suppress a firearm found pursuant to a stop and search of the taxicab in which he was a passenger. 176 F.3d at 142. The plaintiff's motion was denied, and he subsequently entered a guilty plea for the charge of unlawful possession of a firearm. *Id.* After over two years of incarceration, the state appellate division reversed the conviction upon finding the police lacked probable cause to seize and search the taxicab, which subsequently resulted in dismissal of the indictment. *Id.* The Second Circuit panel first held the fruit of the poisonous tree doctrine "cannot link the unreasonable seizure and search to Townes's conviction and incarceration because this evidentiary doctrine is inapplicable to civil § 1983 actions." 176 F.3d at 145. The

panel explained that the fruit of the poisonous tree doctrine is calculated to safeguard the constitutional rights of suspects by deterring future unlawful conduct by state actors through incentive, "avoidance of the suppression of illegally seized evidence," rather than by creating a "personal constitutional right for the party aggrieved." *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 347-48 (1974)). The panel found that the doctrine's "deterrence objective ha[d] already been achieved (though late) by the rulings of the Appellate Division and Court of Appeals," and reasoned that extending "the doctrine to § 1983 actions would impermissibly recast the relevant proximate cause inquiry to one of taint and attenuation." 176 F.3d at 146.

The Second Circuit likewise found that the plaintiff's incarceration was not proximately caused by the alleged Fourth Amendment violation. 176 F.3d at 146-47. The panel determined "the unconstitutional seizure and search of Townes's person was not a proximate cause of his conviction" because the trial court's refusal to suppress the evidence was "an intervening and superseding cause of Townes's conviction," 176 F.3d at 146-47. As a result, the panel affirmed the dismissal of the plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). 176 F.3d at 147.

Thereafter, the panel discussed a second, independent reason for which the plaintiff was foreclosed from recovery: recovery of compensable damages was improper where, "the injury [plaintiff] pleads . . . does not fit the damages he seeks." 176 F.3d at 148. The Second Circuit panel pointed out the "gross disconnect between the constitutional violations (Townes's Fourth Amendment right to be free from unreasonable searches and seizures) and the injury or harm for which Townes seeks a recovery (his subsequent conviction and incarceration)." 176 F.3d at 148 (explaining "[t]he evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all."). The panel concluded this "gross disconnect" ran afoul of the Supreme Court's directive to tailor § 1983 liability "to fit the interests protected by the

particular constitutional right in question." *Id.* (citing *Carey*, 435 U.S. at 257-58). Moreover, the panel reasoned that "[n]o Fourth Amendment value would be served" if plaintiff reaped the financial benefit sought in addition to already reaping "an enormous benefit by reason of the illegal seizure and search to which he was subjected: his freedom." 176 F.3d at 148. The panel reiterated the purpose of suppression is to deter state actors from unconstitutionally invading into law-abiding citizens' privacy, and to compensate the plaintiff for his conviction and time served "would vastly overdeter [sic] police officers and would result in a wealth transfer that is peculiar, if not perverse." *Id.* (internal quotation marks and citation omitted). The panel affirmed the dismissal of plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failing to "seek the only relief to which he may have been entitled." 176 F.3d at 149.

Alternatively, in *Borunda*, the Ninth Circuit rejected the appellant's contention "that admission of the amount of attorneys' fees expended [by respondents] during the prior state court criminal proceeding as an element of § 1983 damages was a prejudicial error." 885 F.2d 1384, 1389 (9th Cir. 1988). The *Borunda* respondents were previously charged with resisting arrest, assault on a police officer, and public intoxication by the appellant officers. 885 F.2d at 1387. After a jury trial, the respondents were acquitted on all criminal charges and subsequently brought a § 1983 action against the appellants. *Id.* After a four-day trial in the § 1983 action, the jury returned a special verdict in favor of the respondents, awarding them both approximately $11,000.00 each. *Id.*

First, the panel quickly disposed of two cases cited by the appellant in support of this proposition as inapposite because the cases involved attorney fees awarded pursuant to § 1988, not § 1983. 885 F.2d at 1389. Next, the panel found the respondent's "expenditures for legal representation during the prior criminal proceeding most assuredly constitute[d] economic harm,"

which is a compensable injury under § 1983. *Id.* at 1390. The Ninth Circuit panel held that "[t]he reasonable amount of these expenditures [for legal representation], if proved to the jury's satisfaction to be the consequence of appellant's illegal conduct, is recoverable as compensatory damages." *Id.* The Ninth Circuit panel rejected the appellants' argument "that their illegal conduct did not proximately cause the expenditure of attorneys' fees in defending against the criminal charge" because the prosecutor's decision to prosecute the case was an intervening and superseding exercise of independent judgment. 885 F.2d at 1390. While recognizing that "the prosecutor filing the criminal complaint is presumed to have exercised independent judgment in determining that probable cause for an arrest exists," the panel found the petitioner's had submitted "sufficient evidence to challenge the presumption." 885 F.2d at 1390. The panel determined based on the evidence presented, "[t]he jury was entitled to find . . . that appellants procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney." *Id.* Thus, "[t]he amount of attorneys' fees incurred during the criminal prosecutions was a direct and foreseeable consequence of the appellant's unlawful conduct." *Id.* As such, the Fifth Circuit found "no abuse of discretion in its admission." *Id.*

The Third and Seventh Circuits have adopted the *Townes* rational and rejected *Borrunda*. *See Hector v. Watt*, 235 F.3d 154, 157 (3d Cir. 2000), *as amended* (Jan. 26, 2001) (rejecting the § 1983 plaintiff's compensatory damages claim for expenses incurred during his underlying criminal prosecution, including $23,000.00 in attorney's fees, upon finding "damages for an unlawful search should not extend to post-indictment legal process, for the damages incurred in that process are too unrelated to the Fourth Amendment's privacy concerns."); *Martin v. Marinez*, 934 F.3d 594, 605 (7th Cir. 2019) (affirming the district court's limitation of the § 1983 plaintiff's compensatory damages claim for his 65-day incarceration and lost income resulting from his

underlying criminal prosecution upon determining to allow plaintiff "to recover damages for his subsequent imprisonment, set in motion by an arrest supported by probable cause, would amount to precisely the sort of mismatch between the violation and the damages that *Townes* and *Hector* sought to avoid."). Defendant urges this Court to do the same.

**B. This Court should adopt the second circuit's rationale barring recovery of legal fees incurred during an underlying state criminal proceeding in a subsequent § 1983 action.**

*Townes* is the proper persuasive authority for this Court's determination of the issues presented by Plaintiff's Complaint. Defendant submits that the Third and Seventh Circuit adopted *Townes*, as opposed to *Borrunda,* because the Ninth Circuit's decision improperly omits any discussion of the Supreme's Court tailoring instruction. *see Carey*, 435 U.S. at 258-59; *Borrunda*, 885 F.2d at 1389-90; *Townes*, 176 F.3d at 148 (recognizing "[t]he goal of the Court's § 1983 jurisprudence has been to tailor liability to fit the interested protected by the particular constitutional right in question."); *Hector*, 235 F.3d at 159 (explaining "caselaw makes clear that we should keep in mind the interests protected by the constitutional provision, and should weigh competing policies in designing remedies for Fourth Amendment violations."); *Martin*, 934 F.3d at 599 (framing the issue on appeal as "whether the post-arrest damages for incarceration Martin seeks would effectively redress the interests the Fourth Amendment is intended to protect.").

Failing to consider the tailoring of liability to fit the interest protected by a given constitutional right, the Ninth Circuit focused solely on the theory of proximate causation when assessing the plaintiff's entitlement to compensatory damages under § 1983. *Borrunda*, 885 F.2d at 1389. The Ninth Circuit grounded their decision with support from *Kerr v. City of Chicago*, 424 F.2d 1134 (7th Cir. 1970), *cert. denied*, 400 U.S. 833 (1970), finding *Kerr* permitted a plaintiff in a civil rights action to "recover the attorneys' fees in a state criminal action where the expenditure

is a foreseeable result of the acts of the defendant." *Id.* The Seventh Circuit, however, has since made clear that *Kerr* is not controlling precedent in § 1983 actions brought by criminal defendants seeking damages for incarceration, legal costs and/or fees, or emotional distress stemming from a Fourth or Fifth Amendment violation in their underlying criminal proceedings. *Martin*, 934 F.3d at 600. In rejecting the *Martin* plaintiff's contention that *Kerr* established that he was entitled to pursue damages for his post-arrest incarceration, the Seventh Circuit explained "[t]he precise issue in *Kerr* was [] whether the plaintiff should have been allowed to present evidence in his civil case of attorneys' fees expended in his underlying criminal case, which hinged entirely on his involuntary confession." 934 F.3d at 600 (citing *Kerr*, 424 F.2d at 1141). The Seventh Circuit panel further explained that *Kerr* redressed "the precise interest which the Fifth Amendment protects: the right not to be compelled in a criminal case to be a witness against oneself," as "the damages sought—expenses of defending the criminal trial prosecuted on the strength of the involuntary confession—[arose] directly from the constitutional violation." 934 F.3d at 601.

Moreover, *Borrunda* and *Kerr* dealt with evidentiary issues inapplicable here. *See Martin*, 934 F.3d at 604 (defining the *Borunda* issue as "whether the district court had erred in admitting evidence of the plaintiffs' prior acquittal of criminal charges and evidence of attorneys' fees spent during the criminal proceeding."). The factual circumstances here are likewise distinguishable from *Borunda*, in which the jury there found the officers lacked probable cause for the arrest – here, Plaintiff has not alleged, and, indeed, cannot allege, that any action of Defendant affected the probable cause upon which Plaintiff's prosecution and trial were based. *See Martin*, 934 F.3d at 605. As such, the factual situations in *Townes*, *Hector*, and *Martin* are more analogous. *See Townes*, 176 F.3d at 142; *Hector*, 235 F.3d at 155; *Martin*, 934 F.3d at 596-97. The Ninth Circuit's failure to address the Supreme Court's tailoring instruction and the distinguishable factual and legal issues

on appeal in *Borrunda* demonstrate *Townes* is a more appropriate persuasive guide to this Court's analysis of the instant matter.

The Fourth Circuit has favorably cited to *Townes*; this "certainly suggests that the court is not disapproving of the analysis." *White v. City of Greensboro*, 608 F. Supp. 3d 248, 266 (M.D.N.C. 2022); *see Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (citing *Townes* in support of the Court's explanation that "constitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation."). Furthermore, *Townes* has been cited repeatedly by district courts within the Fourth Circuit when assessing civil damages for constitutional violations under § 1983. *Id.*; *see, e.g.*, *Ware v. James City Cty.*, 652 F. Supp. 2d 693 (E.D. Va. 2009) (dismissing plaintiff's unreasonable search and seizure claim under § 1983 on summary judgment while noting plaintiff "has already reaped an enormous benefit by reason of the illegal seizure [] to which he was subjected: his freedom." (alteration in original) (quoting *Townes*, 176 F.3d at 148)), *aff'd sub nom.*, *Ware v. James City Cty.*, 380 F. App'x 274 (4th Cir. 2010) (unpublished). Indeed, this very Court has cited to *Townes* favorably twice. *Vaughn v. Whitfield*, No. 2:12-2405-RMG-BHH, 2013 U.S. Dist. LEXIS 131293, at *51-54 (D.S.C. July 30, 2013) (citing *Townes* in support of the Court's causation analysis and damages assessment which resulted in recommending dismissal because plaintiff "has not pled or proven actionable injury based on [any] alleged unlawful search."), *report and recommendation adopted sub nom.*, *Vaughn v. Whitfield*, No. 8:12-CV-2405-RMG, 2013 U.S. Dist. LEXIS 130279, at *9-10 (D.S.C. Sept. 12, 2013) (adopting the Magistrate Judge's Report and Recommendation in full and dismissing plaintiff's unreasonable search and seizure claim under § 1983 on summary judgment); *Cullins v. Sumter City Police Dep't*, No. 8:10-264-RMG-BHH, 2011 U.S. Dist. LEXIS 8056, at *20-22 (D.S.C. Jan. 4, 2011) (same), *report and recommendation adopted sub nom.*, *Cullins v. Sumter City*

*Police Dep't*, No. 8:10-264-RMG-BHH, 2011 U.S. Dist. LEXIS 8107 (D.S.C. Jan. 27, 2011) (same).

Accordingly, Defendant urges this Court to adopt the rationale set forth in *Townes* when analyzing the two (2) dispositive questions before it: (1) whether Defendant's alleged constitutional violation caused the attorneys' fees incurred by Plaintiff in connection with his underlying criminal trial; and (2) whether awarding damages to compensate Plaintiff for the cost of defending the underlying criminal trial would be tailored to the interests protected by the Sixth Amendment right to trial by an impartial jury.[1]

**II. There is no causal connection between Defendant's alleged constitutional violation and the attorneys' fees incurred by Plaintiff in his underlying criminal trial.**

Plaintiff is not entitled to recovery of his expenditures for legal representation in his underlying criminal proceeding. Plaintiff asserts he "funded his murder trial defense with a $600,000.00 withdrawal from his 401(k) retirement funds," which was "his sole remaining asset." ECF No. 1 at p. 15. Initially, the "loss" of such attorneys' fees may constitute monetary harm potentially compensable under § 1983. *Stachura*, 477 U.S. at 307 (holding compensatory damages under § 1983 may encompass "out-of-pocket loss and other monetary harms."). Plaintiff, however, has failed to feasibly allege that Defendant's actions caused "these funds to be lost." ECF No. 1 at 15.

Plaintiff cannot recover compensable damages here because "the injury he pleads . . . does not fit the damages he seeks." *Townes*, 176 F.3d at 148. Defendant's alleged constitutional violation

[1] While Defendant acknowledges common-law torts serve as a starting point for the analysis under § 1983, Defendant is unaware of any existing common-law analogues. *See Hector*, 235 F.3d at 156 (explaining "the common law of torts [is] the starting point, not the only consideration, in analyzing a claim under § 1983.").

was neither the "but-for" or proximate cause of Plaintiff's underlying criminal trial. *Evans*, 703 F.3d at 647. Unlike the criminally accused in *Martin*, *Townes*, *Hector*, *Borunda*, and *Kerr*, the initiation of the underlying criminal charges here had no connection to Defendant's alleged constitutional violation. The Plaintiff's criminal trial did not "hinge entirely on" Defendant's alleged constitutional violation, and nor did the "expenses of defending the criminal trial . . . arise directly from the [alleged] constitutional violation." *Martin*, 934 F.3d at 600-01. Plaintiff's underlying murder trial was not initiated by Defendant's alleged constitutional violation. Rather, Plaintiff's murder trial was initiated by the Attorney General of the State of South Carolina's "exercise[] [of] independent judgment" in deciding to prosecute, and the Colleton County Grand Jury's "exercise[] [of] independent judgment" in indicting, Plaintiff. *Borunda*, 885 F.2d at 1390; *Townes*, 176 F.3d at 142. While the prosecution's election to proceed with the indictment of the plaintiffs in *Cullins* and *Vaughn* were superseding proximate causes severing the chain of causation between the constitutional violation and the plaintiffs' trials, here, the State's decision to prosecute, and the Grand Jury's indictment of, Plaintiff were the sole "but-for" causes of his underlying murder trial, and in turn, the sole "but-for" causes of the economic injuries allegedly suffered. *see Cullins v. Sumter City Police Dep't*, No. 8:10-264-RMG-BHH, 2011 U.S. Dist. LEXIS 8056, at *21-22; *Vaughn v. Whitfield*, No. 2:12-2405-RMG-BHH, 2013 U.S. Dist. LEXIS 131293, at *52.

Likewise, Plaintiff's expenditures for legal representation in his state criminal case was not a foreseeable result of Defendant's alleged constitutional violation. *See Borunda*, 885 F.2d at 1390 (citing *Kerr*, 424 F.2d 1134). Plaintiff's defense of the murder charges and fees incurred would have occurred regardless of Defendant's alleged jury tampering taking place. Allowing Plaintiff to recover the attorneys' fees incurred during the underlying criminal proceeding, which was set in motion by a Grand jury Indictment, "supported by probable cause, would amount to precisely to

sort of mismatch between the violation and damages that *Townes* and *Hector* sought to avoid." *Martin*, 934 F.3d at 605.

Plaintiff's underlying criminal proceeding, then, was not the natural consequence of Defendant's actions, and awarding Plaintiff legal fees incurred therefrom would not compensate him for any injury caused by the alleged deprivation of his Six Amendment right to an impartial jury. *Malley v. Briggs*, 475 U.S. 335, 346 n.7 (1986) (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)). It is not the abstract value of a constitutional right, even one central to our system of ordered liberty, that forms the basis for § 1983 remedies; rather, it is proof of **actual**, **compensable injury**. *Stachura*, 477 U.S. at 308 (emphasis added); *Carey*, 435 U.S. at 254 (noting "[r]ights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests."). Plaintiff has alleged no damages related to his protected interests under the Sixth Amendment, but rather "has exclusively alleged injuries that resulted from . . . his [] criminal prosecution." *Vaughn v. Whitfield*, No. 2:12-2405-RMG-BHH, 2013 U.S. Dist. LEXIS 131293, at *52. "There is no evidence, nor can it be reasonably inferred, that any damages resulted from the [constitutional violation] itself." *Cullins v. Sumter City Police Dep't*, No. 8:10-264-RMG-BHH, 2011 U.S. Dist. LEXIS 8056, at *21. Here, the charges brought against the Plaintiff were supported by probable cause – Plaintiff has not pled that Defendant's actions had any effect on the existence of probable cause. Accordingly, Plaintiff would have incurred the expenses complained of here regardless of, and entirely apart from, any actions taken by this Defendant. Too, and as argued *infra*, the interest protected by the Sixth Amendment, "that guilt shall not escape or innocence suffer" has been independently preserved; Plaintiff's conviction has been overturned. *Berger v. United States,* 295 U.S. 78, 88 (1935).

Accordingly, Defendant respectfully requests this Court dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because Defendant's alleged constitutional violation did not contribute to the attorneys' fees incurred by Plaintiff in his underlying criminal trial. Irrefutably, whether Defendant acted improperly and tampered with the jury or not, the Plaintiff was, in either event, going to face a verdict of guilty or not guilty from the jury. Accordingly, whether guilty or not, the Plaintiff would have most certainly incurred the exact same amount of attorney's fees he now seeks to recover from the Defendant as damages in the present case. Because Defendant's conduct could not have caused these damages, Defendant is entitled to dismissal.

**III. A damages award compensating Plaintiff for the cost of his underlying criminal trial would not be tailored to the interests protected by the Sixth Amendment right to an impartial jury.**

The integrity of, and public confidence in, our criminal justice system is derived directly from the concept of fairness, as "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U.S. 11, 14 (1954). The interest in fairness is reflected in the broader dual aim of America's criminal justice system: "that guilt shall not escape or innocence suffer." *Berger*, 295 U.S. at 88. This interest in fairness is achieved and protected, in part, by both the Sixth Amendment right to an impartial jury. The Sixth Amendment, applied to the States through the Due Process Clause of the Fourteenth Amendment, guarantees state criminal defendants a speedy, public trial by an impartial jury. *Cone v. Bell*, 556 U.S. 449, 451 (2009). The "most priceless" safeguard in preserving the "concepts of individual liberty and the dignity and worth of every" person is the right to a jury trial, which "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 721-22 (1961); *see In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."). A jury's impartiality is demonstrated by its capability and willingness to determine the factual question of

guilt or innocence "solely upon the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *Irvin*, 366 U.S. at 722 (explaining because "only the jury can strip a man of his liberty or his life . . . a juror must be as 'indifferent as he stands unsworne,'" and the "verdict must be based upon the evidence developed at trial . . . regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies." (internal citations omitted)).

"Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula." *United States v. Wood*, 299 U.S. 123, 145-46 (1936). There are several constitutional rules governing the procedure of criminal trials which aim to ensure the integrity and impartiality of the jury's verdict, including *voir dire*, continuances, and protective instructions from the trial judge. *Rose v. Clark*, 478 U.S. 570, 579 (1986); *see In re Murchison*, 349 U.S. at 136 ("Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness."). "The[se] safeguards of juror impartiality," however, "are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith*, 455 U.S. at 217; *Irvin*, 366 U.S. at 723 ("To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard.").

To be clear, however, "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). Indeed, over a century ago, Chief Justice Waite clarified that not all impressions, opinions, or biases raise the presumption of partiality. *Reynolds v. United States*, 98 U.S. 145, 155 (1878) ("The theory of the law is that a juror

who has formed an opinion cannot be impartial. Every opinion which he may entertain need not necessarily have that effect."). The Supreme Court has more recently explained that the constitutional right to a fair trial is not automatically violated where there has been some extrajudicial conversation:

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable . . . . Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith*, 455 U.S. at 217 (1982); *see Irvin*, 366 U.S. at 723 ("It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."); *cf. South Carolina v. Murdaugh*, Op. No. 28329 (S.C. May 13, 2026) ("[N]ot all comments by officers of the court are prejudicial.").

The harmless-error doctrine is calculated to secure the interest of fairness through deterrence of prejudicial conduct by a third-party which threatens the integrity of a jury's fact-finding process and verdict. *Van Arsdall*, 475 U.S. at 681. Where juror partiality is alleged, the Supreme Court has long held the appropriate remedy is a hearing in which the criminal defendant can prove actual bias. *Smith v. Phillips*, 455 U.S. 209, 215 (1982). In the context of allegations of "private communications with a juror during a trial about the matter pending before the jury," this evidentiary hearing is commonly referred to as a *Remmer* hearing, after the Supreme Court's decision in *Remmer v. United States*, 347 U.S. 227 (1954).

Under *Remmer*, the reviewing court must analyze the nature of the alleged extrajudicial comments to determine whether they were "of such a character as to reasonably draw into question the integrity of the verdict," *Barnes v. Joyner*, 751 F.3d 229, 244 (4th Cir. 2014) (citations omitted), and if so, whether the "contact with the juror was harmless to the defendant." *Remmer*,

347 U.S. at 229. After a hearing to "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial," the court may grant a new trial. *Remmer*, 347 U.S. at 230. Therefore, a *Remmer* hearing, like the harmless-error doctrine, protects the interest in fairness by analyzing the prejudicial nature of the conduct and whether the alleged extrajudicial comments jeopardized the integrity of the verdict.

Accordingly, the Sixth Amendment's is not automatically violated where there has been a constitutional error. *Van Arsdall*, 475 U.S. at 681 (explaining constitutional errors may be harmless "in terms of their effect on the fact finding process at trial."); *see Chapman v. California*, 386 U.S. 18, 24 (1967) (holding a constitutional error is harmless if, beyond a reasonable doubt, it "did not contribute to the verdict obtained."); *Holmes v. United States*, 284 F.2d 716, 718 (4th Cir. 1960) (applying the harmless-error analysis where "[t]here was the private communication of the court official to members of the jury."). This is because the Sixth Amendment does not aim to eliminate the potential of any constitutional error. *Rose*, 478 U.S. at 579 (clarifying "that errors of constitutional dimension" do not "necessarily require the reversal of criminal convictions" because "[t]he thrust of" these rules "is to ensure that those trials lead to fair and correct judgments."). Instead, the Sixth Amendment's impartial jury clause aims to protect, and the harmless-error doctrine and *Remmer* hearing/analysis are calculated to safeguard, the "integrity of the verdict," *Barnes*, 751 F.3d at 244, i.e. that the jury determined the factual question of guilt or innocence "based upon the evidence developed at trial," *Irvin*, 366 U.S. at 722, which "promotes public respect for the criminal process" and speaks to "the underlying fairness of the trial." *Van Arsdall*, 475 U.S. at 681.

In the instant matter, no Sixth Amendment interest would be furthered by allowing Plaintiff to reap financial benefit in addition to being afforded a new trial. A partial jury undermines the

integrity of the verdict by poisoning the sanctity of the evidentiary process with outside influence and bias, thus betraying the People's faith in the fairness of the criminal justice system. To ensure the integrity of the verdict, the remedy for an impartial jury is a new trial – not an acquittal. This is because the evil of a partial jury is not that it injures the petitioner, but rather that it taints the legitimacy of the verdict, which impacts both parties in the adversarial process equally and betrays the public's confidence in our criminal justice system. *See South Carolina v. Murdaugh*, Op. No. 28329, at 2 (S.C. May 13, 2026) (commenting "**Both** the State and Murdaugh's defense skillfully presented their cases to the jury . . . [h]owever, **their** efforts were in vain because . . . [the] right to a fair trial by an impartial jury" was denied (emphasis added)).

Plaintiff acknowledges in his Complaint that he was awarded the proper remedy of a new trial as the result of a *Remmer* and harmless-error analysis, in furtherance of the interests protected by the Sixth Amendment through the Fourteenth. This remedy wholly compensates Plaintiff for any alleged constitutional violation of his right to an impartial jury, as the very purpose of granting a new trial is to protect the interest of fairness by ensuring the integrity of the jury's verdict. The policy justifications undergirding *Remmer*, the harmless-error doctrine, and the Sixth Amendment would not be served by letting Plaintiff continue to benefit from these doctrines "in his § 1983 suit and be relieved of defense costs from a prosecution," trial, and double life sentence which was vacated solely because of these very doctrines. *Hector*, 235 F.3d at 158. Indeed, no Sixth Amendment value would be served by allowing Plaintiff to reap financial benefit on top of already reaping "an enormous benefit by reason of the" alleged partiality "to which he was subjected:" a new trial, achieved by alleged violation of the Sixth Amendment right. *Townes*, 176 F.3d at 148. Without a new trial, Plaintiff's two life sentences without parole would still stand. That benefit to Plaintiff, while enormous, is merely incidental to the purpose of said remedy, which is to uphold

the integrity of, and public respect for, our criminal justice system through ensuring verdicts are derived from evidence and law as opposed to undue bias, prejudice, or influence.

Accordingly, Defendant respectfully requests this Court dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because awarding damages to compensate Plaintiff for the cost of defending his underlying criminal trial would not further the interests protected by the Sixth Amendment right to trial by an impartial jury.

**IV. Plaintiff cannot recover damages for the legal defense fees incurred in connection with his underlying state criminal trial under § 1988.**

Plaintiff additionally seeks to recover attorney's fees and costs under 42 U.S.C. § 1988. ECF No. 1 at 16. § 1988 provides "in any action or proceeding to enforce a provision of sections 1977, 1977A, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 USCS §§ 1981–1983, 1985, 1986] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." The plain language of § 1988, therefore, expressly applies to civil suits brought under § 1983; it does not apply to criminal actions. To the extent Plaintiff alternatively attempts to recover the $600,000.00 spent on his criminal trial defense as fees and costs under § 1988, Defendant submits these damages are not recoverable.

The Fourth Circuit has never directly addressed the question of whether § 1988 empowers courts with the discretion to award the prevailing party in a § 1983 action the attorneys' fees incurred in defending the underlying criminal proceeding. While there is no consensus among the circuits on the issue, most circuits have held § 1988 applies only to attorneys' fees incurred in the civil § 1983 action, not those expenses related to the underlying criminal action. Compare *Venuti v. Riordan*, 702 F.2d 6, 9 (1st Cir. 1983) (finding no merit in § 1983 plaintiff's claim for expenses in defending a state criminal action because doing so would impermissibly expand the scope of § 1988), and *Greer v. Holt*, 718 F.2d 206, 207-08 (6th Cir. 1983) (declining to approve the award

attorneys' fees for work done in the underlying criminal trial in a § 1983 action because the damages claim fell "outside the statutory language of § 1988."), and *Lui v. Commn on Adult Entm't Establishments*, 369 F.3d 319, 328 (3d Cir. 2004) (holding "[d]efense of a State criminal prosecution is not a proceeding for which fees and costs can be awarded under § 1988."), *and Perkins v. Cross*, 728 F.2d 1099 (8th Cir. 1984) (holding, pursuant to § 1988, "no fees should be awarded for any time the lawyer spent defending" the underlying criminal charge), with *Castellano v. Fragozo*, 311 F.3d 689 (5th Cir. 2002) (affirming district court's award of attorneys' fees incurred in defending the § 1983 plaintiff's underlying state criminal action under § 1988), *reversed en banc on other grounds*, 352 F.3d 939 (5th Cir. 2003).

The Fifth Circuit's deviation from the majority's findings demands inquiry and analysis. In *Castellano*, the panel based their decision to compensate the § 1983 plaintiff's attorneys for their time spent on his underlying criminal proceeding on proximate cause principles. The panel noted that to be the "prevailing party" in plaintiff's § 1983 action for malicious prosecution, and thus capable of recovery under § 1988, plaintiff needed to first prevail in the underlying criminal action. 311 F.3d at 711. Therefore, because plaintiff's success in the underlying criminal proceeding was required to "satisfy the elements of malicious prosecution in his § 1983 action," the panel concluded these "fees were expended as a necessary prerequisite of his action to 'enforce' the protections of § 1983." 311 F.3d at 711.

In reaching this conclusion, the Fifth Circuit panel purportedly adopted the rationale of *Kerr* and *Borunda*, opining that the plaintiff's "expenditure of attorneys' fees to defend himself in his criminal trial was, *unquestionably,* a foreseeable result of defendants' actions." *Id.*; but see *Borunda*, 885 F.2d at 1389 n.4 (recognizing "[t]he plain language of § 1988 supports the[] holdings" in *Perkins* and *Greer*, which barred recovery of attorneys' fees from an underlying

criminal proceeding under § 1988). However, this rationale, that compensatory damages are recoverable for the direct and foreseeable consequences of the alleged constitutional violation, as well as the cases cited, deal directly with the scope of damages and proximate cause analysis under § 1983, **not** § 1988.

As such, the Fifth Circuit's departure from the majority is flawed, and Defendant urges this Court to follow the rule which has been adopted by the First, Third, Sixth, Eighth, and Ninth Circuits: the prevailing party in a § 1983 action cannot recover attorneys' fees incurred in defending the underlying criminal proceeding under § 1988. In the alternative, Defendant reincorporates her arguments regarding the lack of causation, as Plaintiff's underlying criminal proceeding was not a direct and foreseeable consequence of her alleged constitutional violation.

Accordingly, pursuant to Fed. R. Civ. P. 12(b)(6), Defendant respectfully requests this Court dismiss Plaintiff's request for damages to the extent Plaintiff attempts to recover the $600,000.00 spent on his criminal trial defense as fees and costs under § 1988.

## V. Plaintiff's claim for compensatory damages must be dismissed for lack of subject-matter jurisdiction because he lacks Article III standing.

Article III of the U.S Constitution grants this Court the "judicial Power" to resolve "Cases" and "Controversies." U.S. Const. art. III, § 2. Pursuant to Article III, federal courts have the constitutional authority "to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision." *Muskrat v. United States*, 219 U.S. 346, 356 (1911) (quotation omitted). The "only power constitutionally assigned to the federal courts," *Wells v. Johnson*, 150 F.4th 289, 298 (4th Cir. 2025), this "judicial power exists only to redress or otherwise protect against injury to the complaining party." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The doctrine of standing "honors the limitations inherent in this assignment by ensuring judges attend to actual harms rather than abstract grievances." *United States v. Texas*, 599

U.S. 670, 686 (2023) (Gorsuch, J., concurring in the judgment); *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy" which "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.").

"The fundamentals of standing are well-known and firmly rooted in American constitutional law. To establish standing, . . . a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). Plaintiff cannot satisfy the "irreducible constitutional minimum" of Article III standing, and his claim for compensatory damages is subject to dismissal for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *Spokeo*, 578 U.S. at 338

Plaintiff seeks the following remedies for Defendant's alleged actions: compensatory damages of $600,000.00, punitive damages, reasonable attorneys' fees, the costs of this action, and "such other and further relief as the Court may deem just and proper." ECF No. 1 at 16. Assuming *arguendo*, and solely for the purposes of this motion to dismiss, that Plaintiff can satisfy the first standing requirement as it relates to Plaintiff's claim for compensatory damages, Defendant submits Plaintiff's claim cannot satisfy the second prong of the standing analysis: traceability.

**A. Plaintiff cannot establish his claimed injuries are fairly traceable to Defendant's conduct.**

"For an injury to be traceable, 'there must be a casual connection between the injury and the conduct complained of' by the plaintiff." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The Supreme Court has explained "the line of causation between the illegal conduct and injury—the links in the chain

of causation—must not be too speculative or too attenuated." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (cleaned up) (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984) and *Clapper v. Amnesty Int'l USA*, 568 U. S. 398, 420-22 (2013)). "While the defendant's conduct need not be the last link in the causal chain, the plaintiff must be able to demonstrate that the alleged harm was caused by the defendant, as opposed to the 'independent action of some third party not before the court.'" *Frank Krasner Enters., Ltd. v. Montgomery Cty.*, 401 F.3d 230, 234 (4th Cir. 2005) (quoting *Allen*, 468 U.S. at 757).

The question before this Court is whether Plaintiff can demonstrate that the expenditures for legal representation during his murder trial are attributable to the Defendant's alleged violation of Plaintiff's constitutional right to trial before an impartial jury. Defendant submits that Plaintiff cannot. Plaintiff states he spent "the entire $600,000.00 on his trial defense." See ECF No. 1 at 15. Plaintiff's Complaint omits any detail outlining when the withdrawal was made or when he began paying his attorneys; Plaintiff's attorneys, however, have publicly stated the $600,000.00 was a flat fee which was to encompass Plaintiff's entire defense. Plaintiff's expenditures for legal representation in his underlying criminal trial, a flat fee of $600,000.00, would have been incurred regardless of the alleged constitutional violation. Defendant played no role in seeking warrants for Plaintiff's arrest, presenting the matter to the Colleton County Grand Jury, the Grand Jury's indictment of Plaintiff on said charges, or the State's decision to pursue those charges to and through a jury trial: the actions which led to the initiation of Plaintiff's murder trial and expenditures for his legal defense. *Cf. Disability Rights S.C. v. McMaster*, 24 F.4th 893, 902 (4th Cir. 2022) ("When a defendant has no role in enforcing the law at issue, it follows that the plaintiff's injury allegedly caused by that law is not traceable to the defendant."). The State's prosecution and the grandy jury's indictment—independent actions by third parties not before this

Court—caused the alleged harm plaintiff is seeking compensation for: the expenses of defending his criminal trial. *Allen*, 468 U.S. at 757. Accordingly, Plaintiff's Complaint fails to demonstrate traceability for his compensable damages claim, as there is not a sufficient casual nexus between the injury and the conduct complained of. *Lujan*, 504 U.S. at 560; *Air Evac EMS*, 910 F.3d at 760.

Moreover, to the extent Plaintiff attempts to distinguish between incurring legal fees because of Defendant's alleged constitutional violation and Defendant's alleged constitutional violation causing these funds to "be[] lost," ECF No. 1 at 15, such a theory begs yet another question of causation. Plaintiff's causation theory is grounded in the assumption that Defendant's alleged jury tampering influenced certain jurors to vote guilty as opposed to not guilty, resulting in a violation of his constitutional right to an impartial jury which, in turn, led ultimately to a retrial. Plaintiff's Complaint contends Defendant tampered with and ultimately had her excused from the jury in an effort "to obtain [Defendant's] desired guilty verdict," because Juror No. 785 "had not made up her mind" and "still had questions" as to Plaintiff's guilt or innocence. ECF No. 1 at 8-10. It was this "meddling in events," along with three (3) jurors testifying that they heard Defendant's comments, and Juror Z's testimony that Defendant affected her guilty verdict, which ultimately led to the Supreme Court's ordering of a new trial. *South Carolina v. Murdaugh*, Op. No. 28329 (S.C. May 13, 2026).

Taking Plaintiff's allegations as true, nine jurors heard none of the Defendant's impermissible statements and based their opinions solely on the evidence before them. Even if, as Plaintiff alleges, Defendant's actions somehow improperly influenced the remaining three jurors to support of a guilty verdict, such actions would have resulted, per Plaintiff's allegations, in a mistrial at most, after which Plaintiff might, as here, be subject to having the case retried. In short, even accepting the Plaintiff's allegations as true, the loss of funds used to pay Plaintiff's legal fees

in his underlying criminal trial was not caused by Defendant's alleged constitutional violation – the same might as well have occurred absent any constitutionally violative conduct on the part of the Defendant.

Furthermore, if Plaintiff wishes to contend the expenditures for legal representation was not a flat fee but rather based upon a billable structure itemizing the work done by his attorneys, Plaintiff must, again, rely on a highly speculative theory of recovery. Plaintiff was indicted for the murder of his wife and son, as well as two counts of possession of a weapon during the commission of a violent crime, on July 14, 2022. ECF No. 1 at 4; *see* 2022-GS-15-00592, -00593; 2022-GS-15-00594, -00595. Plaintiff's trial began on January 23, 2023, and he was sentenced on March 3, 2023. ECF No. 1 at 4. Plaintiff's murder trial lasted for a total of forty (40) days. Plaintiff contends Defendant's alleged constitutional violation began twenty-nine (29) days after the trial began, on February 21, 2023, and continued for eleven (11) days until Plaintiff's sentencing. ECF No. 1 at 4-9.

Therefore, to prove Defendant's alleged constitutional violation caused Plaintiff to lose $600,000 in attorneys' fees, Plaintiff must submit evidence revealing but for Defendant's actions, he would not have incurred $600,000.00 in attorneys' fees within this eleven (11) day period. In other words, Plaintiff must demonstrate but for Defendant's alleged constitutional violation, his underlying criminal trial and his attorneys' work thereon would not have continued for this eleven (11) day period. Any evidence in support of this contention would be highly speculative; guesswork grounded in prediction as opposed to firm facts. *See FDA v. All. for Hippocratic Med.*, 602 U.S. at 383 (recognizing the Supreme Court "has said that plaintiffs attempting to show causation generally cannot 'rely on speculation about the unfettered choices made by independent actors not before the courts.'" (quoting *Clapper*, 568 U. S. at 415, n.5)).

Finally, even if this Court were to accept this speculative theory of recovery, the relief requested within the Complaint is far beyond any actual cost of attorneys' fees incurred. At first blush, and by way of simple estimation, it facially appears that the Plaintiff could only show he incurred $165,000.00 in attorneys' fees in his underlying criminal trial even possibly related to the Defendant's alleged constitutional violation. Assuming Plaintiff's complaint is a true reflection of the attorneys' fees incurred in the underlying criminal trial, and assuming *arguendo* that his attorneys were paid only for the days upon which Plaintiff was on trial[2], Plaintiff incurred $15,000.00 in attorneys' fees on each of the forty (40) days that he was on trial.[3] Accordingly, pursuant to the Complaint, Plaintiff incurred $435,000.00 in attorneys' fees ***prior to*** Defendant's alleged constitutional violation[4], and $165,000.00 in attorneys' fees ***after*** Defendant's alleged constitutional violation.[5]

Plaintiff's asserted injury, loss of attorneys' fees in his underlying criminal case, was not caused by Defendant. Further, any potential causal connection linking the loss of attorneys' fees to Defendant's alleged constitutional violation is simply too speculative, too attenuated, and too weak to support Article III standing: the damages alleged by the Plaintiff were not caused by the alleged constitutional violation by the Defendant. *Cf. FDA v. All. for Hippocratic Med.*, 602 U.S. at 380-81 (explaining causation and redressability are often "'flip sides of the same coin,' . . . [i]f

---

[2] While undersigned counsel submits it is safe to assume that the work for which Plaintiff's defense lawyers were being paid began well before the January 23, 2023, trial date, for the purposes of this motion to dismiss, Defendant assumes *arguendo* the date of first payment was January 23, 2023. Defendant only makes this assumption at the current stage of the proceeding because the discovery process has not yet developed. Defendant will, of course, update the accuracy of these calculations upon Plaintiff's provision of evidence demonstrating the date upon which payment began, the total amount of fees received, and the itemized costs for which the funds accounted for.

[3] 600,000 ÷ 40 = 15,000.

[4] 15,000 x 29 = 435,000.

[5] 15,000 x 11 = 165,000.

a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress the injury."); *see Wells v. Johnson*, 150 F.4th 289, 299 (4th Cir. 2025) (explaining plaintiffs must "show standing, within each claim, to seek each remedy they ask for.").

Accordingly, Defendant respectfully requests for this Court to dismiss Plaintiff's claim of compensatory damages for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[6]

**VI. The doctrine of ripeness bars present resolution of any potential claim for compensatory damages resulting from Defendant's alleged constitutional violation.**

Accordingly, and as argued *supra*, Plaintiff has failed to state a compensable claim under 42 U.S.C. § 1983 – the theory of damages alleged by the Plaintiff have been largely rejected by United States Courts of Appeals, and, even had they not, were not caused by the Defendant's actions; however, to the extent, if any, that this Court is willing to construe Plaintiff's Complaint as alleging that his damages stem not from his first trial but, instead, from his upcoming retrial, such a claim is not yet ripe. "'Like standing, the ripeness doctrine 'originates in the case or controversy constraint of Article III.'" *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019), *cert. denied*, 400 U.S. 833 (1970) (quoting *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (quotation marks and citations omitted)). This "justiciability doctrine determines when a case or controversy is fit for federal judicial review," *Trustgard Ins.*

[6] Plaintiff does not request nominal damages. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 289-92 (2021) (holding "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right" because common law recognized "that a party whose rights are invaded can also recover nominal damages without furnishing any evidence of actual damage."). Nor does Plaintiff's "boilerplate request for other and further relief as the Court deems just and proper . . . preserve a nominal damages claim when there is absolutely no specific mention in the Complaint of nominal damages." *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102, 116 (4th Cir. 2021). Finally, the prospect of attorney's fees and costs cannot confer standing or prevent mootness throughout. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990).

*Co. v. Collins*, 942 F.3d 195, 199 (4th Cir. 2019), and "prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'" *Miller v. Brown*, 462 F.3d 312, 318-19 (4th Cir. 2006) (quoting *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549, 584 (1947)). As such, ripeness is a question of subject matter jurisdiction. *See Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013) (citation omitted)."A case is fit for adjudication when the action in controversy is final and not dependent on future uncertainties; conversely, a claim is not ripe when it rests upon contingent future events that may not occur as anticipated." *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014) (internal quotation marks omitted).

Plaintiff does not contend Defendant's alleged jury tampering caused a retrial for which Plaintiff has to incur additional legal costs; but, in essence, Plaintiff brings this action under a fallacious theory of recovery to preemptively secure funds for his upcoming retrial. While such a retrial may arguably be the result of Defendant's alleged constitutional violation, any claim for compensatory damages based thereupon is not ripe. Plaintiff has not yet suffered any damages because of Defendant's alleged constitutional violation, as the potential retrial has not taken place, and therefore any potential legals costs to defend said retrial have not been incurred. *See Beatley v. Ayers*, 851 F. App'x 332, 337 (4th Cir. 2021). Indeed, any resolution of such claim would be rest "'upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Scoggins*, 718 F.3d at 270 (4th Cir. 2013) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). As such, the Constitution demands that judicial review is withheld if and until Plaintiff's alleged injury, his retrial and the attorneys' fees incurred therefor, moves "from the speculative to the concrete." *South Carolina v. United States*, 912 F.3d at 731.

Accordingly, Defendant respectfully requests for this Court to dismiss Plaintiff's claim of compensatory damages for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

## VII. Defendant is entitled to immunity under the Eleventh Amendment and under the doctrines of judicial immunity and qualified immunity.

As argued, *supra*, Plaintiff's Complaint is subject to dismissal pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure; however to the extent, if any, that this Court finds that Plaintiff's Complaint is not subject to dismissal based on his failure to state a claim and lack of standing, Defendant would nonetheless be entitled to such dismissal based on her immunity under the Eleventh Amendment, under the doctrine of judicial immunity, and under the doctrine of qualified immunity. These immunities are properly raised in a Rule 12 motion, where the Supreme Court has held that such immunities are immunities from suit, rather than mere defenses to liability; such immunities are "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Here, Defendant is entitled to immunity under the Eleventh Amendment; Plaintiff alleges that Defendant is a constitutional officer of the State of South Carolina, elected as the Clerk of Court by the citizens of Colleton County, and that the actions taken by Defendant were taken within her official role. Similarly, Defendant is entitled to quasi-judicial immunity, where the actions complained of by the Plaintiff were judicial in nature and related directly to the Defendant's judicial responsibilities. Finally, Defendant is entitled to qualified immunity, where it was not clearly established at the time of the alleged constitutional violations that the Defendants actions violated the Plaintiff's rights under the Sixth Amendment. As Plaintiff alleges in his Complaint, former Chief Justice Jean Toal denied Plaintiff's motion for a new trial, finding that Defendant's conduct amounted to harmless error. The South Carolina Supreme Court reversed the decision, acknowledging throughout its Opinion the difficulty, the complexity, and the conflicting jurisprudence of the Sixth Amendment inquiry. The violative nature of Defendant's conduct, then, was neither readily apparent nor obvious to former Chief

Justice Toal nor to the South Carolina Supreme Court – it could but have been wholly lost on Defendant or any other reasonable Clerk of Court.

**A. Defendant is entitled to immunity under the Eleventh Amendment.**

The Eleventh Amendment to the Constitution of the United States of America establishes that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. This withdrawal of jurisdiction effectively confers an immunity from suit. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). The Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974). Absent waiver, neither a State nor agencies acting under its control may "be subject to suit in federal court." *Welch v. Texas Dept. of Highways and Public Transportation*, 483 U.S. 468, 480 (1987) (plurality opinion); see also *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id*. The South Carolina Tort Claims Act expressly

provides that the State of South Carolina does not waive Eleventh Amendment immunity, and consents to suit only in a court of the State of South Carolina. S.C. Code Ann. § 15-78-20(e).

As Plaintiff notes in his Complaint, Defendant was at all relevant times acting as the Clerk of Court for the Circuit Court of Colleton County, South Carolina, a position to which she was elected pursuant to Article V, § 24 of the South Carolina Constitution. The Colleton County Clerk of Court's Office is funded by the state of South Carolina. Unquestionably, Defendant, then, is being sued as an arm of the state; she has neither waived the protections of the Eleventh Amendment nor consented to suit in federal court. Accordingly, she is entitled to Eleventh Amendment immunity.

**B. Defendant is entitled to quasi-judicial immunity.**

Defendant is likewise entitled to quasi-judicial immunity for all acts alleged in Plaintiff's Complaint. "The absolute immunity from suit for alleged deprivation of rights enjoyed by judges is matchless in its protection of judicial power. It shields judges even against allegations of malice or corruption." *McCray v. Maryland*, 456 F.2d 1, 3 (1972) (citing *Pierson v. Ray*, 386 U.S. 547, 554-555 (1967)). "'[Q]uasi-judicial' . . . officials whose duties are comparable to those of judges or prosecutors" are likewise entitled to absolute immunity. *Ostrzenski v. Seigel*, 177 F.3d 245, 249 (4th Cir. 1999); see *Goldstein v. Moatz*, 364 F.3d 205, 213 (4th Cir. 2004). And such immunity extends to the judge's subordinates for "functions that are more administrative in character [that] have been undertaken pursuant to the [judge's] explicit direction." *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992).

Accordingly, "clerks of court are generally afforded quasi-judicial immunity from suit on claims involving 'tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune.'" *Hamilton v. United States, D.O.J.*, C/A

No. 2:20-cv-1666-RMG-MHC, 2020 U.S. Dist. LEXIS 186872, 2020 WL 7001153, at *6 (D.S.C. Aug. 26, 2020) (citation omitted), *R&R adopted by* 2020 U.S. Dist. LEXIS 185719, 2020 WL 5939235 (D.S.C. Oct. 7, 2020), *aff'd*, 848 F. App'x 564 (4th Cir. 2021); see also *Martin v. Rush*, C/A No. 13-cv-693, 2013 U.S. Dist. LEXIS 72964, 2013 WL 2285948, at * 5 (D.S.C. 2013) (applying quasi-judicial immunity to clerk who allegedly failed to provide the plaintiff with a hearing transcript despite his request); *Robinson v. McBride*, C/A No. 13-cv-352, 2013 U.S. Dist. LEXIS 71134, 2013 WL 2099491, at * 4 (D.S.C. 2013) (applying quasi-judicial immunity to clerk who allegedly failed to properly process the plaintiff's notice of appeal), *R&R adopted by* 2013 U.S. Dist. LEXIS 68376, 2013 WL 2099707 (D.S.C. May 14, 2013), *aff'd*, 540 F. App'x 212 (4th Cir. 2013); *Wiley v. Buncombe County*, 846 F. Supp. 2d 480, 485 (W.D.N.C. 2012) (finding quasi-judicial immunity applied to clerk who allegedly failed to deliver judge's writ of habeas corpus to the appropriate parties). As with Eleventh Amendment immunity and qualified immunity, such quasi-judicial immunity is designed not only to protect defendants from liability, but also from the burdens of litigation. *Mitchell*, 472 U.S. at 526-27.

Under the facts alleged by Plaintiff, Defendant is entitled to quasi-judicial immunity. Plaintiff's Complaint characterizes Defendant as "the officer of the court charged as the primary caretaker of the jury." ECF No. 1 at 2. Some contact between the Defendant and the jury was not merely inevitable, but an explicit and acknowledged function of Defendant's role as the Clerk of Court. Whatever the nature and alleged illegality of the contacts between Defendant and the jury in the Plaintiff's underlying criminal trial, it is undisputed that her contact with and caretaking of the jury was integral to the judicial process and that the same were conducted within the context of Defendant's role as the Colleton County Clerk of Court.

Accordingly, Defendant is entitled to quasi-judicial immunity.

**C. Defendant is entitled to qualified immunity.**

Even could Plaintiff show that he suffered some Constitutional deprivation, Defendant is nonetheless entitled to qualified immunity. In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that government officials are shielded from liability in civil actions if their conduct does not violate clearly established statutory rights of which a reasonable person would have known. The standard created in *Harlow* is an objective standard and is based upon the state of the law at the time of the alleged violation. The purpose of qualified immunity defense is to enable governmental officials to carry out their jobs free from the fear of civil liability for every mistake they may make, and to protect them from the "expenses of litigation, the diversion of official energy from pressing public issues and the deterrence of able citizens from acceptance of public office." *Harlow*, 457 U.S. at 814. That Court emphasized that:

> [G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.

*Id*. at 818.

Additionally, qualified immunity "provides ample protection to all but the plainly incompetent and those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1985). In *Anderson v. Creighton*, 483 U.S. 635, 640 (1987), the Supreme Court explained that in evaluating the defense of qualified immunity:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right. That is not to say an official action is protected by qualified immunity unless the very action questioned has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent. (Internal citations omitted).

*Id*. see also *Dimeglio v. Haines*, 45 F.3d 790 (4th Cir. 1995).

The Fourth Circuit Court of Appeals has also explained the rationale for the qualified immunity doctrine as set forth in *Harlow* as follows:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties from the specter of endless and debilitating lawsuits. Without such an immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

*Torchinsky v. Siwinsky*, 942 F.2d 257, 260-261 (4th Cir. 1991).

Granting a Defendant's motion for summary judgment is particularly appropriate in cases involving a qualified immunity defense, as the defense exists not merely to protect governmental officials from liability, but to protect them from trial. *Mitchell* 472 U.S. 511; *Turner v. Dammon*, 848 F.2d 440 (4th Cir. 1988). The Fourth Circuit has strongly espoused a preference for resolving civil rights cases involving qualified immunity short of trial, if possible. *Turner*, 848 F.2d at 444 (4th Cir. 1988). The Court in *Turner* also noted that qualified immunity entitles a defendant to dismissal unless there is an issue as to whether the defendant in fact committed a violation of a clearly established law. *Id*. at 443.

Therefore, to determine whether a defendant is entitled to qualified immunity in this case, the Court must make three determinations. First, the Court must identify the specific right allegedly violated by the Defendant. Second, the Court must determine whether, at the time of the alleged violation, these rights were clearly established. Finally, the Court must determine whether a reasonable person in the defendant's position would have known that his actions were in violation of another person's rights. *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

> The first two of these present pure questions of law for the courts. The third, which involves application of *Harlow*'s objective test to the particular conduct at issue, may require factual determinations respecting disputed aspects of that conduct.

> In determining whether the specific right allegedly violated was clearly established, the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged. And the determination whether a reasonable person in the officer's position would have known that his conduct would violate the right at issue must be made on the basis of information actually possessed by the officer at the critical time, or that was then reasonably available to him, and in light of any exigencies of time and circumstance that reasonably may have affected the officer's perceptions. The tolerance thus accorded by the qualified immunity defense to good faith mistakes of judgment traceable to unsettled law, or faulty information, or contextual exigencies, is deliberately designed to give protection to all but the plainly incompetent or those who knowingly violate the law, in order to avoid undue inhibitions in the performance of official duties. (internal citations omitted).

*Pritchett*, 973 F.2d at 312-13.

In determining the right allegedly violated, "a court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Deciding this first issue can save a defendant from having "to engage in the expensive and time-consuming preparation to defend the suit on its merits." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). It "also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 840-42 n.5, 140 L.Ed. 2d 1043, 118 S. Ct. 1708 (1998)).

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas*, 595 U.S. at 5.

> To find that a right is clearly established, courts generally "need to identify a case where an officer acting under similar circumstances . . . was held to have violated" the Constitution. *Escondido v. Emmons*, 586 U. S. 38, 43, 139 S. Ct. 500, 202 L. Ed. 2d 455 (2019) (*per curiam*) (internal quotation marks omitted). The relevant

> precedent must define the right with a "high degree of specificity," so that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 583 U. S. 48, 63, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018) (internal quotation marks omitted).

*Zorn v. Linton*, 146 S. Ct. 926, 930 (2026).

In his Final Reply Brief in his appeal before the South Carolina Supreme Court, Plaintiff acknowledged that, "[t]he facts of this case are admittedly novel. To undersigned counsel's knowledge, this has never happened before."[7] Plaintiff, then, in order to overcome Defendant's plea of qualified immunity, must show that, at the times alleged in Plaintiff's Complaint, it was clearly established that a reasonable person in Defendant's position would have known that her conduct rose above the level of harmless error and constituted a Sixth Amendment violation. As the Supreme Court noted in *Smith v. Phillips*:

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as voir dire and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.

455 U.S. at 217 (1982).

Accordingly, the Sixth Amendment's is not automatically violated where there has been a constitutional error. *Van Arsdall*, 475 U.S. at 681 (explaining constitutional errors may be harmless "in terms of their effect on the fact finding process at trial."); *see Chapman v. California*, 386 U.S. 18, 24 (1967) (holding a constitutional error is harmless if, beyond a reasonable doubt, it "did not contribute to the verdict obtained."); *Holmes v. United States*, 284 F.2d 716, 718 (4th Cir. 1960) (applying the harmless-error analysis where "[t]here was the private communication of the court

---

[7] *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

official to members of the jury."). This is because the Sixth Amendment does not aim to eliminate the potential of any constitutional error. *Rose*, 478 U.S. at 579 (clarifying "that errors of constitutional dimension" do not "necessarily require the reversal of criminal convictions" because "[t]he thrust of" these rules "is to ensure that those trials lead to fair and correct judgments."). The Fourth Circuit has further recognized the limited precedent on both "jury bias arising from third-party contact during the course of a trial," *Barnes v. Joyner*, 751 F.3d 229, 257 (4th Cir. 2014), and "external influences depriving defendants of the rights to an impartial jury." *Daugherty v. Dingus*, 171 F.4th 326, 331 (4th Cir. 2026) (affirming the district court's judgment because clearly established federal law "governing extrinsic jury influence did not extend to cover statements of this sort."). The Supreme Court has only considered these issues in "a handful of cases." *Id*.

In *Parker v. Gladden*, the Supreme Court found a *habeas corpus* petitioner was deprived of his rights of confrontation and cross-examination under the Sixth Amendment, made applicable to the States through the Due Process Clause of the Fourteenth Amendment, by way of a bailiff's comments to, and in the presence of, certain jurors during petitioner's second-degree murder trial. The court bailiff, who was assigned to shepherd the sequestered jury, made two statements to two separate jurors while in the presence of others: "'Oh that wicked fellow [petitioner], he is guilty'"; and "'if there is anything wrong [in finding petitioner guilty] the Supreme Court will correct it.'" *Parker v. Gladden*, 385 U.S. 363 - 65 (1966). The State, arguing the case for respondent, contended no prejudice had been shown. 385 U.S. at 365. The Supreme Court dismissed this argument, finding that it overlooked the bailiff's actions, "as an officer of the court as well as the State beyond question carries great weight with a jury." *Id*. (cleaned up). The Supreme Court further highlighted the jury's twenty-six (26) hour deliberation, which, in their eyes, indicated "a difference among them as to the guilt of petitioner[,]" as well as one of the juror's testimony that she was prejudiced

by the bailiff's statements. *Id*. Aside from these findings, the Supreme Court held "'that the unauthorized conduct of the bailiff involves such a probability that prejudice will result that it is deemed inherently lacking in due process,'" *Id*. (citing *Estes v. Texas*, 381 U.S. 532, 542-543 (1965)), and "'it would be blinking reality not to recognize the extreme prejudice inherent' in such statements that reached at least three members of the jury and one alternate member." *Id*. (citing *Turner v. Louisiana*, 379 U.S. 466, 473 (1965)). The State further contended that no harm could have resulted, "because 10 members of the jury testified that they had not heard the bailiff's statements[,] and [] Oregon law permits a verdict of guilty by 10 affirmative votes." 385 U.S. at 365. The Supreme Court rejected this argument as well, holding "petitioner was entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors." *Id*. at 366. Ultimately, the Supreme Court reversed the Supreme Court of Oregon, which had held the comment did not deprive petitioner of a fundamentally fair trial, because the bailiff's comments abridged petitioner's rights of confrontation and cross-examination under the Sixth Amendment, which "are fundamental requirements of a constitutionally fair trial." *Id*. at 365 (citing *Kirby v. United States*, 174 U.S. 47, 55-56 (1899); *In re Oliver*, 333 U.S. 257, 273 (1948); *Pointer v. Texas*, 380 U.S. 400 (1965)).

The South Carolina Court of Appeals has likewise reversed a conviction where a bailiff's response to the forelady, that they should not worry if they were deadlocked because the judge was fair, was misleading. It tended to lessen the jury's sense of responsibility by implying that if they rendered a verdict of guilty without mercy, the judge had some discretion in sentencing. *State v. Cameron*, 311 S.C. 204, 208 (Ct. App. 1993). But again, the mere fact that some conversation occurred between a juror and a court official would not necessarily prejudice a defendant. *State v. Goodwin*, 250 S.C. 403, 405 (1967). In *State v. Green*, the South Carolina Court of Appeals held that, while improper, a bailiff informing a juror that, in the event of deadlock, the judge would

likely issue an *Allen* charge and ask the jury whether they could stay later failed to rise to the level of a Sixth Amendment violation where there was no reasonable possibility the comments influenced the verdict. *State v. Green*, 427 S.C. 223, 236 (Ct. App. 2019). In *State v. Rowell*, the South Carolina Supreme Court dealt with extrajudicial communications between a bailiff and jury member. 75 S.C. 494, 56 S.E. 23 (1906). There, a juror submitted an affidavit disclosing that "during the trial of the case, a bailiff of the Court talked about the case in his presence[] and said that the defendant should be punished." *Rowell*, 75 S.C. at 511. The S.C. Supreme Court found it may be that "the Court should have punished this bailiff for his conduct, and that . . . the juror[] should have informed the Court of the bailiff's conduct," the extrajudicial communication with a member the jury did not warrant a new trial, as there was no evidence that the verdict was influenced by the bailiff's comments. *Id*. The S.C. Supreme Court further commented that individuals "who are selected to serve as jurors must be considered to have personal firmness and conviction, and not to be presumed to bend to every wind of opinion that blows around their ears." *Id*.

Certainly Defendant Hill's comments as alleged by the Plaintiff were less innocuous than the Bailiff's comments in *Green*, which, though inappropriate, related strictly to the administration of the trial. But, just as certainly, they fell short of the comments at issue in *Parker*, *Cameron*, and *Rowell*. Like in *Parker*, three jurors here heard the statements made by Defendant, and one juror testified that she was prejudiced by the statements. The prejudiced juror in *Parker* testified that bailiff's statements, "all in all[,] it must have influenced me. I didn't realize it at the time." 385 U.S. at 365. The *Parker* juror denied any impermissibly influence when she was first examined and later admitted that, because "she was extremely upset by the verdict[,]" she "would do anything short of committing perjury to overturn it." 385 U.S. 369, n.3 (Harlan, J., dissenting).

Furthermore, "[i]n specifying that the bailiff's remarks 'must' have influenced her she limited herself to declaring that they did so in connection with the pressure put on her by other jurors during the deliberations thus stating that 'all in all' she 'must' have been influenced." *Id*.

Similarly, in the case *sub judice*, the prejudiced juror ("Juror Z") first testified that her verdict was based entirely upon testimony, evidence, and law presented in the case. ECF No. 1 at p. 11. Juror Z subsequently testified, however, "that her verdict was influenced by communication by Clerk Hill, and that she felt Clerk Hill thought the defendant was guilty." *Id*. The prejudiced juror then seemingly recanted this testimony once presented with her prior affidavit, which she testified was a more accurate statement of how she felt. The previous affidavit stated that the juror "had questions about Mr. Murdaugh's guilt but voted guilty because she felt pressured by the other jurors." Similar to Justice Harlan's dissent in *Parker*, the South Carolina Appellate Court found the evidence of prejudice was trivial and could not be delineated from the internal deliberative pressure from the other jurors.

Unlike the *Parker* jury, which deliberated for twenty-six (26) hours after sitting for eight (8) days, the jury in *South Carolina v. Murdaugh* took less than four (4) hours to reach a guilty verdict after the six (6) week trial. Further, the bailiff in *Parker* directly commented on the ultimate issue of the case: "'Oh that wicked fellow . . . is guilty.'" 385 U.S. at 363. The *Parker* bailiff also suggested the Oregon Supreme Court would ensure the petitioner would be found guilty, regardless of any deficiencies: "'if there is anything wrong [in finding petitioner guilty] the Supreme Court will correct it.'" 385 U.S. at 364. The Defendant here, however, made no such comments concerning Plaintiff's guilt or innocence. Defendant Hill's comments that the day in which Plaintiff testified was "epic" or "important" do not deal with the ultimate issue. Nor did Defendant Hill suggest to the jury that the outcome of the *Murdaugh* trial was certain.

The only similarities between the bailiff's comments in *Parker* and Defendant Hill's in here is that the comments could be construed as attacking the petitioner's/Plaintiff's credibility. The Parker bailiff called the petitioner a "wicked fellow," and Defendant Hill told jurors not to be "fooled, confused, thrown off, or convinced" by Plaintiff's or his lawyers' arguments and to watch his body language closely.

The South Carolina Appellate Court found these comments had no effect on the verdict of any juror, while the South Carolina Supreme Court held these statements were more than innocuous interventions. Upon presentation of these facts, astute analysis, and diligent research, the former Chief Justice of the Supreme Court of South Carolina found Defendant's actions did not rise to the level of a constitutional violation. This "is to say that in light of pre-existing law, the unlawfulness" was not apparent to a highly esteemed judge with decades of judicial experience. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); see also *Dimeglio v. Haines*, 45 F.3d 790 (4th Cir. 1995)). Just as Chief Justice Toal is certainly not "plainly incompetent," Defendant Hill did not "knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1985). Accordingly, Defendant Hill is entitled to the ample protection afforded under the doctrine of qualified immunity.

**CONCLUSION**

For the foregoing reasons, Defendant prays for an Order dismissing Plaintiff's claim.

*(Signature page to follow)*

Respectfully Submitted,

*s/Charles F. Turner, Jr.*

Charles F. Turner, Jr. (Fed. I.D. # 05849)
G. Troy Thames (Fed. I.D. #07713)
J. Nathan Ozmint (Fed. I.D. #14360)
Bowman H. Taylor (Fed. I.D. #14690)
WILLSON JONES CARTER & BAXLEY, P.A.
325 Rocky Slope Road, Suite 201
Greenville, SC 29607
Telephone: (864) 672-3711
Facsimile: (864) 373-7055
Email: cfturner@wjcblaw.com
tthames@wjcblaw.com
jnozmint@wjcblaw.com
bhtaylor@wjcblaw.com
**ATTORNEYS FOR DEFENDANT**

June 18, 2026

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**
**Case Number: 2:26-cv-01989-RMG**

| | |
|---|---|
| Richard Alexander Murdaugh, Sr.,<br><br>Plaintiff,<br><br>vs.<br><br>Rebecca Hill,<br><br>Defendant. | **DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT**<br><br>**(JURY TRIAL REQUESTED)** |

The Defendant, above-named, answering the Complaint of the Plaintiff herein, would respectfully show unto this Honorable Court that:

**<u>FOR A FIRST DEFENSE</u>**

1. The Defendant denies the allegations contained in Paragraph One of the Plaintiff's Complaint.

2. The Defendant denies the allegations contained in Paragraph Two of the Plaintiff's Complaint.

3. As to the allegations contained in Paragraph Three of the Plaintiff's Complaint, the Defendant specifically admits that on March 7, 2023, following a six week trial in Colleton County, South Carolina, the Plaintiff was convicted of the murders of his wife and son; as a result, he was sentenced to two consecutive life terms. Further, the Defendant specifically admits that the Plaintiff took the stand in his own defense and maintained his innocence. However, the Defendant denies the remaining allegations contained in Paragraph Three of the Plaintiff's Complaint which are in addition to or inconsistent with these admissions.

4. The Defendant denies the allegations contained in Paragraph Four of the Plaintiff's Complaint.

5. The Defendant denies the allegations contained in Paragraph Five of the Plaintiff's Complaint.

6. The Defendant denies the allegations contained in Paragraph Six of the Plaintiff's Complaint.

7. The Defendant denies the allegations contained in Paragraph Seven of the Plaintiff's Complaint.

8. As to the allegations contained in Paragraph Eight of the Plaintiff's Complaint, the Defendant specifically admits that on May 13, 2026, the Supreme Court of South Carolina reversed the Plaintiff's murder convictions and remanded for a new trial; however, the Defendant denies the remaining allegations contained in Paragraph Eight of the Plaintiff's Complaint which are in addition to or inconsistent with these admissions.

9. The Defendant denies the allegations contained in Paragraph Nine of the Plaintiff's Complaint.

10. The Defendant admits the allegations contained in Paragraph Ten of the Plaintiff's Complaint.

11. The Defendant admits the allegations contained in Paragraph Eleven of the Plaintiff's Complaint.

12. The Defendant denies the allegations contained in Paragraph Twelve of the Plaintiff's Complaint.

13. The Defendant admits the allegations contained in Paragraph Thirteen of the

Plaintiff's Complaint.

14. The Defendant admits the allegations contained in Paragraph Fourteen of the Plaintiff's Complaint.

15. The Defendant admits the allegations contained in Paragraph Fifteen of the Plaintiff's Complaint.

16. Upon information and belief, the Defendant admits the allegations contained in Paragraph Sixteen of the Plaintiff's Complaint.

17. The Defendant denies the allegations contained in Paragraph Seventeen of the Plaintiff's Complaint.

18. The Defendant denies the allegations contained in Paragraph Eighteen of the Plaintiff's Complaint.

19. The Defendant denies the allegations contained in Paragraph Nineteen of the Plaintiff's Complaint.

20. In as much as Paragraph 20 of the Plaintiff's Complaint includes excerpts from the Trial Transcript, the Defendant neither admits nor denies the same, and further denies any allegations inconsistent with the Trial Transcript and demands strict proof thereof.

21. In as much as Paragraph 21 of the Plaintiff's Complaint includes excerpts from the Trial Transcript, the Defendant neither admits nor denies the same, and further denies any allegations inconsistent with the Trial Transcript and demands strict proof thereof.

22. The Defendant lacks sufficient knowledge and information to form a belief as to the allegations contained in Paragraph Twenty-Two of the Plaintiff's Complaint

therefore denies same.

23. The Defendant lacks sufficient knowledge and information to form a belief as to the allegations contained in Paragraph Twenty-Three of the Plaintiff's Complaint therefore denies same.

24. The Defendant denies the allegations contained in Paragraph Twenty-Four of the Complaint.

25. The Defendant denies the allegations contained in Paragraph Twenty-Five of the Complaint.

26. The Defendant lacks sufficient knowledge and information to form a belief as to the allegations contained in Paragraph Twenty-Six of the Plaintiff's Complaint therefore denies same.

27. In as much as Paragraph Twenty-Seven of the Plaintiff's Complaint includes excerpts from the Trial Transcript, the Defendant neither admits nor denies the same, and further denies any allegations inconsistent with the Trial Transcript and demands strict proof thereof.

28. The Defendant denies as stated the Plaintiff's allegations in Paragraph Twenty-Eight of the Plaintiff's Complaint. To the extent the Plaintiff's allegations in Paragraph Twenty-Eight attempt to restate contents of the Defendant's book, the Defendant asserts that the contents of the book speak for themselves and demands strict proof thereof.

29. In as much as the allegations contained in Paragraph Twenty-Nine of the Plaintiff's Complaint attempt to allege verbatim contents of Court transcripts, the Defendant neither admits nor denies same but demands strict proof thereof. Further, the

Defendant asserts that the Court transcripts speak for themselves.

30. The Defendant denies the allegations contained in Paragraph Thirty as stated.

31. The Defendant lacks sufficient knowledge and information to form a belief as to the allegations contained in Paragraph Thirty-One of the Plaintiff's Complaint therefore denies same.

32. The Defendant denies the allegations contained in Paragraph Thirty-Two of the Plaintiff's Complaint.

33. The Defendant denies the allegations contained in Paragraph Thirty-Three of the Plaintiff's Complaint as stated.

34. The Defendant denies the allegations contained in Paragraph Thirty-Four of the Plaintiff's Complaint.

35. The Defendant denies the allegations contained in Paragraph Thirty-Five of the Plaintiff's Complaint.

36. The Defendant denies the allegations contained in Paragraph Thirty-Six of the Plaintiff's Complaint.

37. The Defendant lacks sufficient knowledge and information to form a belief as to the allegations contained in Paragraph Thirty-Seven of the Plaintiff's Complaint therefore denies same.

38. In as much as the allegations contained in Paragraph Thirty-Eight of the Plaintiff's Complaint state procedural events regarding the Plaintiff's appeal of his criminal conviction, the Defendant neither admits nor denies same but demands strict proof thereof.

39. In as much as the allegations contained in Paragraph Thirty-Nine of the Plaintiff's

Complaint attempt to summarize and/or restate Court proceedings and/or testimony, the Defendant neither admits nor denies same but demands strict proof thereof.

40. In as much as the allegations contained in Paragraph Forty of the Plaintiff's Complaint attempt to summarize and/or restate Court proceedings and/or testimony, the Defendant neither admits nor denies same but demands strict proof thereof.

41. In as much as the allegations contained in Paragraph Forty-One of the Plaintiff's Complaint attempt to summarize and/or restate Court proceedings and/or testimony, the Defendant neither admits nor denies same but demands strict proof thereof.

42. The Defendant denies the allegations contained in Paragraph Forty-Two of the Plaintiff's Complaint.

43. In as much as the allegations contained in Paragraph Forty-Three of the Plaintiff's Complaint attempts to restate Court testimony and/or transcripts of Court testimony, the Defendant neither admits nor denies same but demands strict proof thereof.

44. In as much as the allegations contained in Paragraph Forty-Four of the Plaintiff's Complaint attempts to restate Court testimony and/or transcripts of Court testimony, the Defendant neither admits nor denies same but demands strict proof thereof.

45. In as much as the allegations contained in Paragraph Forty-Five of the Plaintiff's Complaint attempts to restate Court testimony and/or transcripts of Court

testimony, the Defendant neither admits nor denies same but demands strict proof thereof.

46. In as much as the allegations contained in Paragraph Forty-Six of the Plaintiff's Complaint attempts to restate Court testimony and/or transcripts of Court testimony, the Defendant neither admits nor denies same but demands strict proof thereof.

47. As to the allegations contained in Paragraph Forty-Seven of the Plaintiff's Complaint, the Defendant specifically admits that the trial Court denied the Plaintiff's motion for a new trial finding the Defendant's actions were harmless error and that Mr. Murdaugh failed to prove the Defendant's actions affected the jury's verdict.

48. The Defendant admits the allegations contained in Paragraph Forty-Eight of the Plaintiff's Complaint.

49. The Defendant lacks sufficient knowledge and information to form a belief as to the allegations contained in Paragraph Forty-Nine of the Plaintiff's Complaint therefore denies same.

50. As to the allegations contained in Paragraph Fifty of the Plaintiff's Complaint, the Defendant specifically admits that on May 14, 2025, the Defendant was arrested and charged with perjury, obstruction of justice, and misconduct in office based upon actions that do not relate to any allegations of jury tampering; further, the Solicitor appointed to prosecute these charges has admitted to the Court that there was no probable cause for any charges to be brought against the Defendant for jury tampering; further, the Defendant denies the remaining allegations contained in

Paragraph Fifty of the Plaintiff's Complaint which are in addition to or inconsistent with these admissions.

51. The Defendant admits the allegations contained in Paragraph Fifty-One of the Plaintiff's Complaint.

52. In as much as the allegations contained in Paragraph Fifty-Two of the Plaintiff's Complaint includes excerpts of the Court order, the Defendant neither admits nor denies same but demands strict proof thereof and would further allege that the Court's order speaks for itself.

53. In as much as the allegations contained in Paragraph Fifty-Three of the Plaintiff's Complaint include excerpts of the South Carolina Supreme Court Order, the Defendant neither admits nor denies the same, and further denies any allegations inconsistent with the Order and demands strict proof thereof.

54. In as much as the allegations contained in Paragraph Fifty-Four of the Plaintiff's Complaint include excerpts of the South Carolina Supreme Court Order, the Defendant neither admits nor denies the same, and further denies any allegations inconsistent with the Order and demands strict proof thereof.

55. The Defendant admits the allegations contained in Paragraph Fifty-Five of the Plaintiff's Complaint. In as much as the allegations contained in Paragraph Fifty-Five of the Plaintiff's Complaint include excerpts of the South Carolina Supreme Court Order, the Defendant neither admits nor denies the same, but demands strict proof thereof and would further allege that the Court's Order speaks for itself.

56. The Defendant lacks sufficient knowledge and information to form a belief as to the allegations contained in Paragraph Fifty-Six of the Plaintiff's Complaint

therefore denies same.

57. The Defendant denies the allegations contained in Paragraph Fifty-Seven of the Plaintiff's Complaint.

58. The Defendant realleges and reiterates each and every allegation set forth above, and not inconsistent herewith, as if fully repeated herein.

59. In as much as the allegations contained in Paragraph Fifty-Nine of the Plaintiff's Complaint attempts to state legal conclusions or restate applicable law, the Defendant neither admits nor denies same but demands strict proof thereof.

60. The Defendant denies the allegations contained in Paragraph Sixty of the Plaintiff's Complaint.

61. The Defendant denies the allegations contained in Paragraph Sixty-One of the Plaintiff's Complaint.

62. The Defendant denies the allegations contained in Paragraph Sixty-Two of the Plaintiff's Complaint.

63. The Defendant denies the allegations contained in Paragraph Sixty-Three of the Plaintiff's Complaint.

64. The Defendant denies the allegations contained in Paragraph Sixty-Four of the Plaintiff's Complaint.

**FOR A SECOND DEFENSE**

65. Defendant adopts and realleges each and every allegation set forth above, and not inconsistent herewith, as if fully repeated herein.

66. The Defendant alleges that the Complaint of the Plaintiff fails to state a claim against her and, therefore the Plaintiff's Complaint should be dismissed pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.

**FOR A THIRD DEFENSE**

67. Defendant adopts and realleges each and every allegation set forth above, and not inconsistent herewith, as if fully repeated herein.

68. The Court lacks jurisdiction of this matter and therefore the Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

**FOR A FOURTH DEFENSE**

69. Defendant adopts and realleges each and every allegation set forth above, and not inconsistent herewith, as if fully repeated herein.

70. The Defendant asserts that the Plaintiff lacks standing to bring this claim; therefore, the Plaintiff's Complaint should be dismissed.

**FOR A FIFTH DEFENSE**

71. Defendant adopts and realleges each and every allegation set forth above, and not inconsistent herewith, as if fully repeated herein.

72. The Defendant asserts the Plaintiff's claims are not ripe as any applicable damage related to the Defendant's alleged actions have not yet been incurred by the Plaintiff.

**FOR A SIXTH DEFENSE**

73. Defendant adopts and realleges each and every allegation set forth above, and not inconsistent herewith, as if fully repeated herein.

74. The Defendant asserts all immunities under the 11th Amendment of the United

States Constitution; therefore, the Plaintiff's Complaint should be dismissed.

**FOR A SEVENTH DEFENSE**

75. Defendant adopts and realleges each and every allegation set forth above, and not inconsistent herewith, as if fully repeated herein.

76. The Defendant asserts judicial immunity as an affirmative defense to the Plaintiff's Complaint.

**FOR AN EIGHTH DEFENSE**

77. Defendant adopts and realleges each and every allegation set forth above, and not inconsistent herewith, as if fully repeated herein.

78. The Defendant asserts quasi-judicial immunity as an affirmative Defense to the Plaintiff's Complaint.

**FOR A NINTH DEFENSE**

79. Defendant adopts and realleges each and every allegation set forth above, and not inconsistent herewith, as if fully repeated herein.

80. The Defendant hereby asserts that she is entitled to qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800 (1982), and therefore, the Plaintiff's Complaint should be dismissed.

**FOR A TENTH DEFENSE**

81. Defendant adopts and realleges each and every allegation set forth above, and not inconsistent herewith, as if fully repeated herein.

82. The Defendant asserts that the Plaintiff's damages are speculative; therefore, Plaintiff's Complaint should be dismissed.

**FOR AN ELEVENTH DEFENSE**

83. Defendant adopts and realleges each and every allegation set forth above, and not inconsistent herewith, as if fully repeated herein.

84. The Defendant is not a "person" for purposes of liability under 42 U.S.C. § 1983, and therefore the Plaintiff's Complaint should be dismissed.

WHEREFORE, the Defendant above-named, having answered the Complaint of the Plaintiff herein, respectfully requests the Court to dismiss the Plaintiff's Complaint, for costs in this action, and for such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

*s/Charles F. Turner, Jr.*

Charles F. Turner, Jr. (Fed. I.D. # 05849)
G. Troy Thames (Fed. I.D. #07713)
J. Nathan Ozmint (Fed. I.D. #14360)
Bowman H. Taylor (Fed. I.D. #14690)
WILLSON JONES CARTER & BAXLEY, P.A.
325 Rocky Slope Road, Suite 201
Greenville, SC 29607
Telephone: (864) 672-3711
Facsimile: (864) 373-7055
Email: cfturner@wjcblaw.com
tthames@wjcblaw.com
jnozmint@wjcblaw.com
bhtaylor@wjcblaw.com
**ATTORNEYS FOR DEFENDANT**

June 18, 2026

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**
Case Number: 2:26-cv-01989-RMG

| | |
|---|---|
| Richard Alexander Murdaugh, Sr.,<br><br>Plaintiff,<br><br>vs.<br><br>Rebecca Hill,<br><br>Defendant. | DEFENDANT'S RESPONSES TO LOCAL RULE 26.01 INTERROGATORIES |

Pursuant to Local Rule 26.01, Defendant Rebecca Hill, hereby answer the following Interrogatories:

(A) State the full name, address and telephone number of all persons or legal entities who may have subrogation interest in each claim and state the basis and extent of said interest.

**RESPONSE: None at this time, nor expected.**

(B) As to each claim, state whether it should be tried jury or non-jury and why.

**RESPONSE: All claims should be tried by a jury because Plaintiff and Defendant has demanded a trial by jury and the claims are triable by a jury.**

(C) State whether the party submitting these responses is a publicly owned company and separately identify: (1) each publicly owned company of which it is parent, subsidiary, partner or affiliate; (2) each publicly owned company which owns ten percent or more of the outstanding shares or other indicia of ownership of the party; and (3) each publicly owned company in which the party owns ten percent or more of the outstanding shares.

**RESPONSE: No.**

(D) State the basis for asserting the claim in the division in which it was filed (or the basis of any challenge to the appropriateness of the division) See Local Civil Rule 3.01.

**RESPONSE: This case is filed in the appropriate division.**

(E) Is this action related in whole or in part to any other matter filed in this District, whether civil or criminal? If so, provide: (1) a short caption and the full case number of the related action; (2) an explanation of how the matters are related; and (3) a statement of the status of the related action.

**RESPONSE: No.**

(F) If the Defendant is improperly identified, give the proper identification and state whether counsel will accept service of an amended summons and pleadings reflecting the correct identification.

**RESPONSE: The Defendant is properly identified.**

(G) If you contend that some other person or legal entity is, in whole or in part, liable to you or the party asserting a claim against you in this matter, identify such person or entity and describe the basis of their liability.

**RESPONSE: The Defendant is not aware of any additional parties who should be named as a Defendant in this case at this time**.

(H) In an action in which jurisdiction is based on diversity under 28 U.S.C. §1332(a), a party or intervenor must, unless the court orders otherwise, name – and identify the citizenship of – every individual or entity whose citizenship is attributed to that party or intervenor. This response must be supplemented when any later event occurs that could affect the court's jurisdiction under §1332(a).

**RESPONSE: Not applicable.**

Respectfully Submitted,

_*s/Charles F. Turner, Jr.*_____________

Charles F. Turner, Jr. (Fed. I.D. # 05849)
G. Troy Thames (Fed. I.D. #07713)
J. Nathan Ozmint (Fed. I.D. #14360)
Bowman H. Taylor (Fed. I.D. #14690)
WILLSON JONES CARTER & BAXLEY, P.A.
325 Rocky Slope Road, Suite 201
Greenville, SC 29607
Telephone: (864) 672-3711
Facsimile: (864) 373-7055
Email: cfturner@wjcblaw.com
tthames@wjcblaw.com
jnozmint@wjcblaw.com
bhtaylor@wjcblaw.com
**ATTORNEYS FOR DEFENDANT**

June 18, 2026

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Richard Alexander Murdaugh, Sr., Plaintiff, v. Rebecca Hill, Defendant. | ) | Civ. No. 2:26-cv-1989-RMG **RESPONSE TO DEFENDANT'S MOTION TO DISMISS** |

Plaintiff Richard Alexander Murdaugh, through his undersigned attorneys, submits this memorandum in response to the 44-page motion to dismiss of Defendant Rebecca Hill. Ms. Hill's motion to dismiss does not, and cannot, deny what the Supreme Court of South Carolina has already held unanimously: that Ms. Hill, then the elected Clerk of Court sworn to protect the jury, instead secretly tampered with it and thereby stole from Mr. Murdaugh his constitutional right to a fair trial by an impartial jury. Having "placed her fingers on the scales of justice" for personal profit, *South Carolina v. Murdaugh*, No. 2023-000392, 2026 WL 1322305, at *1 (S.C. May 13, 2026), Ms. Hill now asks this Court to hold that she may do so without consequence. She cannot.

Ms. Hill's motion is a makeweight damages motion masquerading as a motion to dismiss. It barely engages the elements of Mr. Murdaugh's 42 U.S.C. § 1983 claim—that a state actor, acting under color of state law, deprived Mr. Murdaugh of a federal constitutional right—because those elements are well pleaded. Instead, the motion attacks a single measure of compensatory damages and asserts a trio of immunities. These arguments fail for three reasons. *First*, a dispute over one item of damages is no basis to dismiss a well-pleaded constitutional claim: nominal damages independently sustain this action regardless of the proper measure of actual damages. *Second*, the constitutional violation was decided by the South Carolina Supreme Court. Therefore,

in the absence of any further development of the record, the Court should abstain from entertaining Ms. Hill's harmless-error arguments, which in any event are too fact-bound to consider in a motion to dismiss. *Third*, at this stage the Court must accept the Complaint's factual allegations as true and these allegations plainly establish Mr. Murdaugh's standing to bring a claim against Ms. Hill.

Ms. Hill's asserted immunity defenses fare no better. The Eleventh Amendment does not bar damages claims against Ms. Hill in her individual capacity. Quasi-judicial immunity does not shield a clerk's own unauthorized, criminal jury tampering, conduct the trial judge would have forbidden had he known of it. And qualified immunity is unavailable because the illegality of a court officer deliberately tampering with the jury in a criminal trial has been clearly established for at least sixty years, and because Ms. Hill's deliberate, concealed, profit-driven misconduct is an obvious violation by any measure. The motion therefore should be denied.

## I. <u>Statement of Facts</u>

The following well-pleaded facts are taken as true for purposes of this motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

In January 2023, Mr. Murdaugh stood trial in Colleton County for the murders of his wife and son. Compl. ¶ 16. Ms. Hill was the elected Clerk of Court and, as "the officer of the court charged as the primary caretaker of the jury," was entrusted to shield the jury from outside influence. Compl. ¶¶ 4, 10. She did the opposite. Motivated by a desire to write and sell a book about the trial—because, in her words, "she needed a lake house"—Ms. Hill believed a guilty verdict "would be the best way to sell books," and she set out to obtain one. Compl. ¶¶ 6, 36, 43.

To that end, Ms. Hill made repeated, improper communications to the jurors she was sworn to protect. She told them not to be "fooled," "confused," "thrown off," or "convinced" by Mr. Murdaugh and his defense; instructed them to "watch him closely" and "look at his actions" as he testified; and told them the day he testified was "epic." Compl. ¶¶ 5, 17, 19, 39, 40, 45, 53. She

held secret, repeated private conversations with the foreperson and instructed jurors they could not ask about them. Compl. ¶ 18. She fabricated a Facebook post, interrogated and lied to a juror about it, and manufactured a pretext to have that juror—who "had not made up her mind"—removed. Compl. ¶¶ 20–33. At least one juror testified that Ms. Hill's conduct influenced her guilty verdict. Compl. ¶ 39.

On May 13, 2026, the Supreme Court of South Carolina unanimously reversed Mr. Murdaugh's convictions and remanded for a new trial, holding that Ms. Hill's jury tampering violated Mr. Murdaugh's right to a fair trial by an impartial jury. Compl. ¶¶ 8, 51–55. The court found that Ms. Hill "clearly advised the jurors to find Murdaugh and the evidence he presented not credible and, essentially, urged them to render a guilty verdict," and that her "breathtaking and disgraceful effort . . . to undermine the jury process is unprecedented in South Carolina." *Murdaugh*, 2026 WL 1322305, at *11. Separately, Ms. Hill pleaded guilty to perjury, obstruction of justice, and misconduct in office arising from her conduct surrounding the trial. Compl. ¶ 50.

Mr. Murdaugh funded his defense of the tainted trial with a $600,000 withdrawal from his 401(k) retirement account—his sole remaining asset. Compl. ¶¶ 56, 62. Because Ms. Hill corrupted the proceeding that money purchased, the convictions were vacated, and the expenditure was lost. Accordingly, Mr. Murdaugh brings this action under 42 U.S.C. § 1983, seeking compensatory damages, punitive damages, and fees. Compl. ¶¶ 58–64 & Prayer.

## II. <u>Legal Standard</u>

When considering a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011). A claim survives if it pleads facts that, taken as true, state a plausible claim for relief. *E.I. du Pont de Nemours*, 637 F.3d at 440. The

question is not whether the plaintiff will ultimately prevail, nor whether any particular measure of damages is available, but whether the complaint states a claim. This means that a claim should be dismissed only if an essential element of the cause of action is not pleaded sufficiently. *See Brunson v. Stein*, 116 F.4th 301, 306 (4th Cir. 2024) (holding "a cause of action does *not* exist only if one or more elements is missing" (emphasis in original)).

Where a defendant mounts a facial attack to the Court's subject-matter jurisdiction under Rule 12(b)(1)—as Ms. Hill does—the same standard applies: the Court takes the jurisdictional allegations as true and construes them in the plaintiff's favor. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Article III standing at the pleading stage requires only "general factual allegations of injury resulting from the defendant's conduct." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

## III. Argument

### A. The Complaint states a claim under § 1983 regardless of the proper measure of actual damages.

Ms. Hill's motion is built almost entirely on the premise that Mr. Murdaugh cannot recover $600,000 in criminal-defense fees. But even if that were correct (it is not), it would not warrant dismissal. A motion to dismiss tests the sufficiency of a claim, not the availability of a particular remedy. *See Brunson*, 116 F.4th at 306. The Complaint pleads every element of a § 1983 claim—that Ms. Hill, acting under color of state law, deprived Mr. Murdaugh of his Sixth and Fourteenth Amendment rights—and Ms. Hill does not seriously contend otherwise. That alone defeats the motion.

Ms. Hill's attack on the measure of compensatory damages in this case is premature and not cognizable in a Rule 12 motion because nominal damages are available under § 1983 upon proof of a violation of an absolute constitutional right, without any proof of compensatory

damages. *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 289–92 (2021) (holding nominal damages redress a completed constitutional violation and sustain a live claim). Ms. Hill's own motion concedes this, quibbling only that the Complaint did not expressly invoke nominal damages even though controlling Supreme Court and Fourth Circuit authority does not require a specific prayer for nominal damages in pleadings. *See Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (holding in a § 1983 suit that precedent "*obligates* a court to award nominal damages when a plaintiff establishes the violation of his right to procedural due process but cannot prove actual injury" (emphasis added)); *Price v. City of Charlotte*, 93 F.3d 1241, 1246 (4th Cir. 1996) (holding, in a § 1983 action, that "[a] plaintiff's failure to prove compensatory damages results in nominal damages, typically one dollar"). Moreover, punitive damages are also available in a § 1983 action even in the absence of proven compensatory damages. *Haggwood v. Magill*, Case No. 5:15-cv-3271-RMG, 2016 WL 4149986, at *4 (D.S.C. Aug. 3, 2016) (citing *Carey*, 435 U.S. at 265 n.22).

**B. Mr. Murdaugh's legal fees are recoverable from Ms. Hill under § 1983.**

Although arguments regarding the availability of attorney's fees or any other measure of compensatory damages are not relevant to the motion to dismiss, Mr. Murdaugh nevertheless will briefly address this irrelevant issue because Ms. Hill devoted nearly 20 pages of briefing to it, and he does not want to appear to concede that Ms. Hill's analysis has merit at any stage of these proceedings.

Ms. Hill opens her argument with a mischaracterization of this issue as being "novel." Mem. Supp. Mot. Dismiss 4. Only the factual predicate of Mr. Murdaugh's claims—Ms. Hill's "shocking jury interference" for personal profit—is "novel." *Murdaugh*, 2026 WL 1322305, at *16. There is nothing "novel" about a claim for attorney's fees incurred because of a state actor's violation of a defendant's civil rights. *E.g.*, *Borunda v. Richmond*, 885 F.2d 1384, 1386, 1389–90

(9th Cir. 1988) ("[E]xpenditures for legal representation during the prior criminal proceeding most assuredly constitute economic harm. The reasonable amount of these expenditures, if proved to the jury's satisfaction to be the consequence of appellants' illegal conduct, is recoverable as compensatory damages."); *Kerr v. City of Chicago*, 424 F.2d 1134, 1141 (7th Cir. 1970) (holding that "[a] plaintiff in a civil rights action should be allowed to recover the attorneys' fees in a state criminal action where the expenditure is a foreseeable result of the acts of the defendant"); *Schiller v. Strangis*, 540 F. Supp. 605, 611 (D. Mass. 1982) (holding the plaintiff's "expenditures for legal representation during these criminal proceedings, if proved to be the consequence of defendants' illegal conduct, are recoverable as compensatory damages in this action" for an unlawful arrest); *Lykken v. Vavreck*, 366 F. Supp. 585, 597 (D. Minn. 1973) ("This court has no quarrel with the proposition that attorneys' fees actually incurred in a criminal proceeding as a foreseeable result of the defendant's acts may well be properly recoverable as an element of actual damages in an action under § 1983.").

Ms. Hill correctly quotes from a district court in the Fourth Circuit in stating, "The Fourth Circuit has never directly addressed whether a § 1983 plaintiff 'can recover attorneys' fees incurred in connection with an underlying state criminal proceeding.'" Mem. Supp. Mot. Dismiss 4 (quoting *Glass v. Anne Arundel Cnty.*, Case No. 12-cv-1901-WDQ, 2015 WL 4619631, at *3 (D. Md. July 30, 2015)). But Ms. Hill fails to inform the Court that Judge Quarles went on to hold that "the weight of the above-described persuasive authority favors the allowance of the recovery of attorneys' fees incurred during an underlying state action as an item of damages in a § 1983 suit *provided* that the plaintiff demonstrates that the attorneys' fees were a 'natural consequence' of the unlawful conduct" (emphasis in original) and ruled the plaintiff would "not be barred from offering evidence of attorneys' fees" at trial. *Glass*, 2015 WL 4619631, at *4; *see also Train v. City of*

*Albuquerque*, 629 F. Supp. 2d 1243, 1255 (D.N.M. 2009) (allowing a plaintiff to present legal fees for defending against underlying criminal charges as evidence of damages in a § 1983 action).[1]

Thus, while different minds might disagree about the measure of damages in this case, there is nothing "novel" whatsoever about a claim for attorney's fees as damages for a violation of constitutional rights.

***1. The* Townes *line rests on search-and-seizure Fourth Amendment logic that has no application to a Sixth Amendment jury-tampering claim.***

Ms. Hill urges the Court to follow *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999), and its progeny, *Hector v. Watt*, 235 F.3d 154 (3d Cir. 2000), and *Martin v. Marinez*, 934 F.3d 594 (7th Cir. 2019). Mem. Supp. Mot. Dismiss 10. Each is a Fourth Amendment search-and-seizure clause case turning on a doctrine unique to that clause: the "gross disconnect" between the privacy interest protected by the search-and-seizure clause and the injury of a resulting conviction. As *Townes* explained, "[t]he evil of an unreasonable search or seizure is that it invades privacy, not that it uncovers crime, which is no evil at all"—so a guilty defendant freed on a suppression theory has already "reaped an enormous benefit" (his freedom) and should not also collect damages for his conviction. 176 F.3d at 148.

That reasoning has no purchase here. The interest protected by the Sixth Amendment right to an impartial jury is the interest in a fair adjudication—the very interest Ms. Hill destroyed. There is no "disconnect" between the violation and the damages: the injury (a corrupted trial) fits the harm (the wasted cost of defending that corrupted trial) precisely. Unlike the plaintiff in *Townes*, who sought a personal windfall from the discovery of his own concealed guilt, Mr. Murdaugh seeks recoupment of money he actually lost because a court officer secretly rigged his

[1] In both *Glass* and *Train*, this issue was decided on motions in limine, which are the appropriate means for litigating what may be evidence of compensatory damages, not a motion to dismiss a claim that does not even have actual damages as a required element.

trial. The Supreme Court's tailoring principle—that § 1983 damages be fitted "to the interests protected by the particular right in question," *Carey*, 435 U.S. at 258–59—therefore favors recovery, not its denial.

The more apt precedent is *Borunda*, 885 F.2d 1384. In that case, evidence of the cost of defense was permitted in a § 1983 case alleging the plaintiffs were arrested and charged without probable cause. The *Borunda* court held that a criminal defendant's "expenditures for legal representation during the prior criminal proceeding most assuredly constitute[d] economic harm" compensable under § 1983 where the officials' misconduct proximately caused the proceeding. *Id.* at 1389–90. Here the nexus is even tighter: Ms. Hill was not a distant instigator who misled a prosecutor but the court officer who corrupted the trial from within. If the defense fees in *Borunda* were recoverable, so are Mr. Murdaugh's. And as Judge Quarles noted in *Glass*, *Borunda* represents the majority position on this issue. 2015 WL 4619631, at *4.

***2. Mr. Murdaugh's pleaded theory of damages is loss of the value of his defense expenditure, not "causing the prosecution."***

Ms. Hill's causation argument attacks a theory the Complaint does not advance. Mr. Murdaugh does not allege that Ms. Hill caused his prosecution; the State's decision to charge and the grand jury's indictment are beside the point. For that reason, Mr. Murdaugh does not allege that Ms. Hill caused the upcoming trial of those indictments and that is why he does not seek recovery of the cost of defending the upcoming trial. His pleaded injury is that the $600,000 he withdrew from his sole remaining asset to defend a constitutionally fair trial was rendered worthless because Ms. Hill corrupted the first attempt at a trial, forcing its vacatur. Compl. ¶¶ 56, 62. That is a wasted-expenditure injury that flows directly from Ms. Hill's conduct, not from any third party. Mr. Murdaugh paid for a defense at a fair trial but, because of Ms. Hill's conduct, he did not receive it.

The but-for chain is straightforward: but for Ms. Hill's tampering, there would have been no constitutional violation, no vacatur, and no forfeiture of the value of Mr. Murdaugh's defense expenditure. Mr. Murdaugh must defend a constitutionally fair trial because the State chose to indict him. Ms. Hill did not cause that. Because Ms. Hill secretly tampered with the jury in the State's first attempt to try the indictments, Mr. Murdaugh was also required to defend a trial corrupted by Ms. Hill. The State did not cause that. *Murdaugh*, 2026 WL 1322305, at *16 ("Hill's shocking jury interference was accomplished outside the presence and knowledge of the outstanding trial judge and superbly competent and professional counsel for the State . . . .").

Mr. Murdaugh thus must defend two trials, one corrupted by Ms. Hill and another one caused by the State's obligation to replace that trial with a fair trial of the indictments. Ms. Hill therefore is liable to him for the actual cost to Mr. Murdaugh of defending the unnecessary trial that she caused—the first trial. The upcoming second trial—which will cost significantly more than the first—is the necessary fair trial caused by the indictments. *Id.* Ms. Hill caused the need for two trials to occur, but the additional trial she caused is the *first* trial—the legal nullity with a vacated verdict—not the more expensive retrial that presumably will result in a constitutionally valid verdict.[2] The foreseeability of the damages she caused is a jury question. *E.g.*, *Hadfield v. Gilchrist*, 538 S.E.2d 268, 274 (S.C. Ct. App. 2000) (observing that "[d]amages are proximately caused if they are the foreseeable result of the defendant's tortious act" and "[p]roximate cause is a question for the finder of fact" (internal quotation marks omitted)). It is not likely a difficult question for a jury to find it foreseeable that secretly corrupting a six-week trial for personal profit would cause injury to the litigants.

[2] If the retrial is not, for some reason, constitutionally valid, the failure certainly would not have been caused by Ms. Hill.

**C. The constitutional violation is established and may not be relitigated in a motion to dismiss.**

A substantial portion of Ms. Hill's motion—her harmless-error discussion, her invocation of *Remmer* hearings, and her insistence that her comments were "innocuous"—attempts to relitigate whether a constitutional violation occurred at all. Of course, these arguments are factual disputes that cannot be resolved on a motion to dismiss. *See E.I. du Pont de Nemours*, 637 F.3d at 450 (holding "a district court errs in going beyond the complaint on a Rule 12(b)(6) motion").

Additionally, the Court should abstain from even hearing this argument at this stage. The Supreme Court of South Carolina squarely held that Ms. Hill's conduct violated Mr. Murdaugh's right to a fair trial by an impartial jury. *Murdaugh*, 2026 WL 1322305, at *1, 16. That decision was based on a record developed at an evidentiary hearing at which Ms. Hill testified. *Id.* at *2. Ms. Hill should not be permitted to ask this Court to apply the same law (the Constitution) to the same factual record that was before the South Carolina Supreme Court and somehow come to a contrary conclusion.

This is not an application of "offensive nonmutual collateral estoppel." That doctrine does not apply to Ms. Hill because she was not a party to *Murdaugh*. Nor does the *Rooker-Feldman* doctrine apply to Ms. Hill. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 287 (2005) ("*Rooker–Feldman* bars a losing party in state court from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights, but the doctrine has no application to a federal suit brought by a nonparty to the state suit." (internal quotation marks omitted)). Rather, principles of comity—the respect for state courts our federal Constitution requires—direct the Court to abstain from entertaining an argument that even if Ms. Hill did make the inappropriate comments to the jury that were attributed to her in *Murdaugh*, the *Remmer*

presumption was rebutted or inapplicable—no matter what the South Carolina Supreme Court says—and so Mr. Murdaugh suffered no constitutional deprivation. *Cf.* 28 U.S.C. § 1738 (requiring federal courts to give full faith and credit to the judicial proceedings of any state); *Spencer v. Spencer*, 430 F. Supp. 683, 687 (M.D.N.C. 1977) (observing "general notions of comity, equity and federalism support the public policy against federal interference with state proceedings"); *Edmondson Cmty. Org., Inc. v. Mayor & City Council of Balt.*, 797 F. Supp. 3d 497, 512 (D. Md. 2025) (noting "the principle of comity is a practice of abstention"). This is especially true because the state-court proceedings involve the enforcement of criminal law. *See Younger v. Harris*, 401 U.S. 37, 44 (1971) (discussing importance of the "notion of 'comity,' that is, a proper respect for state functions" in the context of state criminal prosecutions).

Of course, Ms. Hill has the right to challenge her liability in this action. But the Court should abstain from allowing her to do so merely by asking this Court to hold that the South Carolina Supreme Court erred when ruling on the record before it because she has an adequate remedy that gives full faith and credit to the proceedings of the South Carolina Supreme Court—litigating this case. To challenge liability, Ms. Hill may develop material facts in discovery that were not before the South Carolina Supreme Court or appeal to laws or legal doctrines (e.g., jurisdictional arguments or immunities from liability) not at issue in Mr. Murdaugh's appeal from the denial of his motion for a new trial based on after-discovered evidence (Ms. Hill's jury tampering). For example, Ms. Hill's standing and immunity arguments fail because they are without merit, not because they have been decided by the South Carolina Supreme Court. But the Court should abstain from hearing an argument that the factual allegations in the Complaint, assumed true and identical to the facts that were before the South Carolina Supreme Court, do not give rise to any constitutional violation, less than two months after the South Carolina Supreme

Court unanimously held they were grave constitutional violations requiring the reversal of two murder convictions.

**D. Ms. Hill's § 1988 argument is not responsive to any claim in this case.**

Ms. Hill argues at length that criminal-defense fees are not recoverable as "costs" under 42 U.S.C. § 1988. Mem. Supp. Mot. Dismiss 21–23. But Mr. Murdaugh does not seek the $600,000 under § 1988; he pleads it as compensatory damages under § 1983. Compl. ¶ 62. The Complaint's § 1988 request seeks the fees Mr. Murdaugh incurs prosecuting *this* federal civil action—exactly what § 1988 authorizes a prevailing party to recover. *N.C. Dep't Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 12 (1986).

**E. Ms. Hill's challenges to Mr. Murdaugh's standing to bring suit are without merit.**

***1. Whether the fee injury is traceable to Ms. Hill is irrelevant, but, regardless, it certainly is traceable to her.***

Traceability is the requirement of "a causal connection between the injury and the conduct complained of." *Lujan*, 504 U.S. at 560. Traceability is a "relatively modest" burden at the pleading stage and is not equivalent to proximate cause in tort law. *Bennett v. Spear*, 520 U.S. 154, 168–71 (1997); *Lexmark Int'l, Inc. v. Static Control Components*, 572 U.S. 118, 134 n.6 (2014). As noted above, compensatory damages are not an element of the claim. Mr. Murdaugh is entitled to nominal damages even without any compensatory damages traceable to Ms. Hill's conduct. *Carey*, 435 U.S. at 266. The fact that her conduct deprived him of his rights under the Sixth Amendment and Fourteenth Amendment gives him standing to bring suit under § 1983. *See Uzuegbunam*, 592 U.S. at 282–83 (holding that "to demonstrate standing, the plaintiff must not only establish an injury that is fairly traceable to the challenged conduct but must also seek a remedy that redresses that injury" and that "an award of nominal damages by itself can redress a past injury").

Regardless, as also explained above, the pleaded actual damages are traceable to Ms. Hill's conduct—and only to her conduct. Ms. Hill's "independent third party" argument again answers the wrong question—whether she caused the prosecution. The pleaded injury is the lost value of the defense expenditure, which traces directly to Ms. Hill's tampering and the resulting vacatur. The prosecution did not cause the wasted defense expenditure in the first trial. *Murdaugh*, 2026 WL 1322305, at *16. Ms. Hill did. *Id.* at *1.

Ms. Hill's theory that Mr. Murdaugh is entitled only to a *pro rata* portion of his defense costs from the time her jury tampering allegedly began mid-trial to the verdict is odd, and why Ms. Hill believes that argument could have any bearing on standing is incomprehensible. When Ms. Hill's tampering actually began is a subject for discovery. Whether damages should be $600,000 or $165,000 or some other number manifestly is not a question to be decided on a motion to dismiss and certainly not a challenge to standing (nominal damages provide standing, *Uzuegbunam*, 592 U.S. at 282–83, 289–92). Why Ms. Hill believes that tampering with the jury only corrupts a discrete fraction of the trial is difficult to understand.

***2. Mr. Murdaugh's claim is ripe because the injury is complete.***

Ms. Hill's ripeness argument is expressly hypothetical: it applies only "to the extent" Mr. Murdaugh seeks damages for a future retrial, and Ms. Hill concedes "Plaintiff does not contend" any such thing. Mem. Supp. Mot. Dismiss 30. The pleaded injury—the already-incurred loss of $600,000—is a concrete, completed, past harm that accrued when Ms. Hill's tampering produced the tainted conviction. It rests on no "contingent future event." *See Scoggins v. Lees Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013) (holding a claim is ripe for adjudication if it does not depend on future contingent events) (internal quotation marks omitted). There is no articulable argument that the claim actually pleaded is not ripe for adjudication.

**F. No immunity bars this action.**

***1. The Eleventh Amendment does not bar this action.***

Ms. Hill's assertion of the Eleventh Amendment is without merit. Mr. Murdaugh sues Ms. Hill personally, in her individual capacity, a fact of which Ms. Hill is perfectly aware. At the time this suit was filed, she held no office and had no other capacity in which she could be sued. The current clerk of court for Colleton County is not a defendant in any capacity. Ms. Hill is sued personally for damages under § 1983 based upon actions taken in her official capacity. State officials sued in their personal capacity for damages are "persons" under § 1983 and are not protected by the Eleventh Amendment, even where the challenged conduct occurred in the course of their official duties. *Hafer v. Melo*, 502 U.S. 21, 27–31 (1991). "[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Hafer*, 502 U.S. at 30–31. *Hafer* is dispositive and disposes of the Eleventh Amendment defense in its entirety.

***2. Quasi-judicial immunity does not shield unauthorized, non-judicial jury tampering.***

The Supreme Court "has refused to extend absolute immunity beyond a very limited class of officials, including the President of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions, 'whose special functions or constitutional status requires complete protection from suit.'" *Hafer*, 502 U.S. at 29 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)).[3] County clerks of court are not in that very short list of officials having absolute immunity.

Absolute quasi-judicial immunity is determined by a "functional approach" that asks whether the specific act was a judicial function integral to the adjudicative process and requiring

[3] Prosecutors also receive absolute immunity for the performance of prosecutorial functions. *McCray v. Maryland*, 456 F.2d 1, 3 (4th Cir. 1972).

judicial-type discretion. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435–37 (1993). Clerks receive such immunity only for tasks "integral or intertwined with the judicial process" performed at the direction of a judge—docketing filings, issuing routine process, and the like. "The touchstone for the doctrine's applicability has been performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Id.* at 435–36 (internal quotation marks omitted). "When judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges—that is, because they, too, exercise a discretionary judgment as a part of their function." *Id.* at 436 (internal quotation marks and brackets omitted).

Ms. Hill's conduct was none of these things. Editorializing to jurors about the defendant's guilt, holding secret conversations with the foreperson, fabricating a Facebook post, interrogating and lying to a juror, and engineering that juror's removal are not discretionary judgments forming part of a clerk of court's caretaking functions; they are the antithesis of any legitimate clerk's role. Ms. Hill has the burden to prove absolute immunity:

> We have consistently "emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. We have been quite sparing in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant."

*Id.* at 433 n.4 (quoting *Burns v. Reed*, 500 U.S. 478, 486–87 (1991)). Ms. Hill's argument that "some contact with the jury" was part of her duties does not meet this burden: that she was permitted to hand jurors coffee does not immunize her for secretly urging them to convict.

The Fourth Circuit has explained:

> The immunity of 'quasi-judicial' officers such as prosecuting attorneys and parole board members derives, not from their formal association with the judicial process, but from the fact that they exercise a discretion similar to that exercised by judges.

> Like judges, they require the insulation of absolute immunity to assure the courageous exercise of their discretionary duties.

*McCray*, 456 F.2d at 3. Obviously, Ms. Hill was not engaged in the courageous exercise of her discretionary duties when she decided to tamper with the jury in a murder trial in order to personally profit from writing a book about a guilty verdict. "Similarly, court clerks enjoy derivative absolute judicial immunity *when they act in obedience to a judicial order or under the court's direction.*" *Hamilton v. Murray*, 648 F. App'x 344, 345 (4th Cir. 2016) (citing *McCray*, 456 F.2d at 5) (emphasis added). Just as obviously, Ms. Hill's malfeasance was not performed at the judge's direction—Judge Newman was, for example, "not too pleased about the clerk interrogating a juror as opposed to . . . bringing it to me." Compl. ¶ 27. Certainly, he was unaware of any jury tampering and would have acted decisively to prevent it, had he been aware. An act the presiding judge would have forbidden cannot be one taken pursuant to his direction.

Ms. Hill therefore fails to show any entitlement to absolute quasi-judicial immunity.

### ***3. Qualified immunity does not protect deliberate jury tampering by a state official because the right to an impartial jury is clearly established.***

Case law provides "government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Id.* at 639 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). It is not enough that the right be clearly established; "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* "This is not to say that an official action is protected by qualified immunity unless

the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640 (citation omitted).

Qualified immunity is unavailable in this case for two independent reasons.

*First*, the right to trial before an impartial jury has been clearly established for a very long time. Sixty years ago, the Supreme Court held that a court officer's statements to jurors bearing on a defendant's guilt violate the Sixth Amendment, explaining that such an "officer of the court . . . beyond question carries great weight with a jury." *Parker v. Gladden*, 385 U.S. 363, 365 (1966); *see also Turner v. Louisiana*, 379 U.S. 466 (1965); *Remmer v. United States*, 347 U.S. 227 (1954). Ms. Hill attempts to define the right too narrowly, asking whether a *clerk* has ever been held liable for these precise words. But officials are not entitled to immunity merely because "the very action in question has [not] previously been held unlawful." *Anderson*, 483 U.S. at 640. Any reasonable clerk of court understood that secretly telling jurors not to be "fooled" or "confused" by the defense and to watch the defendant for signs of guilt—for personal profit—was unlawful. Sixty years ago, the Supreme Court held it violated the Sixth Amendment for a court bailiff to tell a juror the defendant is "guilty." *Parker*, 385 U.S. at 363. That suffices to clearly establish the right to a jury trial free of court officers secretly advocating the guilt of the accused to jurors during trial.

*Second*, this is an obvious case. Even absent a factually identical precedent, qualified immunity is denied where the unlawfulness is plain. *Taylor v. Riojas*, 592 U.S. 7, 7–9 (2020) (holding that lack of a factually identical precedent does not give rise to qualified immunity where no reasonable officer could have concluded that the conduct at issue was constitutionally permissible); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (holding that "[q]ualified immunity shields an officer from suit" only "when she makes a decision that, even if

constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted"); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (noting that where a violation of a constitutional right is obvious, the text of the constitutional provision at issue itself may be sufficient to provide officials "fair warning that their conduct violated the Constitution" because the "general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question"). Deliberate jury tampering by the officer charged with protecting the jury, undertaken for personal financial gain, is the paradigm of an obvious constitutional violation.

Ms. Hill's attempt to use Chief Justice Toal's reversed harmless-error ruling as a basis for qualified immunity conflates two distinct questions: whether jury tampering was a clearly established constitutional violation, and whether Ms. Hill's jury tampering in *Murdaugh* was prejudicial to the verdict. Chief Justice Toal merely found insufficient proof of prejudice under a standard the Supreme Court of South Carolina rejected on appeal. Regarding Ms. Hill, Chief Justice Toal found her denials of making "improper comments to the jurors" not credible, that Ms. Hill was motivated by wanting "to write a book, which she believed a guilty verdict would help sell; she was 'attracted by the siren call of celebrity'; and '[s]he allowed her desire for the public attention of the moment to overcome her duty to her oath of office and her oath as a witness.'" *Murdaugh*, 2026 WL 1322305, at *3. Those are hardly findings supporting an argument that qualified immunity is available because Ms. Hill reasonably believed her conduct was lawful. To the contrary, Ms. Hill knew her conduct was unlawful, which is why she concealed her conduct from the judge, instructed jurors not to discuss it, lied to a juror, fabricated evidence, and later committed perjury during the evidentiary hearing about her conduct. Compl. ¶¶ 18, 24–30, 50. Those are not the acts of an officer who believed she was acting lawfully, and they forfeit any

claim to qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding qualified immunity does not protect "those who knowingly violate the law").

## IV. Conclusion

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss in its entirety. In the alternative, Mr. Murdaugh requests leave to amend under Rule 15(a) under the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ Phillip D. Barber
Richard A. Harpootlian (Fed. ID No. 1730)
Phillip D. Barber (Fed. ID No. 12816)
Andrew R. Hand (Fed. ID No. 12176)
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street (29201)
Post Office Box 1090
Columbia, SC 29202
(803) 252-4848
rah@harpootlianlaw.com
pdb@harpootlianlaw.com
arh@harpootlianlaw.com

James M. Griffin (Fed. ID No. 1053)
Margaret N. Fox (Fed. ID No. 10576)
GRIFFIN HUMPHRIES LLC
8906 Two Notch Road (29223)
Post Office Box 999
Columbia, South Carolina 29202
(803) 744-0800
jgriffin@griffinhumphries.com
mfox@griffinhumphries.com

*Attorneys for Plaintiff*

July 2, 2026
Columbia, South Carolina

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Richard Alexander Murdaugh, Sr., Plaintiff, v. Rebecca Hill, Defendant. | ) | C/A No.: 2:26-cv-01989-CMC **DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

Defendant submits this Reply to Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (ECF No. 15).

**I. *Defendant did not cause a compensable injury under 42 U.S.C. § 1983.***

Plaintiff argues that whether or not he is entitled to compensatory damages for the legal fees that resulted from his underlying criminal prosecution – the only damages Plaintiff pled in his Complaint, saving punitive damages – is irrelevant to Defendant's Motion to dismiss; Plaintiff misinterprets Defendant's argument: Defendant's identification of the novelty of Plaintiff's legal theory addresses not which categories of damages are ultimately recoverable by the Plaintiff, but instead speaks to the core requirements of causation and injury in a § 1983 suit. Plaintiff's Complaint fails to allege facts from which this Court could infer those core requirements. Too, the Defendant's argument that Plaintiff's damages are not redressable under § 1983 is indeed proper: as Plaintiff has failed to plead nominal damages, disallowing the compensatory damages alleged by Plaintiff would render Plaintiff's claim moot, thus depriving the Court of jurisdiction.

A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Damages under § 1983 are designed not to compensate plaintiffs for the vague value of

constitutional deprivations, but to compensate for the injuries directly attributable to such deprivations. *Carey v. Piphus*, 435 U.S. 247, 254-257 (1978). Accordingly, claims brought pursuant to § 1983 require both "but-for" and proximate cause analyses. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). Defendant's recitation of *Townes*' and *Borunda*'s opposite approaches to the question of whether attorneys' fees in an underlying criminal case are compensable under § 1983, then, inevitably does weigh on the question of what damages are available to the Plaintiff, and Plaintiff may be correct that this question is irrelevant in the context of a motion to dismiss pursuant to Rule 12(b)(6); however, Defendant's motion is not based primarily on which approach is correct – it is based on the argument that in both cases the question was decided on the basis of whether the defendants there had caused the injuries complained of.[1] To that extent, it is of no issue whether the Court follows *Townes* or, alternatively, *Borunda*: in either case, Plaintiff must plead an injury caused by the Defendant. He has failed to do so here.

Plaintiff concedes that Defendant here did not cause the prosecution of the Plaintiff nor the trial itself. Rather, Plaintiff argues that Defendant caused the funds expended in Plaintiff's first

[1] *See Townes*, 176 F.3d at 146-47 ("the unconstitutional seizure and search of Townes's person was not a **proximate cause** of his conviction.") (emphasis added); *Borunda*, 885 F.2d at 1390 (finding "[t]he jury was entitled to find . . . that appellants procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney," thus, "[t]he amount of attorneys' fees incurred during the criminal prosecutions **was a direct and foreseeable consequence** of the appellant's unlawful conduct.") (emphasis added); *Glass v. Anne Arundel Cty.*, No. WDQ-12-1901, 2015 U.S. Dist. LEXIS 100065, at *12-14 (D. Md. July 30, 2015) (explaining a plaintiff bringing a § 1983 false arrest claim is not necessarily barred "from **obtaining damages for out-of-pocket expenses** incurred after legal process issues but **which were a foreseeable consequence of the allegedly unlawful detention that preceded legal process**.") (emphasis added); *Train v. City of Albuquerque*, 629 F. Supp. 2d 1243, 1253-54 (D.N.M. 2009) (holding plaintiff was allowed to "argue to the jury that, **but for** the illegal search at his home, he would not have had to face the charges he did and would not have had to be incarcerated, he would not have incurred expenses defending himself, and . . . such charges, with their attendant litigation expenses . . . could **foreseeably flow** from the illegal search, given that the primary purpose of a search is frequently to recover fruits of crime for the purpose of bringing a criminal prosecution.") (emphasis added).

trial to be lost or wasted. Herein lies the novelty of Plaintiff's argument: Plaintiff does not, and cannot, allege that the attorneys' fees would not have been spent but for Defendant's actions. The Plaintiff's motion for a directed verdict in his criminal trial was denied; Defendants' conduct did not, even in Plaintiff's own telling, cause the Plaintiff's criminal trial to go before the jury and did not cause the jury to render a verdict. The same would have occurred regardless of any action taken by Defendant. Ultimately the Plaintiff paid for a trial that he received. Furthermore, Plaintiff successfully appealed his conviction, now overturned. Plaintiff, then, received the full benefit of his legal defense; even in the Plaintiff's own factual recitation, Plaintiff concedes that eleven jurors voted to convict him based solely on the evidence properly admitted at trial – a verdict of "not guilty" was not in the offing regardless of any actions of Defendant. Accordingly, the only benefit denied to the Plaintiff was a potential mistrial, in which Plaintiff would face the exact position he now occupies, in which the charges against the Plaintiff may be dismissed by the state, in which Plaintiff might plead guilty to the charges or to lesser charges, or in which Plaintiff may be retried.

Plaintiff's insistence, then, that he seeks damages related to the "loss" of funds from the first trial is but an end-around to achieve Plaintiff's ultimate aim, which is to seek the costs of the potential second trial; such a second trial would be, theoretically, a far more foreseeable injury based on the Defendant's alleged conduct; such damages, however, would not yet be ripe, eroding Plaintiff's standing and thus depriving this Court of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021) ("[A] plaintiff must "'demonstrate standing separately for each form of relief sought.'" (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U. S. 167, 185 (2000)); *Wells v. Johnson*, 150 F.4th 289, 299 (4th Cir. 2025) (explaining plaintiffs must "show standing, within each claim, to seek each remedy they ask for."). It is for this reason that Plaintiff advances such a novel theory:

that attorneys' fees in an underlying criminal case, which were concededly not caused by the Defendant and would have been spent absent any action by this Defendant, were foreseeably caused by the Defendant's actions.

Accordingly, the damages sought by Plaintiff have not yet occurred and Plaintiff's claims are not yet ripe; it is for this reason that Plaintiff insists that disallowing the sole damages pled by the Plaintiff – compensatory damages related to the costs of his first trial – is premature and of no issue, because, as Plaintiff argues, nominal damages provide the Plaintiff with standing sufficient to survive a motion to dismiss. However, on this too, Plaintiff is mistaken in the application, even if not the law. While it is true that nominal damages may provide a sufficient basis for standing, a claim for nominal damages **must be made**. In *Uzuegbunam v. Preczewski*, cited by Plaintiff, the Appellants sought nominal damages and injunctive relief. 592 U.S. 279, 284 (2021). "Nominal damages are not a consolation prize for the plaintiff who pleads, but fails to prove, compensatory damages." *Id.* at 290. Accordingly, *Uzuegbunam* solely "carved out an exception to mootness in Section 1983 actions that . . . applied where a plaintiff **had properly pled a claim for nominal damages.**" *Caroline Cty. Branch of the NAACP v. Town of Federalsburg*, 702 F. Supp. 3d 410, 415-16 (D. Md. 2023) (emphasis added) (citing *Uzuegbunam v. Preczewski*, *Uzuegbunam*, 592 U.S. at 293 (Kavanaugh, J., concurring)).

"Indeed, the Supreme Court has previously instructed federal courts to bear 'close inspection'" to exactly what Plaintiff seeks to do here: to assert "'a claim for nominal damages, extracted late in the day from [a plaintiff]'s general prayer for relief and asserted solely to avoid otherwise certain mootness.'" *Caroline Cty. Branch of the NAACP*, 702 F. Supp. 3d at 417 (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71, (1997)). Plaintiff has failed to plead nominal damages. Furthermore, the same may not be inferred from Plaintiff's request for "such other and

further relief as the Court may deem just and proper." (ECF No. 1, p. 16). Such an approach has been tried and rejected. In *Foodbuy, LLC v. Gregory Packaging, Inc.*, the Fourth Circuit addressed such an attempt as follows:

> To be sure, [plaintiff] did include a boilerplate request for other and further relief as the Court deems just and proper, but that language does not preserve a nominal damages claim when there is absolutely no specific mention in the Complaint of nominal damages.

987 F.3d 102, 116 (4th Cir. 2021) (internal citations and quotation marks omitted) (quoting *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 141 (2d Cir. 1994)); *see Caroline Cty. Branch of the NAACP*, 702 F. Supp. 3d at 416-18.

To the extent, then, that Defendant asserts that Plaintiff's prayer for compensatory damages is not redressable, Defendant's motion is properly before the Court at the motion to dismiss stage. If such damages as Plaintiff has pled are disallowed, and cannot be saved by nominal damages, which Plaintiff has failed to plead, the sole category of damages asserted by Plaintiff are punitive.[2] An award of punitive damages alone, unanchored by any award of compensatory or nominal damages, abridges the purpose of damages under 42 U.S.C. § 1983: to "**compensate persons for injuries** that are **caused by** the deprivation of constitutional rights." *Carey*, 435 U.S. at 254-257 (emphasis added) ("[D]amages awards under § 1983 should be governed by the principle of compensation."). Indeed, while "[d]eterrence is also an important purpose of this system, [] **it operates through the mechanism of damages that are *compensatory* — damages grounded in determinations of plaintiffs' actual losses**." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) (emphasis in original and added)).

[2] The prospect of attorney's fees and costs cannot confer standing or prevent mootness throughout. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990).

Accordingly, Plaintiff's Complaint is moot, lacking Article III standing, and dismissal of Plaintiff's claim for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is appropriate.

**II. *Defendant is entitled to qualified immunity.***

Plaintiff attempts to portray Defendant's assertion of qualified immunity into a factual dispute, requiring discovery and the development of evidence – it is not. Qualified immunity "provides ample protection to all but the plainly incompetent and those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1985). Defendant makes no factual argument as to the merits or details of the contacts Plaintiff alleges that Defendant had with the jury; rather, Defendant simply argues that a reasonable clerk of court would not have known that the contacts alleged by the Plaintiff rose above harmless error. The Sixth Amendment is not automatically violated where there has been a constitutional error. *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986) (explaining constitutional errors may be harmless "in terms of their effect on the fact finding process at trial."). An improper comment by a clerk of court, then, that does not rise above the level of harmless error does not rise to the level of a Sixth Amendment violation. As argued by Defendant, the comments made by Hill fall within the spectrum of comments addressed by Courts in other cases, with some more innocuous comments having been found to be harmless error, and less innocuous comments having been found to rise to the level of a Sixth Amendment violation. Ultimately, though, Plaintiff provides no answer to *State v. Rowell*, in which a Court official's comment that the defendant should be punished – facially far less innocuous than the comments Defendant is alleged to have made – was found to be harmless error.

In arguing that Defendant is not entitled to qualified immunity, Plaintiff does just what the United States Supreme Court has prohibited by defining the right in question at too high a level of generality. As the Supreme Court has stated only this year:

> To find that a right is clearly established, courts generally "need to identify a case where an officer acting under similar circumstances . . . was held to have violated" the Constitution. *Escondido v. Emmons*, 586 U. S. 38, 43, 139 S. Ct. 500, 202 L. Ed. 2d 455 (2019) (*per curiam*) (internal quotation marks omitted). The relevant precedent must define the right with a "high degree of specificity," so that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 583 U. S. 48, 63, 138 S. Ct. 577, 199 L. Ed. 2d 453 (2018) (internal quotation marks omitted).

*Zorn v. Linton*, 146 S. Ct. 926, 930 (2026). Plaintiff attempts to waive off this requirement of a high level of specificity by arguing that any contact with the jury by a court official is presumptively and obviously prejudicial. However, as Defendant has argued, the same was not obvious to former Chief Justice of the South Carolina Supreme Court Toal; Defendant is at a loss as to how any reasonable clerk should have known that Defendant's conduct was more than mere harmless error when such an esteemed member of the judiciary did not. Too, Defendant would note, Judge Toal found Defendant's testimony lacking credibility; it was clear that she believed that Defendant had made just the statements alleged by the Plaintiff, and found the same to be harmless error.

Similarly, Plaintiff attempts to argue that this Court is somehow bound by the holding of the South Carolina Supreme Court that Plaintiff was denied a fair trial; yet that Court's answer to this ultimate question does not affect Defendant's argument in favor of qualified immunity: namely that it was not clearly established at the time of the Defendant's conduct that such conduct violated Plaintiff's clearly established right to a fair trial. To determine whether qualified immunity applies, a district court must decide (1) whether any right was violated, and (2) whether that right was "clearly established" at the time of the alleged violation. *Somers v. Devine*, 132 F.4th 689, 696 (4th Cir. 2025). Plaintiff, then, asks the Court to hold that the second half of the qualified immunity test be nullified: in Plaintiff's telling, the conclusive establishment by another court of a Constitutional violation forecloses any grant of qualified immunity. Such is plainly not the law.

Finally, Defendant would note the novelty of Plaintiff's damages claim here too in the assertion of qualified immunity. Defendant might have known that violating Plaintiff's Sixth Amendment right to an impartial jury could lead to the expense of a new trial; but, while Defendant acknowledges the stretch between the nature of Plaintiff's claim and Defendant's plea of qualified immunity, it is difficult to overstate the tenuous nature of Plaintiff's claim that Defendant's conduct caused the trial expenses associated with Plaintiff's underlying criminal case. Defendant can find no such Fourth Circuit or Supreme Court authority recognizing such a claim as Defendant here faces. To the extent that *Harlow* establishes that qualified immunity is meant to protect government officials from the fear of civil liability for every mistake they may make, Defendant should be afforded that protection from such a novel suit.

Accordingly, Defendant prays for an Order dismissing Plaintiff's claims, with prejudice.

.

Respectfully Submitted,

*s/Charles F. Turner, Jr.*

Charles F. Turner, Jr. (Fed. I.D. # 05849)
G. Troy Thames (Fed. I.D. #07713)
J. Nathan Ozmint (Fed. I.D. #14360)
Bowman H. Taylor (Fed. I.D. #14690)
WILLSON JONES CARTER & BAXLEY, P.A.
325 Rocky Slope Road, Suite 201
Greenville, SC 29607
Telephone: (864) 672-3711
Facsimile: (864) 373-7055
Email: cfturner@wjcblaw.com
tthames@wjcblaw.com
jnozmint@wjcblaw.com
bhtaylor@wjcblaw.com
**ATTORNEYS FOR DEFENDANT**

July 9, 2026

**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Richard Alexander Murdaugh, Sr.,<br><br>Plaintiff,<br><br>v.<br><br>Rebecca Hill,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 2:26-cv-1989-RMG<br><br>**PLAINTIFF'S RESPONSES TO INTERROGATORIES PURSUANT TO LOCAL RULE 26.03 D.S.C.** |

Pursuant to Local Civil Rule 26.03(A) (D.S.C), Plaintiff Richard Alexander Murdaugh, Sr., hereby provides the following information:

**1. A short statement of the facts of the case.**

**RESPONSE:** This is a civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Rebecca Hill, former Clerk of Court for Colleton County, South Carolina, for the deliberate deprivation of Plaintiff's constitutional right to a fair trial before an impartial jury, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. During his murder trial in Colleton County, January to March 2023, Ms. Hill— the elected Clerk of Court for Colleton County, the officer of the court charged as the primary caretaker of the jury—secretly and deliberately inserted herself into the jury's deliberative process for personal financial gain. Acting under color of state law, Ms. Hill made repeated, improper extrajudicial communications to jurors in which she urged them not to be "fooled," "confused," "thrown off," or "convinced" by Murdaugh and his defense. Ms. Hill's motive was desire for personal profit from writing a book about a guilty verdict. On May 13, 2026, the Supreme Court of South Carolina unanimously reversed Plaintiff's murder convictions and remanded for a new trial, holding that Ms. Hill's jury tampering violated Mr. Murdaugh's constitutional right to a fair trial by an impartial jury.

**2. The names of fact witnesses likely to be called by the party and a brief summary of their expected testimony.**

**RESPONSE:** The following individuals may be called to testify about the allegations in the Complaint (some witnesses are identified by descriptive category rather than by name either because their names are not known to Plaintiff at this time or because their names may be subject to protective orders or other rules against public disclosure at this time):

a. Rebecca Hill. Ms. Hill is the former Colleton County Clerk of Court.

b. Rhonda McElveen. Ms. McElvenn is the Barnwell County Clerk of Court, who assisted at the trial of *State v. Murdaugh*.

c. Current and former employees of the Colleton County Clerk of Court's Office

d. Current and former employees of the Colleton County Technology Department.

e. Current and former employees of the S.C. Office of Court Administration.

f. Current and former Colleton Courthouse bailiffs.

g. Former members of the jury *State v. Murdaugh*, including alternate jurors.

h. Law enforcement personnel involved with the investigation of juror misconduct or jury tampering issues during or after the trial in *State v. Murdaugh*.

i. Persons involved with the removal of Juror 785 before jury deliberations in *State v. Murdaugh* trial court.

**3. The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field of expertise should be given as to experts likely to be offered).**

**RESPONSE:** Plaintiff has not determined whether expert witness testimony will be needed or identified topics on which it might be needed.

**4. A summary of the claims or defenses with statutory and/or case citations supporting same.**

**RESPONSE:** Plaintiff brings this action under 42 U.S.C. § 1983 for violation of Plaintiff's rights under the Sixth and Fourteenth Amendments to the United States Constitution.

**5. Absent special instructions from the assigned judge, the parties shall propose dates for the following deadlines listed in Local Civil Rule 16.02 (D.S.C.): (a) Exchange of Fed. R. Civ. P. 26(a)(2) expert disclosures; (b) completion of discovery.**

**RESPONSE:** The parties have agreed on a joint discovery plan and joint Rule 26(f) report, which addresses these deadlines.

**6. The parties shall inform the Court whether there are any special circumstances which would affect the time frames applied in preparing the scheduling order.**

**RESPONSE:** Plaintiff is unaware of any special circumstances.

**7. Any additional information requested in the Pre-Scheduling Order (Local Civ. Rule 16.01 (D.S.C.)) or otherwise requested by the assigned judge.**

**RESPONSE:** None at this time.

Respectfully submitted,

s/Phillip D. Barber
Richard A. Harpootlian (Fed. ID No. 1730)
Phillip D. Barber (Fed. ID No.12816)
RICHARD A. HARPOOTLIAN P.A.
1410 Laurel Street (29201)
Post Office Box 1090
Columbia, South Carolina 29202
Phone (803) 252-4848
Facsimile (803) 252-4810
rah@harpootlianlaw.com
pdb@harpootlianlaw.com

ATTORNEYS FOR PLAINTIFF

July 15, 2026
Columbia, South Carolina

**THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Richard Alexander Murdaugh, Sr.,<br><br>Plaintiff,<br><br>v.<br><br>Rebecca Hill,<br><br>Defendant. | ) | Civ. No. 2:26-cv-1989-RMG<br><br>**DEFENDANT'S RESPONSES TO INTERROGATORIES PURSUANT TO LOCAL RULE 26.03 D.S.C.** |

Pursuant to Local Civil Rule 26.03(A) (D.S.C), Defendant, Rebecca Hill, hereby provides the following information:

1. A short statement of the facts of the case.

**RESPONSE:** Plaintiff brings suit pursuant to 42 U.S.C. § 1983 against Defendant, former Clerk of Court for Colleton County, South Carolina, for a deprivation of Plaintiff's constitutional right to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution. Plaintiff alleges that Defendant impermissibly tampered with the jury during the Plaintiff's trial for the murders of his wife and son via extrajudicial communications to jurors, ultimately leading to the South Carolina Supreme Court's reversal of Plaintiff's conviction. Defendant denies Plaintiff's allegations of jury tampering and asserts Eleventh Amendment immunity, judicial immunity, and qualified immunity.

2. The names of fact witnesses likely to be called by the party and a brief summary of their expected testimony.

**RESPONSE:**

a.) Rebecca Hill, who will testify as to her interactions with the jurors and the Court during Plaintiff's criminal trial.

b.) Rhonda McElveen, who will testify as to Defendant's interactions with the jurors and the Court during Plaintiff's criminal trial.

c.) Richard Alexander Murdaugh, Sr., who will testify as to Defendant's interactions with the jurors and the Court during Plaintiff's criminal trial, as to when he was first made aware of possible tampering, and as to his damages.

d.) Jurors and alternate jurors from the Plaintiff's criminal trial, who will testify as to Defendant's interactions with the jurors and the Court during Plaintiff's criminal trial.

e.) Judge Clifton Newman, who will testify as to the Defendant's interactions with the jurors and the Court during the Plaintiff's criminal trial.

f.) Courthouse staff and law enforcement personnel, who will testify as to the Defendant's interactions with the jurors and the Court during the Plaintiff's criminal trial.

g.) Representatives from the South Carolina Attorney General's Office, who will testify as to the Defendant's interactions with the jurors and the Court during the Plaintiff's criminal trial.

h.) Representatives from the 11th Circuit Solicitor's Office, who will testify as to the investigation and prosecution of the Defendant.

i.) Law enforcement personnel, who will testify as to their investigation into allegations of jury tampering by Defendant.

3. The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field of expertise should be given as to experts likely to be offered).

**RESPONSE:** None known at this time.

4. A summary of the claims or defenses with statutory and/or case citations supporting same.

**RESPONSE:**

a.) Defendant alleges that Plaintiff has failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

b.) Defendant alleges that this Court lacks jurisdiction over Plaintiff's claim under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

c.) Defendant alleges that Plaintiff has failed to allege a compensable injury under 42 U.S.C. § 1983. See *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 304 (1986).

d.) Defendant alleges that no conduct on her part caused any injury to the Plaintiff. See *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

e.) Defendant alleges that no conduct on her part to the jury rose above the level of harmless error. See *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

f.) Defendant alleges that Plaintiff lacks standing. See *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

g.) Defendant alleges that Plaintiff's claim is not yet ripe for adjudication. See *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014).

h.) Defendant alleges that she is entitled to immunity under the Eleventh Amendment of the United States Constitution. See *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

i.) Defendant alleges that she is entitled to judicial immunity. See *McCray v. Maryland*, 456 F.2d 1, 3 (1972).

j.) Defendant alleges that she is entitled to qualified immunity. See *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

**5.** Absent special instructions from the assigned judge, the parties shall propose dates for the following deadlines listed in Local Civil Rule 16.02 (D.S.C.): (a) Exchange of Fed. R. Civ. P. 26(a)(2) expert disclosures; (b) completion of discovery.

**RESPONSE:** None known at this time.

**6.** The parties shall inform the Court whether there are any special circumstances which would affect the time frames applied in preparing the scheduling order.

**RESPONSE:** None known at this time.

**7.** Any additional information requested in the Pre-Scheduling Order (Local Civ. Rule 16.01 (D.S.C.)) or otherwise requested by the assigned judge.

**RESPONSE:** None known at this time.

Respectfully Submitted,

s/ Charles F. Turner, Jr.

Charles F. Turner, Jr. (Fed. I.D. # 05849)
G. Troy Thames (Fed. I.D. #07713)
J. Nathan Ozmint (Fed. I.D. #14360)
Bowman H. Taylor (Fed. I.D. #14690)
WILLSON JONES CARTER & BAXLEY, P.A.
325 Rocky Slope Road, Suite 201
Greenville, SC 29607
Telephone: (864) 672-3711
Facsimile: (864) 373-7055
Email: cfturner@wjcblaw.com
tthames@wjcblaw.com
jnozmint@wjcblaw.com
bhtaylor@wjcblaw.com
**ATTORNEYS FOR DEFENDANT**

July _20_, 2026

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Richard Alexander Murdaugh, Sr.,<br><br>Plaintiff,<br>v.<br><br>Rebecca Hill,<br><br>Defendant. | Case No. 2:26-cv-01989-RMG<br><br><br>**ORDER** |

Before the Court is Defendant's motion to dismiss (Dkt. No. 10) brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the motion is granted and the Complaint is dismissed without prejudice.

## I. Background

Plaintiff was indicted in Colleton County, South Carolina for the murders of his wife and one of his children. Prior to his murder trial, Plaintiff alleges that he liquidated his 401(k) account to fund his defense. After a six-week trial, Plaintiff was convicted on all counts and sentenced to life in prison. Subsequent to the trial, evidence emerged that Defendant, the duly elected county clerk of court, had communicated improperly with jurors during the trial regarding her view of the evidence and Plaintiff's guilt. On May 13, 2026, the South Carolina Supreme Court unanimously reversed Plaintiff's convictions and remanded the case to be retried, finding that Defendant's communications with jurors amounted to "shocking jury interference." *State of South Carolina v. Murdaugh*, 931 S.E.2d 294, 313 (S.C. 2026).

Plaintiff brought this action against Defendant in her individual capacity under 42 U.S.C. § 1983 for jury tampering in violation of his rights under the Sixth and Fourteenth Amendments of the United States Constitution. Plaintiff alleged that he spent $600,000 in his trial defense and

that Defendant's conduct "caused these funds to be lost." (Dkt. No. 1 ¶57). Defendant moved to dismiss this action, arguing that the funds expended by Plaintiff in his first trial "would have been spent on his criminal defense regardless of any actions taken by Defendant." (Dkt. No. 10 at 1). Defendant asserts that Plaintiff's claim fails the most basic test of a common law or constitutional tort. *See* (Dkt. No. 10-1 at 12) (noting "constitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation") (citing *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012)); (*Id.* at 13-14) (arguing that "Defendant's alleged constitutional violation was neither the 'but-for' or proximate cause of Plaintiff's underlying criminal trial").

## II. Legal Standard

### A. Rule 12(b)(1)[1]

Under Rule 12(b)(1), a party may assert that a court lacks subject matter jurisdiction over a plaintiff's complaint by challenging the plaintiff's standing. *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, contending that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (alternation in original)). When a defendant facially challenges the complaint, "the plaintiff . . . is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration," meaning a court must accept all factual

[1] Because the Court concludes below that the Complaint fails to establish that Plaintiff has Article III standing, it declines to address the legal standards for Defendant's Rule 12(b)(6) and immunity arguments.

allegations in the complaint as true. *Id.* at 192 (citation omitted). For a factual challenge, on the other hand, a court may go beyond the complaint to resolve the disputed jurisdictional facts. *See Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (citation omitted).

**B. Standing**

Article III of the Constitution limits the judicial power of the United States to "Cases" and "Controversies." U.S. Const. art. III, § 2. That constitutional phrase "require[s] that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020). An "essential and unchanging part" of that requirement is that a plaintiff must have standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing at the pleading stage, a plaintiff must "clearly . . . allege facts demonstrating" that he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). "Where these requirements are not met, this court would exceed its authority if it adjudicated the merits of a dispute." *Opiotennione v. Bozzuto Mgmt. Co.*, 130 F.4th 149, 153 (4th Cir. 2025) (citation omitted).

**III. Discussion**

Plaintiff's claim contains a fatal flaw—the lack of a causal connection between the funds he expended for his defense in the first trial and Defendant's misconduct. Defendant had no role in the initiation of criminal charges against Plaintiff. Plaintiff was indicted by a state grand jury and was prosecuted by the Office of the Attorney General of South Carolina. Plaintiff liquidated his retirement account to fund his defense, which was necessary without regard to the misconduct of Defendant. Simply stated, Defendant's misconduct was not a proximate cause of Plaintiff's

need to fund his defense costs, and there is no credible allegation that "but for" Defendant's actions Plaintiff would not have found it necessary to fund his defense costs in the first trial.

Plaintiff urges the Court to follow the Ninth Circuit's decision in *Borunda v. Richmond*, 885 F.2d 1384 (9th Cir. 1988), where police officers were held liable for damages in a § 1983 action for arresting the plaintiffs without probable cause. The Ninth Circuit allowed the acquitted plaintiffs to recover attorney fees arising from the improperly brought criminal trial proximately caused by the officers' misconduct. *See id*. at 1389-90. By contrast, Defendant urges the Court to follow the Second Circuit's decision in *Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999), which held that law enforcement officers could not be held liable for compensatory damages arising from an illegal arrest that resulted in a criminal trial in which a plaintiff was acquitted. The Third and Seventh Circuits have followed *Townes*. *Martin v. Marinez*, 934 F.3d 594 (7th Cir. 2019); *Hector v. Watt*, 235 F.3d 154 (3d Cir. 2000).

Plaintiff's case is not analogous to *Borunda*. *See Martin*, 934 F.3d at 604 (explaining *Borunda*'s result given jury finding officers lacked probable cause to arrest plaintiffs and distinguishing *Townes* and *Hector* "where probably cause for an arrest existed despite an encounter that initially violated the Fourth Amendment"). Nor is it necessary to rely on *Townes* to grant Defendant's motion. Here, Defendant did not *cause* the murder charges to be brought against Plaintiff. Namely, if Defendant had not engaged in her communications with jurors and had performed her clerk of court duties properly, Plaintiff would have *still* needed to expend the funds necessary to pay for his defense. Plaintiff fails the threshold requirement for Article III standing—a showing that his injury was "fairly traceable to the challenged conduct of the defendant." *Spokeo*,

578 U.S. at 338. Consequently, Defendant is entitled to dismiss this action under Rule 12(b)(1) because Plaintiff lacks standing to assert his present claim.[2]

## IV. Conclusion

Based on the foregoing, Defendant's motion to dismiss (Dkt. No. 10) is **GRANTED**. The dismissal is **WITHOUT PREJUDICE**.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

August 5, 2026
Charleston, South Carolina

[2] Plaintiff carefully avoided seeking damages for expenses related to his upcoming retrial, plainly recognizing that such a claim is not ripe. Nothing in this order should be construed to express an opinion regarding the possible merit or lack of merit of a claim based upon any damages Plaintiff may allege from the retrial of his murder case.

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Richard Alexander Murdaugh, Sr.,<br><br>Plaintiff,<br><br>v.<br><br>Rebecca Hill<br><br>Defendant. | C/A No. 2:26-cv-01989-RMG<br><br>**NOTICE OF APPEAL** |

NOTICE IS HEREBY GIVEN that Plaintiff, Richard Alexander Murdaugh, Sr., through counsel, appeals to the United States Court of Appeals for the Fourth Circuit from the order entered into this action on August 5, 2026 by the United States District Court for the District of South Carolina [Dkt. No. 26], granting the Defendant's motion to dismiss under Rules 12(b)(1) and 12(b)(6).

Respectfully submitted,

s/Phillip D. Barber
Richard A. Harpootlian, Fed. ID No. 1730
Phillip D. Barber, Fed. ID No. 12816
Andrew R. Hand, Fed. ID No. 12176
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street (29201)
Post Office Box 1090
Columbia, South Carolina 29202
(803) 252-4848
rah@harpootlianlaw.com
pdb@harpootlianlaw.com

James M. Griffin, Fed ID No. 1053
Margaret N. Fox, Fed ID No. 10576
GRIFFIN HUMPHRIES LLC
Post Office Box 999
Columbia, South Carolina 29202

(803) 744-0800
jgriffin@griffinhumphries.com
mfox@griffinhumphries.com

Attorneys for Richard Alexander Murdaugh

August 5, 2026
Columbia, South Carolina.

AO 450 (SCD 11/2011) Judgment in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of South Carolina

Richard Alexander Murdaugh, Sr
*Plaintiff*

v.

Rebecca Hill
*Defendant*

) Civil Action No. 2:26-cv-01989-RMG

**JUDGMENT IN A CIVIL ACTION**

The court has ordered that *(check one)*:

❒ the plaintiff *(name)* ________ recover from the defendant *(name)* _________ the amount of ________ dollars ($__), which includes prejudgment interest at the rate of ____ %, plus post judgment interest at the rate of ____ % per annum, along with costs.

❒ the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* ____________________ recover costs from the plaintiff *(name)* _________________.

✔ other: the action is dismissed without prejudice.

This action was *(check one)*:

❒ tried by a jury with Judge _______________ presiding, and the jury has rendered a verdict.

❒ tried by Judge ____________ without a jury and the above decision was reached.

✔ decided by Honorable Richard M. Gergel, United States District Judge .

Date: August 6, 2026

*ROBIN L. BLUME, CLERK OF COURT*

s/S. Shealy

*Signature of Deputy Clerk*